# 23-15

## In the United States Court of Appeals for the Second Circuit

———————————

DO NO HARM
PLAINTIFF-APPELLANT

*v.*

PFIZER, INC.
DEFENDANT-APPELLEE

———————————

**APPELLEE'S OPPOSITION TO
APPELLANT'S MOTION FOR LEAVE TO SUPPLEMENT THE
RECORD ON APPEAL**

———————————

Defendant-appellee Pfizer, Inc. hereby opposes plaintiff-appellant's motion for leave to supplement the record on appeal.

1.    This is an appeal from an order denying Do No Harm's motion for a preliminary injunction and dismissing its case without prejudice for lack of subject matter jurisdiction.  Do No Harm claims that Pfizer's Breakthrough Fellowship Program, an early career program designed to enhance Pfizer's pipeline of diverse leaders, discriminates against White and Asian applicants,

including its anonymous Members A and B, in violation of Section 1981, Title VII, Section 1557 of the Affordable Care Act, and the New York State and City Human Rights Laws.

2.    By its motion, Do No Harm seeks leave to supplement the record on appeal with the addition of two declarations—one from "Member C," an anonymous individual who is totally unknown to Pfizer, and a second supplemental declaration from the Executive Director of Do No Harm, Kristina Rasmussen.  Do No Harm submits the declaration from Member C in order to show it has one member "who is able and ready to apply for the 2024 class" of Pfizer's Breakthrough Fellowship Program.  Mot. at 2 ¶ 11.  Do No Harm submits the second supplemental declaration from its Executive Director to show she is "personally aware that Member C is a member of Do No Harm."  Dkt. 38-3 ¶ 4.

Do No Harm argues that this Court should grant its motion because Pfizer may argue that this appeal is moot, and these declarations purportedly show that the appeal is not moot.  *See* Mot. at 2.

3.    Do No Harm's motion should be denied.  Federal Rule of Appellate Procedure 10 governs the composition of the record on appeal.  The record on appeal is comprised of: "(1) the original papers and exhibits filed in the district court; (2) the transcript of proceedings, if any; and (3) a certified copy of

the docket entries prepared by the district clerk." Fed. R. App. P. 10(a). Under Rule 10(a), therefore, supplementation is not permitted.

Do No Harm points to Federal Rule of Appellate Procedure 10(e) as support for its motion. But that provision authorizes the record to be supplemented in two specific circumstances—where a "difference arises about whether the record truly discloses what occurred in the district court," and where something "material to either party is omitted from or misstated in the record by error or accident." Fed. R. App. P. 10(e). Do No Harm does not argue that either of these two circumstances applies—because neither does.

Do No Harm also cites to two Second Circuit cases, *Salinger* v. *Random House, Inc.* and *Vidal* v. *South American Securities Company et al,* as support for its request to supplement the record on appeal. But the narrow circumstances permitted under Rule 10(e) for supplementation make *Salinger* distinguishable. In *Salinger*, then-district court Judge Leval color-coded a copy of a trial exhibit, and ordered that the color-coded copy be made a part of the district court record while the appeal was pending. 818 F.2d 252, 253 (2d Cir. 1987). This Court supplemented the record with this exhibit, because it "clarifie[d]" the Court's "understanding of the process by which the District Judge reached the decision challenged on appeal." *Id.* And in *Vidal*, a 100+ year old case that pre-dates the Federal Rules of Appellate Procedure, the

Court did not even consider the extrinsic evidence offered by the defendant to demonstrate that the case was moot, and decided the case on other grounds. 276 F. 855, 873–84 (2d Cir. 1921).

Here, the only grounds Do No Harm offers for supplementation are to put before the Court new evidence that the District Court had no occasion or opportunity to consider, in order to demonstrate that Do No Harm's appeal is not moot. Neither case cited by Do No Harm supports supplementation for such purpose.

4. Given that no ground for supplementation set out in Rule 10(e) applies, the standard this Court must apply on this motion is one of extraordinary circumstances. Absent a showing of error or accident—which does not exist here—this Court permits supplementation of the record only in "extraordinary circumstances" because generally, "federal appellate courts will not consider rulings or evidence which are not part of the trial record." *International Business Machines Corp.* v. *Edelstein*, 526 F.2d 37, 45 (2d Cir. 1975) ("Filing at the trial level with a view to 'making a record' is crucial"); *Weinstein* v. *City of New York*, 622 Fed. Appx. 45, 46 (2d Cir. 2015) (denying motion to supplement the record where appellant "has not alleged any extraordinary circumstance warranting our consideration of the new evidence he seeks to submit").

Do No Harm does not even acknowledge this standard, or make any effort to argue that such an extraordinary circumstance applies.

Here, the only ground that Do No Harm puts forth for the consideration of new evidence that the District Court never had an occasion to consider in the first instance is the notion that this case may be mooted because Members A and B can no longer apply for the 2023 class of Breakthrough Fellows. *See* Mot. at 2 ¶ 9. However, neither the cases cited by Do No Harm, nor the procedural history of this case, supports the notion that waiting until the appellate stage to cure an obvious mootness problem qualifies as an extraordinary circumstance.

Throughout this litigation, it was clear that this case would quickly become moot. Do No Harm's complaint challenges only the 2023 class of the Breakthrough Fellowship. JA12-15. That was the basis, in large measure, for Do No Harm's request for a temporary restraining order and expedited briefing on its motion for preliminary injunction. On September 21, 2022, based on Pfizer's representations about the timing of application period for the 2023 class (that it was anticipated to open in January 2023 and remain open for approximately three weeks), Do No Harm withdrew its request for a temporary restraining order and the Court set a briefing schedule for the preliminary injunction motion to be completed by November. *See* Transcript of

TRO/Injunction Hearing (Sept. 21, 2022) 5:5–12, 5:21–6:1, 6:17–22;[1] JA5; *see also* JA84. When Do No Harm filed its November reply brief in support of its preliminary injunction motion below, it included a supplemental Rasmussen declaration, but did not file a Member C declaration or include any facts in the supplemental Rasmussen declaration to address the looming mootness issue, despite being on notice of it. *See* JA90.

The Court issued its opinion and order dismissing this case without prejudice on December 16, 2022, before the application period for the 2023 class had opened. *See* JA91-134. Do No Harm never filed a motion for reconsideration of the District Court's decision, nor did it attempt to amend its complaint or otherwise supplement the record below with the declarations it now offers on appeal. Instead, Do No Harm waited until *March*—after the 2023 application period had closed, and on the due date of its appellate brief—to seek to supplement the appellate record.

For this Court to conclude whether the declarations submitted on appeal defeat any mootness argument, it would need to embark on a fact-finding mission to assess in the first instance whether Member C is "ready and able" to

---

[1] This transcript has not been included in the joint appendix filed by the parties because it is not relevant to the merits of this appeal. However, Pfizer has attached a true and correct transcript of the September 21, 2022 status conference for the purposes of this opposition. *See* Fed. R. App. P. 27(a)(2)(B).

apply to the *2024 class* as a matter of law. But there is no evidence in the record whatsoever concerning the Breakthrough Fellowship's requirements for the 2024 class, or whether/how they will differ from those of the 2023 class. And it is not this Court's "job as an appellate court to examine new evidentiary materials and find issues of fact." *Jones* v. *Sullivan*, 949 F.2d 57, 61 (2d Cir. 1991) (citation omitted). Instead, trial courts, because they are in a better position to consider evidence in the context of the particular case before them, "should . . . weigh relevant evidence . . . in the first instance." *Florez* v. *Central Intelligence Agency*, 829 F.3d 178, 189 (2d Cir. 2016). Do No Harm's actions deprived the District Court of that opportunity.

This Court's decision in *Fox* v. *Board of Trustees of State University of New York*, 42 F.3d 135, 143-44 (2d Cir. 1994) is instructive. In that case, the plaintiffs submitted supplemental affidavits on appeal in order to demonstrate that their claims were not moot. This Court found that "this evidence is not a proper supplement to the record as contemplated by Fed. R. App. P. 10(e)." *Id.* at 143; *see also Deeper Life Christian Fellowship, Inc.* v. *Sobol*, 948 F.2d 79, 82 (2d Cir. 1991). This makes sense, because "once a case is moot, it is no longer justiciable in federal court and must be dismissed." *Fox*, 42 F.3d at 144. And like in *Fox*, Do No Harm was "on notice that the justiciability of the case was at issue." *Id.* at 143.

5. Do No Harm has cited no authority to the contrary. Both the Supreme Court's decision in *Parents Involved* and the Fourth Circuit order cited by Do No Harm are devoid of reasoning. *See Parents Involved Community Schools* v. *Seattle School District No. 1*, 551 U.S. 701, 718-19 (2007); Order (Jan. 10, 2023), *Speech First, Inc.* v. *Sands*, No. 21-2061 (4th Cir.). The summary order in *Toth*, cited by Do No Harm, is no help either. In that case, the district court found that that no mootness exception saved T.T.'s Individuals with Disabilities Education Act claims because his concern that he would receive decreased applied behavior analysis ("ABA") therapy in the future was "speculative." *Toth on behalf of T.T.* v. *City of New York Dep't of Education*, 720 Fed. Appx. 48, 50 (2d Cir. 2018). During the appeal, T.T. received his new individualized education program, which eliminated ABA therapy altogether—demonstrating his concern was not speculative after all. *See id.* at 51. In that situation, this Court found that there were "extraordinary circumstances" to consider a document where the district court specifically conditioned its finding that the case was moot "on a factual situation that has materially changed." *Id.* Do No Harm has explained no such changed circumstance.

In sum, the Federal Rules of Appellate Procedure do not allow Do No Harm to shift the evidentiary record on appeal. Having failed to submit these

declarations below or amend its complaint in anticipation of an obvious moot-ness issue, Do No Harm cannot do so on appeal and must simply file a new complaint. This Court should deny the motion for leave to supplement the record.

Respectfully submitted,

_____/s/ Jeannie S. Rhee_____

| | |
|---|---|
| LORETTA E. LYNCH<br>LIZA M. VELAZQUEZ<br>PAUL, WEISS, RIFKIND,<br>  WHARTON & GARRISON LLP<br>*1285 Avenue of the Americas*<br>*New York, NY 10019* | JEANNIE S. RHEE<br>MARTHA L. GOODMAN<br>PAUL, WEISS, RIFKIND,<br>  WHARTON & GARRISON LLP<br>*2001 K Street, N.W.*<br>*Washington, DC 20006*<br>*(202) 223-7300*<br>*jrhee@paulweiss.com* |

MARCH 20, 2023

**CERTIFICATE OF COMPLIANCE**

**WITH TYPEFACE AND WORD-COUNT LIMITATIONS**

I, Jeannie Rhee, counsel for appellee Pfizer, Inc., certify, pursuant to Federal Rule of Appellate Procedure 27(d) that the foregoing Response to Appellant's Motion for leave to supplement the record on appeal is proportionately spaced, has a typeface of 14 points or more, and contains 1,799 words.

MARCH 20, 2023                              /s/ Jeannie S. Rhee
                                           JEANNIE S. RHEE

**CERTIFICATE OF SERVICE**

I, Jeannie Rhee, counsel for appellee Pfizer, Inc., certify that, on March 20, 2023, a copy of the foregoing response was filed electronically through the appellate CM/ECF system with the Clerk of the Court. I certify that all participants in the case are registered users with the electronic filing system and that service will be accomplished by that system.

/s/ *Jeannie S. Rhee*
JEANNIE S. RHEE

**Ex. 1**

M9L1DONC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  DO NO HARM,

4         Plaintiff,

5      v.                22 Civ. 7908 (JLR)

6  PFIZER, INC.,

7         Defendant.              TRO/Injunction Hearing
                                      (Remote)
8  ------------------------------x

9                      September 21, 2022
                       2:05 p.m.
10

11 Before:

                        HON. JENNIFER L. ROCHON,
12
                        District Judge
13
                           APPEARANCES
14
   CONSOVOY McCARTHY PLLC
15     Attorneys for Plaintiff
   BY:  THOMAS MCCARTHY, ESQ.
16     FRANK H. CHANG, ESQ.

17 DENNIS SAFFRAN, ESQ.
      Attorney for Plaintiff
18
   PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
19     Attorneys for Defendant
   BY:  JEANNIE S. RHEE, ESQ.
20     LIZA VELAZQUEZ, ESQ.
       MARTHA L. GOODMAN, ESQ.
21

22

23

24

25

M9L1DONC

1           (Case called)

2           THE COURT:    Good afternoon, everyone.  Can you hear me

3   okay?  Great.

4           I am Jennifer Rochon, Judge Rochon, and we're here in

5   the case of 22-CV-7908.

6           So let's get some appearances for the record.  We will

7   start with the plaintiffs.  And thank you for putting your

8   names in here, so that makes it a little bit easier as well.

9           MR. McCARTHY:    Good afternoon, your Honor.  This is

10  Thomas McCarthy for plaintiff Do No Harm.

11          THE COURT:    Good afternoon, Mr. McCarthy.

12          MR. CHANG:    Good afternoon, your Honor.  This is Frank

13  Chang for plaintiff Do No Harm.

14          THE COURT:    Good afternoon, Mr. Chang.

15          MR. SAFFRAN:    Good afternoon, your Honor.  Dennis

16  Saffran, local counsel to the Consovoy firm, for plaintiff Do

17  No Harm.

18          THE COURT:    Good afternoon, Mr. Saffran.

19          Mr. McCarthy, will you be taking lead on this

20  conversation today?

21          MR. McCARTHY:    Yes, your Honor.  Thank you.

22          THE COURT:    Okay.  Thank you.

23          And appearances for defendant, please?

24          MS. RHEE:    Good afternoon, your Honor.  Jeannie Rhee

25  for the defendant Pfizer.

1          THE COURT:    Good afternoon, Ms. Rhee.

2          MS. VELAZQUEZ:    Good afternoon, your Honor.  Liza

3     Velazquez, also for the defendant Pfizer.

4          THE COURT:    Good afternoon, Ms. Velazquez.  And?

5          MS. GOODMAN:    Martha Goodman for defendant Pfizer.

6     Thank you for being here.

7          THE COURT:    Good afternoon, Ms. Goodman.

8          And who will be taking the lead for defendant Pfizer?

9     Who should I direct my questions to?

10          MS. RHEE:    I will, your Honor.

11          THE COURT:    Great.  Thank you, Ms. Rhee.

12          Okay.  This conference is being conducted on Teams, as

13     we all know, but the record will now reflect.  Court

14     proceedings are public proceedings, and therefore there is a

15     listen-only telephone line that is open to the press and the

16     public, which was noticed on the docket.  We will not hear

17     beeps when someone joins the line, so please presume that this

18     is open for people to join if they wish.

19          We also have a court reporter on the line.  The court

20     the reporter is on the Teams call so should be able to tell

21     who's speaking.  But if she cannot or he cannot, they may ask

22     you to identify yourself if they have trouble determining who's

23     speaking at the time.

24          My clerk and deputy are also present.

25          And as a final reminder, pursuant to Local Rule 1.8,

 1   no one other than court officials are permitted to record this

 2   proceeding, so I ask that you do not.

 3           Okay.  Let's start.  Thank you, plaintiff, for

 4   providing notice to Pfizer, and I am very glad that the parties

 5   had an opportunity to talk before today.  I am in receipt of an

 6   email at 12:34 from Martha Goodman at Paul, Weiss, counsel to

 7   Pfizer, stating that the parties have had some discussions and

 8   that plaintiff Do No Harm is withdrawing its request for a

 9   temporary restraining order.  I do appreciate you all informing

10   me of this in advance of our conference today.  So I will ask,

11   is that representation correct, Mr. McCarthy, and are we here

12   instead to discuss a briefing schedule?

13           MR. McCARTHY:    Yes, your Honor, that is correct.

14   Thank you.

15           THE COURT:    Okay.  Great.  Do you want to be heard

16   first?  Or do you have an agreed-upon schedule?

17           MR. McCARTHY:    I'm happy to go first.  We don't quite

18   have an agreed-upon schedule, but I think we have an agreement

19   in principle, and I should commend counsel for being very

20   cooperative.  Everybody's been very cooperative and courteous.

21   And, you know, lots of times, fast-paced things are difficult

22   to work out, but counsel has been wonderful to work with,

23   and --

24           THE COURT:    I'll interrupt you for one minute,

25   Mr. McCarthy.  Thank you for that, and I appreciate that.  I

1    have that expectation in my cases, and I am very glad to hear

2    that that's happening in this one.

3              So please continue.  Sorry for the interruption.

4              MR. McCARTHY:    No problem.  Of course, your Honor.

5              So I think we have an agreement in principle,

6    essentially, that we'd like to set a briefing schedule that

7    would give your Honor sufficient time to resolve the PI motion

8    before the application window opens in the first week of

9    January.  What Pfizer proposed to us, and what we thought would

10   work for us, was that if the briefing were done, you know,

11   maybe in early November, that that might give your Honor

12   sufficient time.  But of course neither party knows your

13   schedule, your Honor, and we all know that trial judges have

14   crazy schedules sometimes, so I think our first interest on

15   both sides is that you have sufficient time to review and

16   resolve the PI motion and so we'd work backwards sort of from

17   there to make a schedule that works for both parties.  We had

18   contemplated I think finishing in early November, but if that

19   doesn't work for your Honor, we can work off of a different

20   date and go backwards from there.

21             THE COURT:    Okay.  Let me ask a couple of questions on

22   that, and thank you.  Opening the first week of January, how

23   long is the window open for applications?  Ms. Rhee?

24             MS. RHEE:    Your Honor, at this point in time, Pfizer

25   contemplates the window being open for several weeks through

1 January.

2 THE COURT: Okay. And I presume January is the

3 selected time so that things can get situated before the first

4 part of this fellowship begins the summer of 2023; is that

5 correct?

6 MS. RHEE: Correct, your Honor.

7 THE COURT: Are there rolling admissions of

8 applicants, or do you get all the applications in and then make

9 the decisions?

10 MS. RHEE: Historically it has not been a rolling

11 application process.

12 THE COURT: Okay. And how many spots are open in

13 this? And forgive me. I have you all here, so I'm just asking

14 a couple of quick questions.

15 MS. RHEE: Again, historically, it has been classes of

16 approximately 20.

17 THE COURT: Okay. Thank you for some of that

18 clarifying information.

19 Going back to you, Mr. McCarthy, and all of you, if

20 we're talking about having a decision before the first week of

21 January, I will endeavor to do that, and I think if you get me

22 completed papers by early November, that should work for me.

23 MR. McCARTHY: Very well. Thank you, your Honor.

24 THE COURT: So what's the schedule that you're

25 proposing, given that?

1          MR. McCARTHY:    I think working back from there,

2    counsel, if -- we hadn't actually talked actual dates, but

3    let's say if briefing is done -- and let me check my calendar

4    so I don't mention weekends.  I don't want to throw anybody off

5    with that.

6          MS. RHEE:    I actually have I think the dates in front

7    of me, Mr. McCarthy, just based on our discussion.

8          MR. McCARTHY:    Okay.

9          MS. RHEE:    Based on our tentative proposal, with the

10   joint proposal that we had worked out, if we then actually put

11   in our opposition, Pfizer put in the opposition to the PI on

12   October 25th, with plaintiffs then putting in their reply brief

13   no later than November 8th, that would give plaintiffs two

14   weeks to reply, if that is okay with Mr. McCarthy.  Then that

15   would give the Court, if the Court ruled by December 13th, more

16   than five weeks to rule.

17         MR. McCARTHY:    That works well for plaintiffs for

18   sure, your Honor, if that's okay with you, and if you need more

19   time, we're happy to accommodate, of course.

20         THE COURT:    No.  I think that that's fine.  I am not

21   going to commit to a particular day that my opinion will come

22   out, but I hear your deadlines, I hear when the application

23   process is starting beginning of January, and I understand

24   those circumstances and will work expeditiously once I have all

25   the papers.  The nice thing is I have some of the papers

1    already, so that will help me get a jump-start on things.

2                     Okay.  October 25th, November 8th.

3                     I have a few other questions, but is there anything

4    that the parties want to raise with me before I ask just a few

5    more questions?

6                     MR. McCARTHY:    Not at this time, your Honor.  We

7    welcome your questions.

8                     THE COURT:    All right.  Thank you, Mr. McCarthy.

9    Ms. Rhee?

10                    MS. RHEE:    No, your Honor.

11                    THE COURT:    Okay.  Great.  So since I have you here,

12   again, helping me to get a jump-start on the case, first of

13   all, Mr. McCarthy, I see that Member A and B are providing

14   unsigned, anonymous declarations.  They're not minors.  I do

15   see in their declaration that they fear reprisals.  But when

16   you file your reply brief, can you give me some precedent for

17   considering something like that.

18                    MR. McCARTHY:    Certainly.

19                    THE COURT:    Okay.  Great.

20                    And another question to you, Mr. McCarthy.  Your

21   client and you say repeatedly that Pfizer represents that

22   "White and Asian-American applicants are not eligible for the

23   fellowship," and I see that in your complaint and brief.  I

24   don't see that language in Exhibit A in the description of the

25   program or Exhibit C.  Did I miss it somewhere that you could

1    direct me to?

2              MR. McCARTHY:    We believe the message is clear from

3    the exhibits attached to the complaint that that's what's

4    happening.  I don't know that in the way we describe it is an

5    exact quote in those papers, but it is readily apparent, we

6    believe, from the various exhibits and statements made on the

7    Pfizer website.

8              THE COURT:    Thank you, Mr. McCarthy.

9              Okay.  And Ms. Rhee, when did this program first

10   launch?  I see in the complaint, paragraph 31, it says 2021.

11   Is that accurate?

12             MS. RHEE:    Yes, your Honor.  The first internship

13   class joined Pfizer in the summer of 2021.

14             THE COURT:    And were the requirements and the posting

15   the same, other than temporally, for the prior year?

16             MS. RHEE:    I want to make sure that I understood the

17   question.

18             THE COURT:    Is it the same fellowship program with

19   essentially the same advertisement and the same

20   requirements—-and I'm using "requirements" in lower case—-that

21   were articulated for this year, were those the same ones

22   articulated for the 2021 program?

23             MS. RHEE:    Correct, your Honor.

24             THE COURT:    Okay.  And Mr. McCarthy, was your client

25   aware of this program back in 2021?

1          MR. McCARTHY:    No, your Honor.

2          THE COURT:    Okay.  All right.  So then just to sum up,

3   before we close, just to confirm, plaintiff is withdrawing its

4   request for a TRO; defendant's papers will be due on

5   October 25th, plaintiff's reply on November 8th; I will

6   endeavor to decide this promptly; I understand your

7   circumstances you've articulated; and I will, after this

8   conference, enter an order on this docket reflecting this.

9          Is there anything else that we need to cover today?

10          MR. McCARTHY:    I don't think there's anything further

11   from us, your Honor.  We appreciate your time.  Thank you very

12   much.

13          THE COURT:    Thank you, Mr. McCarthy.

14          Anything from you, Ms. Rhee?

15          MS. RHEE:    No, your Honor.  Thank you.

16          THE COURT:    Great.  Well, thank you very much.  We're

17   adjourned.  And everyone have a nice day.

18          MR. McCARTHY:    You too.  Thanks very much.

19                              o0o

20

21

22

23

24

25