# 23-15

## In the United States Court of Appeals for the Second Circuit

---

DO NO HARM
PLAINTIFF-APPELLANT

*v.*

PFIZER, INC.
DEFENDANT-APPELLEE

---

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK (NO. 1:22-CV-7908) (THE HONORABLE JENNIFER L. ROCHON, J.)*

---

**BRIEF OF APPELLEE PFIZER, INC.**

---

LORETTA E. LYNCH
LIZA M. VELAZQUEZ
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
*1285 Avenue of the Americas*
*New York, NY 10019*

JEANNIE S. RHEE
MARTHA L. GOODMAN
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
*2001 K Street, N.W.*
*Washington, DC 20006*
*(202) 223-7466*
*jrhee@paulweiss.com*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellee Pfizer, Inc. hereby states that it is a publicly traded company that has no parent corporation, and no entity owning 10 percent or more of its stock.

## STATEMENT REGARDING ORAL ARGUMENT

Appellee respectfully submits that oral argument will not assist this Court in adjudicating the appeal. This case involves straightforward application of established legal principles to undisputed facts—rendering oral argument unnecessary.

# TABLE OF CONTENTS

Introduction.................................................................................................1

Statement of the Issues.............................................................................3

Statement of the Case ...............................................................................4

    A.    Background.................................................................................4

    B.    Procedural History ...................................................................6

Summary of Argument ...........................................................................11

Standards of Review................................................................................15

Argument...................................................................................................17

    I.    The District Court Correctly Dismissed the Case Without Prejudice for Lack of Subject Matter Jurisdiction.......................17

        A.    The District Court Correctly Held that DNH Lacks Article III Standing.................................................................17

            1.    The District Court Correctly Held that DNH Lacks Article III Standing Because It Failed To Identify Members A or B .......................................18

            2.    DNH Failed To Show Injury-In-Fact for Failing To Establish that Members A and B are "Able and Ready" To Apply.......................................26

        B.    Upon Concluding that DNH Lacked Article III Standing, the District Court Was Required To Dismiss the Complaint Without Prejudice for Lack of Subject Matter Jurisdiction................................................34

    II.    This Appeal is Moot Because Members A and B No Longer Have a Personal Stake in the Outcome of the Case.....................41

        A.    Neither Member A Nor B is Eligible To Apply to the Fellowship .................................................................42

        B.    A Single Conclusory Allegation In DNH's Complaint Does Not Save the Case from Mootness............................44

        C.    Member C's Declaration Cannot Save the Case from Mootness ................................................................................46

III.   Do No Harm Lacks Statutory Standing To Bring Its Federal Claims.................................................................50

     A.   The District Court Correctly Held That Do No Harm Lacks Statutory Standing To Bring a Claim Under 42 U.S.C. § 1981. ...................................................51

     B.   Do No Harm Lacks Statutory Standing To Bring a Claim Under Title VI or the ACA.........................54

IV.   The District Court Properly Declined to Exercise Supplemental Jurisdicition Over DNH's State-Law Claims.......59

Conclusion.............................................................................61

iv

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abigail All. for Better Access to Developmental Drugs* v.
    *Eschenbach*, 469 F.3d 129 (D.C. Cir. 2006).....................................48

*Adarand Constructors, Inc.* v. *Pena*, 515 U.S. 200 (1995) ................................33

*Aguayo* v. *Richardson*, 473 F.2d 1090 (2d Cir. 1973) ....................................51, 52

*Am. Coll. of Emergency Physicians* v. *Blue Cross & Blue Shield
    of Ga.*, 833 F. App'x 235 (11th Cir. 2020)..........................................23

*Antonyuk* v. *Bruen*,
    Civ. No. 22-743, 2022 WL 3999791 (N.D.N.Y. Aug. 31, 2022).....................40

*Ashcroft* v. *Iqbal*, 556 U.S. 662 (2009).....................................22, 24, 56

*Ass'n Against Discrimination in Emp., Inc.* v. *City of
    Bridgeport*, 647 F.2d 256 (2d Cir. 1981) .........................................57

*Associated Gen. Contractors of Am.* v. *Cal. Dep't of Transp.*,
    713 F.3d 1187 (9th Cir. 2013)....................................................20, 21

*Bell Atlantic Corporation* v. *Twombly*, 550 U.S. 544 (2007) ...........................22

*Bernier* v. *Trump*, 242 F. Supp. 3d 31 (D.D.C. 2017) .......................................55

*Bhanusali* v. *Orange Reg'l Med. Ctr.*,
    Civ. No. 10-6694, 2012 WL 13059694 (S.D.N.Y. Jan. 20, 2012) ..................57

*Bloomberg* v. *N.Y.C. Dep't of Educ.*,
    410 F. Supp. 3d 608 (S.D.N.Y. 2019)..............................................58

*Boswell* v. *Skywest Airlines, Inc.*,
    217 F. Supp. 2d 1212 (D. Utah 2002), *aff'd*, 361 F.3d 1263 (10th
    Cir. 2004)..............................................................................56, 57

*Brandon* v. *Bd. of Educ. of Guilderland Cent. Sch. Dist.*,
  635 F.2d 971 (2d Cir. 1980) ...............................................................48

*Bldg. & Constr. Trades Council of Buffalo* v. *Downtown Dev., Inc.*, 448 F.3d 138 (2d Cir. 2006) ...........................................22, 23

*Brody ex rel. Sugzdinis* v. *Spang*, 957 F.2d 1108 (3d Cir. 1992) ......................49

*Cacchillo* v. *Insmed, Inc.*, 638 F.3d 401 (2d Cir. 2011) ...........................1, 16, 22

*Cangemi* v. *United States*, 13 F.4th 115 (2d Cir. 2021) ...................................59

*Cargill Int'l S.A.* v. *M/T Pavel Dybenko*,
  991 F.2d 1012 (2d Cir. 1993) ............................................................27

*Carney* v. *Adams*, 141 S. Ct. 493 (2020) ......................................*passim*

*Carroll* v. *Nakatani*, 342 F.3d 934 (9th Cir. 2003) ............................................28

*Carter* v. *HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016) ...................31, 35

*Catzin* v. *Thank You & Good Luck Corp.*, 899 F.3d 77 (2d Cir. 2018) ...............................................................................39, 40

*Cave* v. *E. Meadow Union Free Sch. Dist.*,
  514 F.3d 240 (2d Cir. 2008) .....................................................36, 59

*Cedar Coal Co.* v. *United Mine Workers of Am.*,
  560 F.2d 1153 (4th Cir. 1977) ...........................................................49

*Cent. States Se. & Sw. Areas Health & Welfare Fund* v. *Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181 (2d Cir. 2005) ........................35

*Chamber of Com. of the U.S.* v. *EPA*,
  642 F.3d 192 (D.C. Cir. 2011) ...........................................................41

*City News & Novelty, Inc.* v. *City of Waukesha*,
  531 U.S. 278 (2001) ........................................................................45

*Clementine Co.* v. *Adams*,
  Civ. No. 21-7779, 2022 WL 4096162 (S.D.N.Y. Sept. 7, 2022) .....................46

*Coe* v. *Yellow Freight Sys., Inc.*, 646 F.2d 444 (10th Cir. 1981) .......................28

*Collins* v. *Giving Back Fund*,
  Civ. No. 18-8812, 2019 WL 3564578 (S.D.N.Y. Aug. 6, 2019) ...............54, 56

*Connecticut* v. *Am. Elec. Power Co.*,
  582 F.3d 309 (2d Cir. 2009), *rev'd*, 564 U.S. 410 (2011)................................23

*Conn. Parents Union* v. *Russell-Tucker*,
  8 F.4th 167 (2d Cir. 2021) ........................................................................16

*Cook* v. *Colgate Univ.*, 992 F.2d 17 (2d Cir. 1993).......................................41, 43

*DeFunis* v. *Odegaard*, 416 U.S. 312 (1974) ..........................................................44

*Doe* v. *L.A. Unified Sch. Dist.*,
  Civ. No. 20-2131, 2017 WL 797152 (C.D. Cal. Feb. 27, 2017) .....................26

*Doe* v. *Salvation Army in the U.S.*, 685 F.3d 564 (6th Cir. 2012)...................54

*Domino's Pizza, Inc.* v. *McDonald*, 546 U.S. 470 (2006) .................................53

*Drachman* v. *Bos. Sci. Corp.*, 258 F. Supp. 3d 207 (D. Mass. 2017) ...............55

*Draper* v. *Healey*, 827 F.3d 1 (1st Cir. 2016) ...........................................19, 20

*E.F.* v. *Adams*,
  Civ. No. 21-11150, 2022 WL 601999 (S.D.N.Y. Mar. 1, 2022) .....................37

*Equal Vote Am. Corp.* v. *Pelosi*,
  397 F. Supp. 3d 503 (S.D.N.Y. 2019)..............................................................19

*Fac.* v. *N.Y. Univ.*, 11 F.4th 68 (2d Cir. 2021) ....................................................17

*FAIR* v. *Rumsfeld*, 291 F. Supp. 2d 269 (D.N.J. 2003), *rev'd on
  other grounds*, 547 U.S. 47........................................................................25

*Fischer* v. *Cruz*,
  Civ. No. 16-1224, 2016 WL 1383493 (E.D.N.Y. Apr. 7, 2016) .....................37

*Food & Water Watch, Inc.* v. *Vilsack*,
  808 F.3d 905 (D.C. Cir. 2015).........................................................................38

*Fox* v. *Bd. of Trustees of State Univ. of N.Y.*,
  42 F.3d 135 (2d Cir. 1994) .................................................................*passim*

*Freeman* v. *Kirisits*, 818 F. App'x 34 (2d Cir. 2020)..........................56

*FW/PBS, Inc.* v. *City of Dallas*, 493 U.S. 215 (1990).............................18, 19, 46

*Ga. Republican Party* v. *SEC*, 888 F.3d 1198 (11th Cir. 2018) .................20, 21

*Goldman* v. *MCL Cos. of Chi., Inc.*,
   131 F. Supp. 2d 425 (S.D.N.Y. 2000)................................................60

*Gomes* v. *R.I. Interscholastic League*,
   604 F.2d 733 (1st Cir. 1979) ...........................................................44

*Gratz* v. *Bollinger*, 539 U.S. 244 (2003) ...............................................34

*Hecox* v. *Little*, Civ. Nos. 20-35813, 20-35815, 2023 WL 1097255
   (9th Cir. Jan. 30, 2023) .................................................................49

*Henry Builders, Inc.* v. *United States*,
   Civ. No. 09-288, 2009 WL 185419 (E.D.N.Y. Jan. 26, 2009),
   *aff'd*, 372 F. App'x 104 (2d Cir. 2010)................................................37

*Hunt* v. *Wash. State Apple Adver. Comm'n*, 432 U.S. 333 (1977)....................17

*Int'l Code Council, Inc.* v. *UpCodes Inc.*,
   43 F.4th 46 (2d Cir. 2022)..............................................................40

*Jones* v. *Sullivan*, 949 F.2d 57 (2d Cir. 1991) ........................................50

*Kelly* v. *Rice*, 375 F. Supp. 2d 203 (S.D.N.Y. 2005).................................58

*Kessler* v. *Grand Cent. Dist. Mgmt. Ass'n, Inc.*,
   158 F.3d 92 (2d Cir. 1998) .............................................................49

*Lujan* v. *Defs. of Wildlife*, 504 U.S. 555 (1992)....................................16, 18

*Lyndonville Sav. Bank & Tr. Co.* v. *Lussier*,
   211 F.3d 697 (2d Cir. 2000) ...........................................................16

*Malik* v. *Meissner*, 82 F.3d 560 (2d Cir. 1996) .....................................15

*Ex parte McCardle*, 74 U.S. (7 Wall.) 506 (1868) ....................................35

*Melendez* v. *Ill. Bell Tel. Co.*, 79 F.3d 661 (7th Cir. 1996)..............................28

*Memphis A. Philip Randolph Inst.* v. *Hargett*,
2 F.4th 548 (6th Cir. 2021) ...............................................42

*Milwaukee Police Ass'n* v. *Bd. of Fire & Police Comm'rs of City of Milwaukee*, 708 F.3d 921 (7th Cir. 2013) ..............................41, 49

*Munaf* v. *Geren*, 553 U.S. 674 (2008) ................................53, 59

*N.Y. State Citizens' Coalition for Children* v. *Poole*,
922 F.3d 69 (2d Cir. 2019) ...............................................51

*NAACP* v. *Trump*, 298 F. Supp. 3d 209 (D.D.C. 2018) ...................25

*Nat'l Council of La Raza* v. *Cegavske*,
800 F.3d 1032 (9th Cir. 2015)............................................23

*Ne. Fla. Chapter of Associated Gen. Contractors of Am.* v. *City of Jacksonville*, 508 U.S. 656 (1993)...............................27, 28

*New Hope Family Servs., Inc.* v. *Poole*,
966 F.3d 145 (2d Cir. 2020) ..............................................40

*Nnebe* v. *Daus*, 644 F.3d 147 (2d Cir. 2011)........................52, 53

*NXIVM Corp.* v. *Ross Inst.*, 364 F.3d 471 (2d Cir. 2004)................51

*Toth on behalf of T.T.* v. *City of N.Y. Dep't of Education*,
720 F. App'x. 48...........................................................49

*Parents Involved in Comm. Sch.* v. *Seattle Sch. Dist. No. 1*, 551
U.S. 701 (2007)............................................................47

*Pen Am. Ctr., Inc.* v. *Trump*,
448 F. Supp. 3d 309 (S.D.N.Y. 2020).....................................19

*Pietsch* v. *Bush*, 755 F. Supp. 62 (E.D.N.Y. 1991), *aff'd*, 935 F.2d
1278 (2d Cir. 1991) .......................................................37

*Prairie Rivers Network* v. *Dynegy Midwest Generation, LLC*,
2 F.4th 1002 (7th Cir. 2021) ........................................21, 24, 45, 47

*Regents of Univ. of Cal.* v. *Bakke*, 438 U.S. 265 (1978) .................33

*Residents & Fams. United to Save Our Adult Homes* v. *Zucker*,
Civ. No. 16-1683, 2018 WL 1175152 (E.D.N.Y. Mar. 5, 2018)......................19

*North Carolina* v. *Rice*, 404 U.S. 244 (1971)........................................................41

*Roberts* v. *Bassett*,
Civ. No. 22-710, 2022 WL 785167 (E.D.N.Y. Mar. 15, 2022).................36, 37

*Roberts* v. *Bassett*,
Civ. Nos. 22-622, 22-692, 2022 WL 16936210 (2d Cir. Nov. 15,
2022) ........................................................................................................................37

*Rojas* v. *Cigna Health & Life Ins. Co.*,
793 F.3d 253 (2d Cir. 2015) ...............................................................................53

*Russman* v. *Bd. of Educ. of Enlarged City Sch. Dist. of City of
Watervliet*, 260 F.3d 114 (2d Cir. 2001)...........................................................43

*S. Walk at Broadlands Homeowner's Ass'n, In*c. v. *OpenBand at
Broadlands, LLC*, 713 F.3d 175 (4th Cir. 2013) ............................................21

*S.C. State Conf. of NAACP* v. *Alexander*,
Civ. No. 21-3302, 2022 WL 453533 (D.S.C. Feb. 14, 2022)..........................23

*SFFA, Inc.* v. *President and Fellows of Harvard College*,
980 F.3d 157 (1st Cir. 2020) ...............................................................................25

*SFFA, Inc.*, v. *Univ. of N.C.*,
Civ. No. 14-954, 2018 WL 4688388 (M.D.N.C. Sept. 29, 2018) ...................25

*SFFA, Inc.* v. *Univ. of Tex. at Austin*,
37 F.4th 1078 (5th Cir. 2022) ............................................................................25

*Shea* v. *Kerry*, 796 F.3d 42 (D.C. Cir. 2015.........................................................32

*Soule by Stanescu* v. *Conn. Ass'n of Sch., Inc.*,
57 F.4th 43 (2d Cir. 2022).....................................................................................43

*Speech First, Inc.* v. *Shrum*,
Civ. No. 23-29, 2023 WL 2905577 (W.D. Okla. Apr. 10, 2023) .......................8

x

*Square D Co.* v. *Niagara Frontier Tariff Bureau, Inc.*,
   760 F.2d 1347 (2d Cir. 1985) ........................................................39, 40

*Steel Co.* v. *Citizens for a Better Env't*, 523 U.S. 83 (1998) .....................2, 34, 35

*Stone* v. *Austin*,
   Civ. No. 21-4822, 2021 WL 4443733 (E.D.N.Y. Sept. 28, 2021) ...................37

*Summers* v. *Earth Island Inst.*, 555 U.S. 488 (2009) ...............................*passim*

*Tenn. Republican Party* v. *SEC*,
   863 F.3d 507 (6th Cir. 2017) ....................................................................21

*Trachtman* v. *Anker*, 563 F.2d 512 (2d Cir. 1977) ...............................................49

*U.S. Titan, Inc.* v. *Guangzhou Zhen Hua Shipping Co.*,
   241 F.3d 135 (2d Cir. 2001) .....................................................................31

*Uzuegbunam* v. *Preczewski*, 141 S. Ct. 792 (2021) ...........................................46

*Warth* v. *Seldin*, 422 U.S. 490 (1975) ..................................................................35

*Warth* v. *Seldin*, 495 F.2d 1187 (2d Cir. 1974) .............................................51, 52

*Weinreb* v. *Xerox Bus. Servs., LLC Health & Welfare Plan*,
   323 F. Supp. 3d 501 (S.D.N.Y. 2018) ...................................................57

*Weinstein* v. *City of New York*, 622 F. App'x. 45 (2d Cir. 2015) .....................46

*Whitaker* v. *Dep't of Commerce*, 970 F.3d 200 (2d Cir. 2020) ..........................50

*United States* v. *Wilkerson*, 361 F.3d 717 (2d Cir. 2004) .................................51

## Statutes, Regulations, and Rules

28 U.S.C. § 1653 ...................................................................................................48

28 U.S.C. § 1746 ...................................................................................................26

42 U.S.C. § 2000d-3 .............................................................................................57

42 U.S.C. § 2000d-4a(3)(A)(i) ............................................................................56

42 U.S.C. § 2000d-4a(3)(A)(ii) ...................................................54

42 U.S.C. § 18122(2)(B) ...........................................................54

45 C.F.R. § 92.3(b) ...................................................................54

Fed. R. Civ. P. 12(h)(3) ........................................................2, 35

## INTRODUCTION

This case concerns a challenge to Pfizer's Breakthrough Fellowship Program (the "Fellowship"), a highly competitive early-career program created to develop a pipeline of diverse leaders at Pfizer. At the same time that Do No Harm ("DNH") filed its complaint (the "Complaint"), it sought a temporary restraining order and preliminary injunction that would prohibit Pfizer from selecting its 2023 Fellowship class and require changes to the Fellowship's selection criteria.

In adjudicating the request for a preliminary injunction, the district court correctly concluded that DNH lacked Article III standing, and thereafter appropriately dismissed the Complaint without prejudice for lack of subject matter jurisdiction. This Court should summarily affirm the judgment of the district court.

On a preliminary injunction motion, DNH's burden to demonstrate that it had Article III standing to sue was "no less than that required on a motion for summary judgment," requiring DNH to "set forth by affidavit or other evidence specific facts" that establish the "three familiar elements of standing: injury in fact, causation, and redressability." *Cacchillo* v. *Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011). The district court evaluated the facts submitted by DNH, and correctly concluded they did not suffice to establish Article III standing.

Once the district court determined that DNH lacked Article III standing, the district court was obligated under well-established Supreme Court precedent and Federal Rule of Civil Procure 12(h)(3) to dismiss the case without prejudice. *Steel Co.* v. *Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); *Fox* v. *Bd. of Trustees of State Univ. of N.Y.*, 42 F.3d 135, 144 (2d Cir. 1994); Fed. R. Civ. P. 12(h)(3). The district court correctly did so here.

Consequently, DNH's principal argument that the district court's dismissal of the case *sua sponte* was procedurally erroneous is both factually and legally wrong. DNH had plenty of notice and opportunity to be heard on whether it had Article III standing. DNH takes no issue with the foundational principle that without Article III standing, a court lacks subject matter jurisdiction; and without subject matter jurisdiction, a court has no power to adjudicate a case. DNH deliberately chose to bring a preliminary injunction motion rather than to rest on its Complaint. Having made that choice, DNH cannot now complain that the district court demanded too much in terms of its burden of proof.

Further, as a consequence of DNH's litigation strategy, this case is now moot. When a case is moot, a court lacks subject matter jurisdiction and dismissal is similarly required—another reason this Court should affirm the judgment of the district court.

Given the lack of subject matter jurisdiction, this Court need not reach the question of whether DNH had statutory standing to bring its federal claims, although the district court was right to conclude that DNH also lacked statutory standing.

Finally, given the dismissal of all the federal claims in the case, the district court properly declined to exercise supplemental jurisdiction over DNH's state-law claims.

## STATEMENT OF THE ISSUES

1.    Whether the district court correctly held that DNH lacked Article III standing.

2.    Whether the district court properly dismissed the Complaint without prejudice for lack of subject matter jurisdiction.

3.    Whether this case is moot because DNH no longer has any member with a personal stake in its outcome.

4.    Whether the district court correctly reasoned that DNH lacked statutory standing to bring its federal claims.

5.    Whether the district court properly declined to exercise supplemental jurisdiction over DNH's state-law claims.

## STATEMENT OF THE CASE

### A.    Background

1.    Appellee Pfizer is a global research-based company engaged in the discovery, development, manufacturing, marketing, sale and distribution of biopharmaceutical products.  JA88 ¶ 3.  Pfizer does not provide any medical treatment or administer health care.  JA88 ¶ 4.  Pfizer does not receive any federal funding from Medicare or Medicaid.  JA89 ¶ 10.  Pfizer does not receive any federal funding through its participation in the Accelerating Medicines Program, nor does it receive any federal funding through its Center for Therapeutic Innovation's collaboration with the National Institutes of Health.  JA88-89.  Pfizer does not receive funding from the federal government to operate its business as a whole.  JA88 ¶ 5.

Pfizer strives to recruit and retain highly talented, diverse employees so that its workforce reflects the communities it serves and because diverse teams make better business decisions and create a more inclusive work environment.  JA78-79 ¶ 4.  Pfizer takes a broad view of diversity in its hiring process—and includes military status, socioeconomic status, membership in underrepresented racial groups, membership in the LGBTQ+ community, and first-generation status.  JA79 ¶ 5.  Yet Pfizer has faced challenges in recruiting, retaining, and promoting diverse talent.  JA81 ¶ 8.  Pfizer has worked to overcome those challenges through a multi-faceted approach to diversity, including innovative programs like the Fellowship.  *See* JA82-83.

4

The Fellowship is a highly competitive, multi-year early-career program. JA82 ¶ 13. The Fellowship was created in recognition of Pfizer's particular challenges in increasing the pipeline of future Black/African American, Latino/Hispanic, and Native American leaders. *See* JA81 ¶¶ 8-10, JA82 ¶ 11. Fellows begin with a summer internship at Pfizer between their junior and senior years of college. JA82 ¶ 14. After graduation from their undergraduate program, fellows return to work at Pfizer as an analyst for two years. *Id*. Following two years as an analyst, Pfizer pays for fellows to complete a Master of Business Administration ("MBA"), Master of Public Health ("MPH"), or a Master of Science in Statistics ("MS Statistics"). JA82 ¶ 15. Fellows complete another internship with Pfizer between their first and second years of their graduate program. JA83 ¶ 16. After earning their graduate degree, fellows return to Pfizer full-time in a Manager-level position. *Id.*

Selection for the Fellowship is fiercely competitive: Pfizer received thousands of applications for the forty spots in the 2021 and 2022 classes. JA83 ¶¶ 20-21. The selected fellows well exceed Pfizer's minimum selection criteria, which are that applicants: be U.S. citizens or permanent residents; be enrolled in a full-time undergraduate program and graduating the following year; show interest and intent to pursue an MBA, MPH, or MS Statistics; have a 3.0 or higher GPA; and be willing to work in New York City. JA83 ¶ 18. Qualified candidates must also demonstrate exceptional leadership skills, and meet the

program's goals of increasing the pipeline for Black/African American, Latino/Hispanic, and Native American leaders. *Id.* Pfizer does not receive federal funding to operate the Fellowship. JA83 ¶ 17.

For the 2023 Fellowship class, the application opened in February 2023, and is now closed.

2. Appellant DNH is a Virginia-based not-for-profit organization founded in April 2022. Its self-proclaimed mission is to "protect healthcare from radical, divisive, and discriminatory ideologies" through "advocacy against the divisive and discriminatory ideas" within the medical profession. JA9 ¶¶ 9-10. Its members include "physicians, healthcare professionals, medical students, patients, and policymakers." JA9 ¶ 9. DNH was founded six months prior to filing its Complaint and, since it was founded, it has filed multiple complaints against what it perceives to be discrimination against white and Asian-American individuals. JA9 ¶ 10.

**B. Procedural History**

1. On September 15, 2022, DNH filed a Complaint against Pfizer. *See* JA2, JA7. DNH alleged that Pfizer's Fellowship constituted unlawful racial discrimination and brought claims under Section 1981, Title VI, Section 1557 of the Affordable Care Act ("ACA"), and the New York State and City Human Rights Laws. *See* JA7-33. At the same time as filing the Complaint,

DNH filed a motion for a temporary restraining order and for a preliminary injunction. *See* JA2.

On September 21, 2022, based on Pfizer's representation that the Fellowship application was anticipated to open in January 2023, DNH withdrew its request for a temporary restraining order. *See* JA5; *see also* Dkt. No. 38-1 ("Mot. To Supp.") ¶ 4. The district court set a briefing schedule for the preliminary injunction motion to be completed and decided in advance of Pfizer's opening of the 2023 application cycle. *See* JA5; JA84 ¶ 25. On September 27, 2022, the district court extended Pfizer's time to answer or otherwise respond to the Complaint to twenty-one days after the court's resolution of the motion for a preliminary injunction. JA5.

In support of DNH's request for a preliminary injunction, DNH submitted anonymous, unsworn declarations from two of its members, "Member A" and "Member B," who it claimed were excluded from the Fellowship application on the basis of race. *See* JA2. Despite the district court's request at the September 21, 2022 conference, DNH declined to identify the two members by name or otherwise. JA97.

The anonymous members submitted nearly identical declarations containing high-level, generalized statements purportedly demonstrating each Member's eligibility for selection to the 2023 class but for their race. *See* JA36-41. Each declaration states that the member is a "junior at an Ivy League

university," with a "GPA higher than a 3.0," who "holds leadership positions in student organizations," and that they "would like to apply to the Pfizer Breakthrough Fellowship program [and] meet all the [Fellowship's] eligibility requirements." *Id.* The declarations provided scant additional detail about the Members' professional background or concrete interest in the Fellowship, such as particularized descriptions about prior leadership positions, volunteer programs, demonstrated commitment to community service, exceptional leadership skills, or any information or facts that show that the Members have a committed intent to pursue an MBA, MPH, or MS Statistics program. *Id.*

2.    On December 16, 2022, the district court denied DNH's request for a preliminary injunction and dismissed the case without prejudice for lack of subject matter jurisdiction. *See* JA91-134.

*First*, the court held that DNH failed to satisfy the irreducible constitutional minimum of Article III standing. The court explained that two separate, and individually dispositive, reasons showed that DNH lacked Article III standing. As to the first reason, the court explained that DNH's anonymous declarations were insufficient to meet its burden on a motion for a preliminary injunction to satisfy the requirement that an organization must identify by name a member with Article III standing. JA102-109.[1]

---

[1] Another district court recently reached the same conclusion on very similar facts. In *Speech First, Inc.* v. *Shrum*, Civ. No. 23-29, 2023 WL 2905577

As to the second independent reason, the court held that DNH lacked Article III standing because it had failed to put forward sufficient facts demonstrating that Members A or B suffered an injury-in-fact. JA109-115. Members A and B were required to show that they were "able and ready" to apply to the Fellowship. JA110. The district court found that Members A and B's declarations "provide very little facts showing that the members – from undisclosed universities, with unnamed majors or courses of study, with little to no details about their career and educational goals, employment history, or interests – were ready and able to apply to the Fellowship." JA113. Specifically, the district court found that the declarations did not "provide any information, facts, or prior experience to show a 'committed interest and intent' to pursue" a required graduate program. *Id.* Instead, the vague statements in the declaration demonstrated only "some benefit gained from such graduate programs." *Id.* The court also found that the declarations lacked sufficient facts demonstrating "exceptional leadership potential" for the program, including because neither Members A nor B stated "with particularity any activity, leadership position, or volunteer program" that they led or participated in. JA113-114. And the court found there was no evidence that either Member A or B

---

(W.D. Okla. Apr. 10, 2023), where the plaintiff is represented by the same counsel as Appellant here, the district court dismissed Speech First's case without prejudice for lack of Article III standing because Speech First's anonymous member declarations failed to identify a member with Article III standing as *Summers* requires.

had any particular educational or experiential background that would suggest that they would be interested in the Fellowship at all. JA114.

For these reasons, the court held DNH did not met its burden of demonstrating injury-in-fact necessary for Article III standing; because it lacked subject matter jurisdiction, the court accordingly held it must dismiss the case without prejudice. JA132-133.

*Second*, the district court provided additional reasoning and analysis that DNH lacked statutory standing to bring each of its federal claims. The court reasoned that, "even if Plaintiff had provided named member declarations with more definite affirmative facts regarding the members' qualifications and a concrete intent to apply," that satisfied Article III's injury-in-fact requirements, the Complaint would "still be dismissed" because DNH lacked statutory standing to bring each of its federal claims. JA115. As to Section 1981, the court reasoned DNH lacked statutory standing as a matter of law due to this Court's well-established precedent barring associational standing for Section 1981 claims. JA115-118. The district court also noted that DNH lacked statutory standing to bring claims under Title VI and Section 1557 of the ACA because neither statute applies to Pfizer, which does not receive federal funding for the primary purpose of providing employment, is not principally engaged in the business of providing healthcare, and does not receive federal financial assistance as a whole. JA118-132.

*Finally*, after concluding it lacked subject matter jurisdiction, the court held that it would be "clearly inappropriate" to exercise supplemental jurisdiction over the state-law claims. JA134.

3.      After Pfizer opened and closed the 2023 Fellowship application cycle (of which DNH was well aware throughout the proceedings below), DNH moved to improperly supplement the record on appeal with two declarations regarding an additional "Member C" who would allegedly apply for the Fellowship in 2024. *See* Mot. To Supp. Much like the Members A and B declarations, Member C's declaration is anonymous and provides similarly high-level, generalized statements about their qualifications for the Fellowship and intent to apply. Dkt. No. 38-2.

## SUMMARY OF ARGUMENT

The district court's judgment should be affirmed for several independent reasons.

I.      The district court correctly dismissed the case without prejudice for lack of subject matter jurisdiction because DNH failed to satisfy the bedrock requirement under Article III that a plaintiff must have standing to proceed in federal court.

A.      DNH failed to establish that at least one of its members has standing to sue in his or her own right, a showing DNH was required to make as an organization claiming associational standing.

11

1.      The unsigned, anonymous Members A and B declarations failed to satisfy the requirement imposed by the Supreme Court's decision in *Summers* v. *Earth Island Institute* and prior decisions that an association identify by name at least one member with standing.  Numerous courts of appeals, and district courts in this circuit, are in agreement.

DNH's attempts to avoid the naming requirement fail.  As a result of its own choice to move for a preliminary injunction, DNH was required to establish standing to the degree of proof required at summary judgment, and it failed to do so.  No case cited by DNH supports exempting it from the naming requirement on a preliminary injunction.

2.      Further, the declarations of Members A and B fail to set forth specific facts demonstrating that they are "able and ready" to apply to the Fellowship—a requirement to demonstrate injury-in-fact in a case, as here, challenging an allegedly discriminatory program—including detailed facts showing a concrete interest in the Fellowship and that they are in a position to compete for a spot based on the Fellowship's minimum requirements.  The declarations contain no detail about the activities Members A and B participate in on campus, or the leadership positions they hold, and thereby fail to remotely demonstrate "exceptional leadership potential," one such minimum Fellowship requirement.  Members A and B's declarations also lack any facts demon-

strating a committed interest and intent in pursuing one of the required graduate degrees, another minimum Fellowship requirement, and instead suggest nothing more than vague benefits they might receive should they enroll in such programs.

DNH's arguments to the contrary fail because they again ignore the burden of proof on a preliminary injunction and they attempt to erase the "able and ready" standard altogether.

B.    Once it determined that DNH lacked Article III standing, the district court was required to dismiss the case without prejudice for lack of subject matter jurisdiction.  In a long line of cases, the Supreme Court has repeatedly stated that a court's only option is to dismiss a case when subject matter jurisdiction is lacking—a requirement that is codified in Federal Rule of Civil Procedure 12(h)(3).  When considering a motion for a preliminary injunction, courts routinely dismiss (or affirm the dismissal of) cases for lack of subject matter jurisdiction where, as here, the plaintiff failed to meet its burden of demonstrating Article III standing.

II.    This appeal is also now moot because Members A and B will not be eligible to apply to any future Fellowship class.  As an organizational plaintiff, DNH's case becomes moot when its members' claims are moot.

A.     Members A and B no longer have a personal stake in the outcome of this case, and no relief any court could fashion would redress their purported injury vis-à-vis Pfizer.  That is because, by DNH's own admission, Members A and B were eligible only for the 2023 Fellowship class, and in future application years would not meet the Fellowship requirement to be a rising college senior.

B.     A single threadbare allegation in the Complaint of an unidentified member who is "a sophomore who is ready and able to apply to the Fellowship next year" is patently insufficient to save DNH's case from mootness under any standard of review.  Nor does its request for nominal damages keep this case live, because DNH failed to show that it has any member with Article III standing.

C.     This Court should not supplement the record with Member C's declaration because there are no "extraordinary circumstances" warranting the introduction of evidence that the district court had no opportunity to consider, particularly where, as here, DNH was well aware throughout the district court proceedings that its case would be rendered moot.  Even if it were considered, the Member C declaration would not salvage this case because it fails to establish Article III standing for the same reasons as the declarations of Members A and B.

14

III.   Because the district court dismissed the case "without prejudice for lack of subject-matter jurisdiction," not for lack of statutory standing, JA134, this Court need not consider DNH's remaining arguments that it has statutory standing to bring its federal claims.

A.   Even if the Court were to consider them, the district court correctly reasoned that DNH lacked statutory standing to bring a Section 1981 claim because in this Circuit, there is no associational standing to bring Section 1981 claims as a matter of law.

B.   The district court also correctly reasoned that DNH lacked statutory standing to bring its Title VI and ACA claims because Pfizer is not subject to these statutes based on their plain language, relevant federal regulations, and dictionary definitions of the relevant statutory terms.  Because the district court found, on a preliminary injunction motion, that DNH lacked statutory standing to bring any of its federal claims, dismissal was appropriate.

IV.   Because the district court had no subject matter jurisdiction, it was required not to exercise supplemental jurisdiction over the state-law claims.

## STANDARDS OF REVIEW

The burden of proving subject-matter jurisdiction is on the party asserting it.  *Malik* v. *Meissner*, 82 F.3d 560, 562 (2d Cir. 1996).  Where, as here, a plaintiff sought a preliminary injunction in the district court, its burden to

demonstrate Article III standing (and thus the court's subject-matter jurisdiction) is "no less than that required on a motion for summary judgment." *Cacchillo* v. *Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011).[2] "Accordingly, to establish standing for a preliminary injunction, a plaintiff cannot rest on such mere allegations" in its complaint, "but must set forth by affidavit or other evidence specific facts" that establish the "three familiar elements of standing: injury in fact, causation, and redressability." *Id.* (quoting *Summers* v. *Earth Island Inst.*, 555 U.S. 488 (2009) and *Lujan* v. *Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

This Court reviews factual findings regarding subject-matter jurisdiction for clear error, and reviews *de novo* "the legal conclusion as to whether subject matter jurisdiction exists." *Lyndonville Sav. Bank & Tr. Co.* v. *Lussier*, 211 F.3d 697, 701 (2d Cir. 2000). Just as the district court can, this Court may "consider affidavits and other materials beyond pleadings relied upon by the district court below" to determine standing. *Connecticut Parents Union* v. *Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021).

---

[2]    With respect to quoted material, unless otherwise indicated, all brackets, ellipses, footnote call numbers, internal quotations, and citations have been omitted for readability. All emphasis is added unless otherwise indicated.

## ARGUMENT

## I.   THE DISTRICT COURT CORRECTLY DISMISSED THE CASE WITHOUT PREJUDICE FOR LACK OF SUBJECT MATTER JU-RISDICTION

Where Article III standing is absent, the court "lacks the power to ad-judicate the merits of the case" and should dismiss the case for lack of subject-matter jurisdiction without prejudice. *Fac.* v. *New York Univ.*, 11 F.4th 68, 78 (2d Cir. 2021). The district court correctly held that DNH lacked Article III standing, and correctly dismissed its case without prejudice for lack of subject-matter jurisdiction.

### A. The District Court Correctly Held that DNH Lacks Article III Standing.

As an organization seeking to establish Article III associational stand-ing, DNH had to make three showings: (1) at least one of its members has standing to sue in his or her own right; (2) the interests it seeks to protect in the litigation are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt* v. *Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). The district court correctly held that DNH failed to satisfy the first requirement.

1. **The District Court Correctly Held that DNH Lacks Article III Standing Because It Failed To Identify Members A or B.**

Under the Supreme Court's decision in *Summers*, an association must identify by name at least one member with standing. *Summers* v. *Earth Island Inst.*, 555 U.S. 488, 498-99 (2009).[3] In *Summers*, the Court held that environmental organizations lacked associational standing to challenge the implementation of certain Forest Service regulations. *Id.* at 497-500. In challenging the merits of the regulations and seeking a preliminary injunction to enjoin a certain regulatory project, one organization in particular pled in the complaint that many of its members—who were not identified by name—were injured by the challenged regulations, in order to establish that at least one member had standing. *Id.* at 498-99. Affirming the line of cases which "required plaintiff-organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm," the Court emphasized that the "requirement of naming the affected members has never been dispensed with." *Id.* at 498 (citing *Lujan* v. *Defs. of Wildlife*, 504 U.S. 555, 563 (1992)). To conclude otherwise, based on "the organizations' self-descriptions of their membership," would be to neglect the Court's "independent obligation to assure that standing exists." *Id.* at 499. The *Summers* Court also relied on its prior decision in *FW/PBS, Inc.* v. *City of Dallas*, noting the

---

[3] The only exception to this requirement is where "all the members of the organization are affected by the challenged activity," *Summers*, 555 U.S at 498-99, and DNH does not argue that this exception applies.

affidavit that supported the claim for associational standing there was "insufficient because it did not name the individuals who were harmed by the challenged license-revocation program." *Id.* at 498. That affidavit, in *FW/PBS*, "failed to identify the individuals whose licenses were revoked" pursuant to the challenged ordinance, and thus failed to show that any petitioner had standing. 493 U.S. 215, 235 (1990).

1. Numerous courts of appeals, and district courts in this circuit,[4] agree that naming at least one affected member is a requirement for associational standing. For example, in *Draper* v. *Healey*, a membership advocacy organization, along with other plaintiffs, brought suit challenging a state regulation prohibiting the sale of certain models of handguns. 827 F.3d 1, 3 (1st Cir. 2016). Citing *Summers*, the First Circuit affirmed the district court's dismissal for lack of standing because, as here, neither the submitted affidavit

---

[4] *Pen Am. Ctr., Inc.* v. *Trump*, 448 F. Supp. 3d 309, 320-21, 321 n.1 (S.D.N.Y. 2020) (rejecting plaintiff's argument that it "need not name an injured member at the pleading stage for associational standing" and holding that plaintiff "is required to identify at least one affected member by name"); *Equal Vote Am. Corp.* v. *Pelosi*, 397 F. Supp. 3d 503, 509 (S.D.N.Y. 2019) ("An organizational plaintiff such as EVA must identify, by name, at least one member with standing."); *Residents & Fams. United to Save Our Adult Homes* v. *Zucker*, Civ. No. 16-1683, 2018 WL 1175152, at *6 (E.D.N.Y. Mar. 5, 2018) (finding an association lacked standing because it did not specifically identify and name members who were injured). As noted, *supra* n. 1, a district court outside this circuit has held similarly.

nor the complaint named an individual who was prevented from selling or purchasing the prohibited handguns. *Id.* (Souter, J., sitting by designation) ("An affidavit provided by an association to establish standing is insufficient unless it names an injured individual."). The First Circuit further explained that the naming requirement applied with equal force "at the pleading stage." *Id.* at 3.

In *Georgia Republican Party* v. *SEC*, the Eleventh Circuit held that the Georgia Republican Party lacked standing to challenge a Securities and Exchange Commission rule regarding political contributions. 888 F.3d 1198, 1204-05 (11th Cir. 2018). On appellate review of final agency action—a posture that the court analogized to summary judgment and thus required the party invoking jurisdiction to, as here, "put forth specific facts supported by evidence"—the court reasoned that the organization failed to identify any member by name who would be harmed by the challenged rule, and thus lacked standing. *Id.* at 1201, 1202, 1204 ("We did not relax the requirement that an organization name at least one member who can establish an actual or imminent injury.").

And in *Associated General Contractors of America* v. *California Department of Transportation*, the Ninth Circuit dismissed a trade association's appeal from a dismissal for lack of Article III standing because it did not "identify any affected members by name nor has it submitted declarations" on summary judgment in the lower court "by any of its members attesting to harm

they have suffered or will suffer." 713 F.3d 1187, 1194-95 (9th Cir. 2013); *see also Tenn. Republican Party* v. *SEC*, 863 F.3d 507, 520 (6th Cir. 2017) (associational standing "requires that the plaintiff-organization name the individuals who were harmed"); *Prairie Rivers Network* v. *Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1011 (7th Cir. 2021) (complaint did not identify "who these members are" who were allegedly injured; noting "courts have read *Summers* to expressly require names for associational standing on the pleadings"); *S. Walk at Broadlands Homeowner's Ass'n, In*c. v. *OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) (affirming dismissal on the pleadings for failure to satisfy *Summers*' naming requirement).

These cases all support the conclusion that the district court correctly held that anonymous declarations fail the *Summers* naming requirement. In *Georgia Republican Party*, even a sworn affidavit by a named member was insufficient because the affiant, who did not claim his own injury, did not identify by name members who were directly affected by the challenged rule. 888 F.3d at 1203-04. And in *Associated General Contractors*, the plaintiff-organization, like DNH has done here, submitted an affidavit from the organization's officer in support of its members' standing; the Ninth Circuit found it to be deficient because it "did not name any specific members." 713 F.3d at 1195.

Further, and as the district court correctly observed, important Article III purposes are served by requiring organizations to name members with

standing because every court examining an organization's associational standing is required to ensure its members have a "personal stake in the outcome of the controversy as to warrant [their] invocation of federal-court jurisdiction." *Summers*, 555 U.S. at 493. The Supreme Court's mandate controls here.

2.     DNH's three arguments to bypass *Summers*' requirement to identify Members A or B by name are unavailing. Notably, these arguments are all predicated upon the incorrect presumption that the district court should have evaluated standing under a plausibility standard. As DNH acknowledges, a plaintiff's burden to show standing grows stronger at the successive stages of litigation. Br. 28. Because DNH chose to seek a preliminary injunction, it was required to establish standing to a higher degree of proof than required on a motion to dismiss. *Cacchillo*, 638 F.3d at 404. DNH's after-the-fact efforts to evade its burden should be rejected.

*First*, DNH contends that, at the pleading stage, it need not identify specific members by name, citing to this Court's decision in *Building & Construction Trades Council of Buffalo* v. *Downtown Development, Inc.*, 448 F.3d 138 (2d Cir. 2006), which pre-dates *Summers*, as well as the Supreme Court's seminal decisions in *Bell Atlantic Corporation* v. *Twombly*, 550 U.S. 544 (2007) and *Ashcroft* v. *Iqbal*, 556 U.S. 662 (2009). In *Building & Construction*, this Court found that it was permissible not to name names solely for purposes of

22

deciding *a motion to dismiss* "where standing is challenged based on the pleadings alone." 448 F.3d at 145. But that is not the posture from which the district court ruled DNH lacked Article III standing and from which DNH filed this appeal. Moreover, in *Building & Construction*, this Court expressly recognized the "validity" of the rule that an association must name names under the summary judgment standard, which is the same standard that applies here in light of the dismissal that was precipitated by the ruling on DNH's motion for preliminary injunction. *Id.* at 144-45.

Since the district court's analysis and ruling applied the proper standard for a preliminary injunction, the cases cited by DNH purporting to stand for the proposition that associations need not name their members at the motion to dismiss stage are inapposite. Br. 28-31; *see Am. Coll. of Emergency Physicians* v. *Blue Cross & Blue Shield of Ga.*, 833 F. App'x 235, 241 n.8 (11th Cir. 2020) (decided on motion to dismiss, and recognizing an organization "may be required to list at least one name" on a posture different than a motion to dismiss); *S.C. State Conf. of NAACP* v. *Alexander*, Civ. No. 21-3302, 2022 WL 453533, at *2 (D.S.C. Feb. 14, 2022) (not requiring organization to name names on motion to dismiss where the alleged injury turned on its members' existence and residence in certain voting districts); *Nat'l Council of La Raza* v. *Cegavske*, 800 F.3d 1032, 1038 (9th Cir. 2015) (on appeal from district court's dismissal on motion to dismiss); *Connecticut* v. *Am. Elec. Power Co.*, 582 F.3d

23

309, 333 (2d Cir. 2009), *rev'd*, 564 U.S. 410 (2011) (on appeal from district court's dismissal on motion to dismiss).

Even on the motion to dismiss pleading standard, and not the heightened standard applicable here, DNH still cannot prevail because setting aside the naming requirement at the pleading stage would run afoul of the *Twombly-Iqbal* pleading standards and would be "akin to [accepting] impermissible speculation rather than permissible presumption." *Prairie Rivers Network*, 2 F.4th at 1010 (citing *Iqbal*, 556 U.S. at 678). And if a court had to accept "general" allegations of standing (without naming names) as DNH argues, Br. 27, 35, association plaintiffs would be permitted to "proceed to discovery in nearly every case," contrary to Federal Rule of Civil Procedure 12. *See Prairie Rivers Network*, 2 F.4th at 1010 ("A defendant should be able to make its own standing challenge as soon as" the Federal Rules "permit it to do so—at the pleadings"). Indeed, the law is clear that it is appropriate to require DNH to provide members' names, even at the pleading stage. *See* Br. 35; *Summers*, 555 U.S. at 499 (emphasizing that it is "surely not a difficult task" to name names); *Prairie Rivers Network*, 2 F.4th at 1010 (association does not need discovery to show standing for one of its members).

The cases on which DNH primarily relies also fail to show that courts have dispensed with the naming requirement in any procedural posture imposing a more exacting burden than on a motion to dismiss. Br. 31-32; *see*

*NAACP* v. *Trump*, 298 F. Supp. 3d 209, 225 & n.10 (D.D.C. 2018) (decided on motion to dismiss where the court needed only to find plausible a single dispositive issue—whether or not anonymous member was a DACA beneficiary); *FAIR* v. *Rumsfeld*, 291 F. Supp. 2d 269, 286 n.6 (D.N.J. 2003), *rev'd on other grounds*, 547 U.S. 47 (decided on motion to dismiss, members' names submitted for in camera review, and association identified two other members by name in operative complaint); *SFFA, Inc.* v. *Univ. of N.C.*, Civ. No. 14-954, 2018 WL 4688388, at *6 (M.D.N.C. Sept. 29, 2018) (decided on motion to dismiss, and members submitted signed declarations); *SFFA, Inc.* v. *President and Fellows of Harvard College*, 980 F.3d 157, 183 (1st Cir. 2020) (affirming denial of motion to dismiss for lack of standing); *SFFA, Inc.* v. *Univ. of Tex. at Austin*, 37 F.4th 1078, 1086 (5th Cir. 2022) (affirming denial of motions to dismiss for lack of standing).

*Second*, DNH contends that each of its members should be permitted to remain anonymous because they are not a "party" under Rule 10(a).  Br. 32. This argument is a red herring.  In dicta, the district court simply noted that DNH failed to avail itself of procedures designed to allow litigants to proceed anonymously, given its members' claimed fear of "reprisal if their participation in this litigation becomes public."  JA97.  The fundamental point remains that an organization cannot have standing unless it establishes that its members

have standing; by masking its Members' identity, DNH has failed to meet its burden to do so.[5]

*Third*, DNH contends that it is subject to a lesser burden to show standing than the plaintiff-organizations in *Summers* because DNH's members are "directly affected" by Pfizer's conduct, 555 U.S. at 497, whereas in *Summers*, the organizations argued it was a statistical probability that they had at least one member with standing. Br. 34. But just as the statistical probability theory of standing was rejected because it failed to identify any member who was directly affected by the challenged regulations, here too, anonymous declarations do not meet DNH's burden of proof to establish standing. Further, nothing in *Summers* dispenses with the naming requirement even where an organization's members are "directly affected" by the defendant's conduct. 555 U.S. at 498-99.

### 2. DNH Failed To Show Injury-In-Fact for Failing To Establish that Members A and B are "Able and Ready" To Apply.

To establish standing in a case, as here, challenging a programmatic requirement as discriminatory, a plaintiff must demonstrate that they are "able

---

[5] The district court was correct to note that the unsigned, unsworn declarations of Members A and B do not satisfy 28 U.S.C. § 1746 because "without any record whatsoever of [the members'] identity or their signature, a declarant cannot be held to their statements under penalty of perjury." *Doe* v. *L.A. Unified Sch. Dist.*, Civ. No. 20-2131, 2017 WL 797152, at *9 (C.D. Cal. Feb. 27, 2017); *see* JA107 n.4.

26

and ready" to apply to the challenged program but for its allegedly discriminatory criteria. *Ne. Fla. Chapter of Associated Gen. Contractors of Am.* v. *City of Jacksonville*, 508 U.S. 656, 666 (1993). The Supreme Court recently reaffirmed that to meet the "able and ready" standard, a plaintiff must "sufficiently differentiate himself from a general population of individuals affected in the abstract by the legal provision he attacks." *Carney* v. *Adams*, 141 S. Ct. 493, 502 (2020). The plaintiff in *Carney*, who challenged a Delaware law requiring an applicant for a judgeship to declare a political party affiliation, failed to make this showing on summary judgment because he failed to adduce evidence that he applied in the past, or went to any efforts to prepare an application or investigate likely judgeship openings. *Id.* at 501. This failure of proof, coupled with his averment that he "would apply," were mere "words of general intent" and suggested an "abstract, generalized grievance" that failed to show injury-in-fact. *Id.* So too was his statement that he met the "minimum qualifications" for a judgeship. *Id.* at 500.

"The district court has the power to resolve any factual dispute regarding the existence of subject matter jurisdiction." *Cargill Int'l S.A.* v. *M/T Pavel Dybenko*, 991 F.2d 1012, 1019 (2d Cir. 1993). Here, the district court correctly found that, as a matter of fact, "the perfunctory two-page anonymous declarations from Members A and B simply track the Fellowship requirements and provide very little facts showing that the members . . . were ready

and able to apply to the Fellowship." JA113. These declarations, devoid of any factual detail supporting their statements claiming ability and readiness to apply, are "words of general intent" that suggest only an "abstract, generalized grievance, not an actual desire to" apply to the Fellowship. *Carney*, 141 S. Ct. at 501. And as in *Carney*, Members A and B failed to set forth sufficient facts demonstrating that they were minimally qualified for the Fellowship given the declarations were devoid of facts demonstrating that they meet the Fellowship's minimum requirements. *Id.*; *cf. Ne. Fla.*, 508 U.S. at 668-69 (standing where members "regularly bid on construction contracts in Jacksonville" and intended to do so again).

As other Circuits have held, the failure of a plaintiff to establish that they meet the minimum qualifications for a challenged program is fatal to Article III standing. *E.g.*, *Melendez* v. *Ill. Bell Tel. Co.*, 79 F.3d 661, 668 (7th Cir. 1996); *Coe* v. *Yellow Freight Sys., Inc.*, 646 F.2d 444, 451 (10th Cir. 1981). The Ninth Circuit's decision in *Carroll* v. *Nakatani* is particularly instructive. In that case, the plaintiff applied for a loan program that he alleged was available only to Native Hawaiians in order to start a copy shop. 342 F.3d 934, 938, 941 (9th Cir. 2003). In finding that he lacked Article III standing, the court noted that the plaintiff had "done essentially nothing to demonstrate that he is in a position to compete equally with other . . . loan applicants," where he had "no

work history with small business copy shops or any other entrepreneurial endeavors that might bolster his bona fides." *Id.* at 942-43.

1.     The district court here made factual findings that Members A and B failed to adduce evidence showing they minimally demonstrated a "committed interest and intent to pursue an MBA, MPH, or MS Statistics program" and "exceptional leadership potential." JA48, JA113. As to the former, the district court found their declarations "indicate some benefit gained from such graduate programs," but "do not provide any information, facts, or prior experience to show a 'committed interest and intent' to pursue" an MBA. JA113. Indeed, the declarations evince nothing more than a vague interest in going to graduate school for free—a sentiment shared by many college students. Member A states that "a fully funded MBA program would be a wonderful way to enrich [their] professional experience." JA37 ¶ 8. Member B does not even bother to specify which graduate degree they are interested in, stating only that "it would be great to gain valuable management skills through graduate studies." JA40 ¶ 8.

The district court also correctly found that the facts pled failed to sufficiently demonstrate that Members A and B had any concrete interest in the Fellowship at all. As the district court noted, "there are no allegations that either anonymous member has pursued opportunities similar to the Fellowship in the past, has engaged in a course of study at their unnamed university

that would demonstrate an interest in pursuing a program like the Fellowship, or has any prior involvement with or interest in Pfizer, biopharmaceutical companies, or business management generally." JA114. Instead, Members A and B merely note that they are interested in the Fellowship because it is "prestigious" and that it is a "great professional development opportunity." JA36 ¶ 7, JA39 ¶ 7. Just as the Court held as to the paltry factual record in *Carney*, these generalized statements about the vague benefits of the Fellowship are insufficient to demonstrate an "intent [to apply] that is concrete." 141 S. Ct. at 502.

As to the second requirement—"exceptional leadership potential"—the district court correctly found that the declarations offered only "generalized recitals"—such as that Members A and B are "involved in campus life" and "hold leadership positions," JA36 ¶ 6; JA39 ¶ 6—not facts or evidence of "any activity, leadership position, or volunteer program, nor do they demonstrate that the members possess 'exceptional leadership potential.'" JA113-114. The district court's fact finding is well supported, not clearly erroneous.

2.     In an effort to avoid the conclusion that, on the record before the district court, DNH failed to adduce sufficient facts showing Members A or B were minimally qualified for the Fellowship, DNH resorts again to its arguments that the district court failed to apply the pleading standard and accept as true allegations that Members A and B "satisfy the Fellowship's nonracial

criteria." Br. 37. But DNH cannot rewrite the procedural history of this case: DNH's request for a preliminary injunction irrefutably placed upon it the burden to demonstrate standing with affidavits and evidence, not threadbare allegations. Indeed, in *Carney*, the Court carefully "examined the summary judgment record to determine whether [the plaintiff] made this showing." 141 S. Ct. at 500. Likewise here, the district court correctly did not confine itself to allegations in the Complaint, and DNH could not rest on those allegations to establish standing. *See id.*[6]

DNH argues that a court cannot inquire into the minimal qualifications of Members A and B to determine whether they were "able and ready" to apply to the Fellowship. Br. 38. But that is not what the district court did. Rather, the district court concluded that the record lacked specific facts demonstrating that Members A and B could minimally satisfy those requirements. JA 113-114. This is a factual determination, which may only be set aside if "clearly erroneous." *U.S. Titan, Inc.* v. *Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 146 (2d Cir. 2001). DNH makes no argument that the district

---

[6] The allegations in the Complaint are far too conclusory to sustain Article III standing, even if the motion to dismiss standard applied. No court could infer that Members A and B were "able and ready" to apply based on the Complaint, because its allegations are even more threadbare than the declarations that the district court considered and found lacking. JA114-15. And even at the pleading stage, a plaintiff must "allege facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter* v. *HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). DNH has not done so.

court's determination that Members A and B failed to adduce sufficient facts showing their minimal qualifications for the Fellowship can be reversed as clear error.

DNH relies on dicta in *Shea* v. *Kerry* that "we do not inquire into the plaintiff's qualifications (or lack thereof) when assessing standing" if the complained-of injury is the inability to compete on equal footing. 796 F.3d 42, 50 (D.C. Cir. 2015); Br. 38. The D.C. Circuit made that observation when assuring itself of subject matter jurisdiction. But that statement has no bearing on whether the plaintiff was "able and ready" to apply for the position for which he sought to compete on equal footing. Those issues are distinct, and DNH seeks to collapse them. The requirement of proof to showing that an individual is "able and ready" to apply—in order to have the opportunity to compete— exists to "differentiate" plaintiffs "from a general population of individuals affected in the abstract by the legal provision." *Carney*, 141 S. Ct. at 502. And discarding it "would significantly weaken the longstanding legal doctrine preventing [courts] from providing advisory opinions at the request of one who, without other concrete injury," believes that a policy contravenes the law. *Id.* at 501.

Further, DNH argues that "the district court would have a point" that Members A and B lacked standing to challenge the Fellowship, "if Members A and B had GPAs lower than a 3.0 or had already graduated college." Br. 38.

32

But a committed interest in pursuing certain post-graduate programs and exceptional leadership potential are just as much part of Pfizer's stated minimum requirements for the Fellowship as the minimum GPA and required class year, and DNH offers no authority for drawing a distinction among these minimum requirements. *Bakke* is no help to DNH in this regard because it does not concern a plaintiff that did not meet the minimum qualifications of the position. *See Regents of Univ. of Cal.* v. *Bakke*, 438 U.S. 265, 276 (1978) (noting that the plaintiff's application received a "strong benchmark score").

Last, DNH's efforts to distinguish *Carney* on the basis that it was decided on a summary judgment motion fails for the simple reason that the same evidentiary burden applies on a preliminary injunction motion, as explained above. *See supra* p. 16; Br. 40.

Moreover, *Carney* and this case are a far cry from those relied on by DNH where there was a sufficient factual record from which to conclude a party was ready to apply. For example, in *Adarand Constructors, Inc.* v. *Pena*, the plaintiff showed that it had standing to challenge a contract allocation program by showing that it "bids on every guardrail project in Colorado," that became available yearly. 515 U.S. 200, 212 (1995). And in *Gratz* v. *Bollinger*, the plaintiff had standing to challenge a university's affirmative action policy where they had "applied for admission to the university as a freshman

applicant and been rejected," and "the university had a 'rolling' transfer program open for application each year." *Carney*, 141 S. Ct. at 502 (citing *Gratz* v. *Bollinger*, 539 U.S. 244, 262 (2003)).[7]

### B. Upon Concluding that DNH Lacked Article III Standing, the District Court Was Required To Dismiss the Complaint Without Prejudice for Lack of Subject Matter Jurisdiction.

Where a court determines—at any time and in whatever posture—that it lacks Article III subject matter jurisdiction to hear a case, it is obligated under well-established Supreme Court precedent and Federal Rule of Civil Procedure 12(h)(3) to dismiss the case. *Steel Co.* v. *Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); *Fox* v. *Bd. of Trustees of State Univ. of New York*, 42 F.3d 135, 144 (2d Cir. 1994). Here, once the district court determined that DNH lacked Article III standing, it was obligated to dismiss the case. It correctly did so.

---

[7] While DNH attempts to distinguish this case on the grounds that the level of "insincerity" that was present in *Carney*—where the plaintiff changed his party affiliation before commencing the lawsuit—is not present here, the district court did not rely on any such finding to support its ruling. *See* Br. 41-42. Given that Member A and B's declarations were deficient, the district court merely observed that Members A and B's statements that they joined DNH because they "'support its mission as well as *this lawsuit*' further suggests a generalized grievance against [Pfizer's] alleged affirmative action efforts, not an actual desire by the members to apply to the Fellowship and work at Pfizer." JA114 (quoting JA37 ¶ 11; JA40 ¶ 11).

Federal courts have jurisdiction only over "Cases" or "Controversies." *Cent. States Se. & Sw. Areas Health & Welfare Fund* v. M*erck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005) (citing U.S. Const. art. III, § 2, cl. 1). The "threshold question" in every case is whether the court has "the power . . . to entertain the suit," and that question includes whether the plaintiff has standing." *Id.* at 197 (quoting *Warth* v. *Seldin*, 422 U.S. 490, 498 (1975)). "Without a plaintiff's satisfaction and demonstration of the requirements of Article III standing," the court has no subject matter jurisdiction and "cannot proceed at all in any cause." *Id.* at 198. That is because, as the Supreme Court has long made plain, "jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case." *Steel Co.*, 523 U.S. at 94 (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)); *see also Carter*, 822 F.3d at 54-55 (dismissal for lack of Article III standing is "one for lack of subject matter jurisdiction . . . and without jurisdiction, the district court lacks the power to adjudicate the merits of the case"). The Federal Rules of Civil Procedure codify this constitutional requirement in Rule 12(h)(3), which provides, "if the court determines *at any time* that it lacks subject-matter jurisdiction, the court *must* dismiss the action."

1.     A court must therefore dismiss a case for lack of subject matter jurisdiction where, on a preliminary injunction motion, the plaintiff fails to establish Article III standing.  This Court's decision in *Cave* v. *East Meadow Union Free School District*, 514 F.3d 240 (2d Cir. 2008) is instructive.  There, the district court denied the plaintiffs' request for a preliminary injunction, and plaintiffs filed an interlocutory appeal.  *Id.* at 244.  The Court held that the plaintiffs' failure to exhaust administrative remedies "deprived the court of subject matter jurisdiction."  *Id.* at 251.  Quoting Rule 12(h)(3) and its requirement that a court "must dismiss" an action once it determines that it lacks subject matter jurisdiction, this Court remanded the case and directed the district court to dismiss the "complaint in its entirety" without prejudice.  *Id.* at 250-51.  In so directing, the Court noted that "appellants' motion for a preliminary injunction should therefore have been dismissed for lack of jurisdiction, rather than on the ground that appellants are unlikely to succeed on the merits of their action."  *Id.* at 251.

*Roberts* v. *Bassett*, which this Court affirmed in a summary order, is similarly on point.  Civ. No. 22-710, 2022 WL 785167, at *1 (E.D.N.Y. Mar. 15, 2022), *aff'd*, Civ. Nos. 22-622, 22-692, 2022 WL 16936210 (2d Cir. Nov. 15, 2022).  There, plaintiffs sought a preliminary injunction in the district court seeking to prohibit New York State and City defendants from enforcing rules on the

distribution of COVID-19 treatments during a supply shortage which, plaintiffs alleged, violated the Equal Protection Clause. *Roberts*, 2022 WL 785167, at *1. After concluding that the plaintiffs failed to demonstrate Article III standing, the district court dismissed all claims "as there is no case or controversy" and declined to consider their preliminary injunction motion as moot. *Id.* Importantly, no motion to dismiss had been filed. *Id.* at *3. This Court affirmed without reaching the merits because it agreed that there was no Article III standing. 2022 WL 16936210, at *3.

After concluding, on a motion for a preliminary injunction, that a plaintiff lacks Article III standing, courts in this Circuit routinely dismiss the case—even *sua sponte* or when no motion to dismiss is pending. *See, e.g.,* *Fischer* v. *Cruz*, Civ. No. 16-1224, 2016 WL 1383493, at *4 (E.D.N.Y. Apr. 7, 2016) (*sua sponte* dismissal for lack of standing on TRO and PI motion); *Stone* v. *Austin*, Civ. No. 21-4822, 2021 WL 4443733, at *6 (E.D.N.Y. Sept. 28, 2021) (same); *Henry Builders, Inc.* v. *United States*, Civ. No. 09-288, 2009 WL 185419 at *1 (E.D.N.Y. Jan. 26, 2009) (dismissal for lack of standing on TRO motion), *aff'd*, 372 F. App'x 104 (2d Cir. 2010); *E.F.* v. *Adams*, Civ. No. 21-11150, 2022 WL 601999, at *6 (S.D.N.Y. Mar. 1, 2022) (on preliminary injunction motion, finding that some plaintiffs "must be dismissed from this case for lack of standing"); *Pietsch* v. *Bush*, 755 F. Supp. 62, 67-68 (E.D.N.Y. 1991) (where plaintiff fails to show standing on TRO and preliminary injunction,

"there is no need to proceed" further "since the Court does not have subject jurisdiction to hear the case"), *aff'd*, 935 F.2d 1278 (2d Cir. 1991).

DNH does not cite a single case where a court of appeals reversed a district court's dismissal for lack of subject matter jurisdiction on a preliminary injunction motion because the lower court failed to apply the motion-to-dismiss, rather than preliminary-injunction, standard.[8] Nor has Pfizer located any such case. This is not surprising. To require a district court to ignore the evidence on which it properly relied to conclude—on a motion for a preliminary injunction—that it lacked subject matter jurisdiction simply makes no sense, and would foundationally undermine the constitutional requirement, codified in Rule 12(h)(3), that a court must always assure itself that subject matter jurisdiction is present.

2.     DNH relies entirely on inapposite cases in a failed attempt to manufacture support for a blanket rule that "all sua sponte dismissals," including those for lack of subject matter jurisdiction, are procedurally improper. Br. 17-19.

---

[8] *See, e.g., Food & Water Watch, Inc.* v. *Vilsack*, 808 F.3d 905, 909, 913 (D.C. Cir. 2015) (affirming district court's dismissal for lack of standing on a preliminary injunction motion because plaintiffs failed to show standing even against the burden that applies at the pleading stage).

As an initial matter, DNH mischaracterizes the district court's decision as a "sua sponte" dismissal. Unlike in cases where the court found that plaintiffs were not afforded "an opportunity to be heard" or to develop a record, *e.g., Square D Co.* v. *Niagara Frontier Tariff Bureau, Inc.,* 760 F.2d 1347, 1365 (2d Cir. 1985), DNH had an extensive opportunity to be heard on Article III standing in the context of its full briefing in support of a preliminary injunction. DNH understood it needed to demonstrate standing—no doubt that is why it submitted declarations and dedicated a substantial part of its preliminary injunction briefing to arguing that DNH had standing. *See* D. Ct. Dkt. 36 at 1-5. It is simply inaccurate to refer to the district court's reasoned conclusion based on the parties' evidentiary submissions and briefing as a "sua sponte" dismissal.

DNH's reliance on *Catzin* v. *Thank You & Good Luck Corp.*, 899 F.3d 77 (2d Cir. 2018), a case in a different posture involving completely different facts, underscores the weakness of its argument. In *Catzin*, on the eve of trial, the district court dismissed the case that the parties had litigated for nearly two years through discovery and cross-motions for partial summary judgment. *Id.* at 80-81. Based on a footnote in a discovery motion, the court *sua sponte* concluded that plaintiffs "abandoned and waived" their federal claims and declined to exercise supplemental jurisdiction over their state-law claims. *Id.* at 81. There is no parallel between the district court's dismissal for lack of

subject matter jurisdiction—an inquiry it was obligated to undertake under Article III—and the *Catzin* district court's dismissal based on the discretionary inquiry of whether to exercise supplemental jurisdiction. *See id.* at 83.

Other cases cited by DNH are similarly unavailing because they do not involve a dismissal for lack of subject matter jurisdiction. *See Square D Co.*, 760 F.2d at 1365 (12(b)(6) dismissal improper on an issue that had not been briefed; thus parties were not afforded notice or opportunity to be heard); *New Hope Family Servs., Inc.* v. *Poole*, 966 F.3d 145, 159-60, 180 (2d Cir. 2020) (12(b)(6) dismissal premature and improper); *Int'l Code Council, Inc.* v. *Up-Codes Inc.*, 43 F.4th 46, 64 (2d Cir. 2022) (conversion of parties' pre-motion letters into briefing on and grant of 12(b)(6) motion improper); *cf. Antonyuk* v. *Bruen*, Civ. No. 22-743, 2022 WL 3999791, at *25 (N.D.N.Y. Aug. 31, 2022) (plaintiffs had notice and opportunity to respond when standing was at issue during preliminary-injunction briefing; dismissing on preliminary injunction motion for lack of Article III standing).

In sum, DNH provides no explanation as to why this Court should depart from the longstanding rule that courts, upon finding a jurisdictional defect—whether by a party's motion or on its own assessment and at any stage of litigation—must dismiss the case without prejudice.

40

## II. THIS APPEAL IS MOOT BECAUSE MEMBERS A AND B NO LONGER HAVE A PERSONAL STAKE IN THE OUTCOME OF THE CASE

A case becomes moot when "the parties lack a legally cognizable interest in the outcome" of the case, or put differently, when a plaintiff ceases to have a "personal stake" in the litigation. *Fox*, 42 F.3d at 140 (citing cases). "While the standing doctrine evaluates [a litigant's] personal stake as of the outset of the litigation, the mootness doctrine ensures that the litigant's interest in the outcome continues to exist throughout the life of the lawsuit." *Cook* v. *Colgate Univ.*, 992 F.2d 17, 19 (2d Cir. 1993). When a case becomes moot, federal courts lack subject matter jurisdiction over the action and must dismiss the case because "federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." *North Carolina* v. *Rice*, 404 U.S. 244, 246 (1971); *see Fox*, 42 F.3d at 137 (affirming district court's dismissal of case as moot).

Where, as here, an organization invokes associational standing, the organization's claims become moot if its members' claims become moot. *Chamber of Com. of the U.S.* v. *EPA*, 642 F.3d 192, 207 (D.C. Cir. 2011) (dismissing claims as moot because "if [the organization] has standing, it is only because at least one of [its members] has standing, and if the claims of [the members] are moot, then [the organization's] claims are moot as well") (citing *Summers*, 129 S. Ct. at 1152); *Milwaukee Police Ass'n* v. *Bd. of Fire & Police Comm'rs*

41

*of City of Milwaukee*, 708 F.3d 921, 923-24 (7th Cir. 2013); *Memphis A. Philip Randolph Inst.* v. *Hargett*, 2 F.4th 548, 559 (6th Cir. 2021). Because Members A and B are no longer eligible to apply to the Fellowship, this appeal is now moot. Neither the conclusory allegations in the Complaint, nor the late-submitted Member C declaration can alter that conclusion.

**A. Neither Member A Nor B is Eligible To Apply to the Fellowship.**

Members A and B do not currently have a personal stake in the outcome of this case because they can no longer apply to the Fellowship. It is undisputed that Fellowship applicants must be rising college seniors. JA12 ¶ 34, JA 22 ¶ 123. In declarations filed in September 2022, Members A and B asserted they were eligible for the 2023 Fellowship class because they were juniors at their respective universities. JA36 ¶ 3, JA39 ¶ 3. But as DNH concedes, the 2023 application has now closed—meaning the only opportunity for Members A and B to apply to the Fellowship has now come and gone. Br. 8.

This consequence comes as no surprise to DNH, which was aware since the beginning of this case that Pfizer planned to open and close the 2023 Fellowship application within a relatively short window of time. JA48. That is why DNH sought a preliminary injunction, where it argued that once the "application deadline [for the 2023 Fellowship class] closes, and Pfizer selects the 2023 fellows," Members A and B—then-college juniors—would "completely miss the chance to apply to the Fellowship as they will turn college seniors

42

next application cycle." D. Ct. Dkt. 5-8 at 21-22. DNH further urged that without an injunction, Members A and B would be irreparably harmed because "there can be no do-over and no redress." *Id.* at 21. By DNH's own admission then, if Members A and B had brought suit in their individual capacities, their claims would now be moot. *See Cook*, 992 F.2d at 19 (holding that end of sports season and plaintiffs' graduation rendered action moot).

*Fox* is instructive. In that case, this Court held that college students' claims against their university "are mooted by the graduation of the students, because after their graduation . . . it becomes impossible for the courts, through the exercise of their remedial powers, to do anything to redress the injury." 42 F.3d at 140. Similarly, in *Soule by Stanescu* v. *Connecticut Association of Schools, Inc.*, four high school athletes sued an athletic conference and its member high schools alleging that the conference's policy violated Title XI. 57 F.4th 43, 51 (2d Cir. 2022). This Court affirmed the dismissal of the case as moot; once the athletes graduated, there was nothing the Court could do to redress their alleged harm. *Id.* at 47 n.2, 50 n.3, 50-51.

The Court's reasoning in *Soule*, as well as in *Fox*—that "the relief sought in the Complaint could provide no legally cognizable benefits to Plaintiffs once they had left [their schools]"—applies equally here. *Fox*, 42 F.3d at 140. No relief this Court or the lower court could fashion at this point could redress Member A or Member B's purported injury. *See Russman* v. *Bd. of Educ. of*

*Enlarged City Sch. Dist. of City of Watervliet*, 260 F.3d 114, 119 (2d Cir. 2001) (as student's individual interest associated with challenge against his school "evaporates, so does the requisite case or controversy"); *Gomes* v. *R.I. Inter-scholastic League*, 604 F.2d 733, 736 (1st Cir. 1979) (where student challenged sports league's rule, end of season and student's graduation mooted the case because "nothing that [the court] might decide now as to the merits would affect his rights vis a vis defendants"); *DeFunis* v. *Odegaard*, 416 U.S. 312, 317 (1974) (law school student's expected graduation moots the case).

### B. A Single Conclusory Allegation In DNH's Complaint Does Not Save the Case from Mootness.

1.      DNH's Complaint includes a one-sentence allegation that it has "at least one member who is a sophomore who is ready and able to apply to the Fellowship next year." JA15 ¶ 70. In its reply brief in support of its motion to supplement the record, DNH argues that this single conclusory allegation saves its case from mootness. *See* Dkt. No. 53 at 4. This is wrong because DNH failed to plausibly allege that this sophomore member has Article III standing. The Complaint is devoid of any allegation whatsoever supporting the conclusory assertion that this member is "ready and able" to apply. DNH fails to allege the member's race, citizenship status, or GPA, much less any details about this member's educational goals, background, leadership experience, or interest and intent to apply to the specified graduate programs. The one-sentence allegation is plainly insufficient to defeat mootness. *See supra*

pp. 24, 31 n.6; *see generally City News & Novelty, Inc.* v. *City of Waukesha*, 531 U.S. 278, 279 (2001) (mere allegations or speculations do not shield the case from mootness).

DNH's pleading failure is all the more apparent—and significant—because DNH was well aware that "the justiciability of the case was at issue" in the district court below. *Fox*, 42 F.3d at 140; *see supra* pp. 42-43. Given that awareness, DNH was required to do more in its Complaint if it wanted to guard against its case being rendered moot, as there was "ample opportunity to present any appropriate affidavits," or provide the detailed factual allegations necessary to demonstrate this then-sophomore member's ability and readiness to apply. *Fox*, 42 F.3d at 143.

Simply put, "as the master of its own complaint," DNH could have added more factual allegations to demonstrate this member's standing, but chose not to do so. *Prairie Rivers Network*, 2 F.4th at 1012 ("It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers."). DNH's throwaway allegation that it has at least one college sophomore member it predicted would be able and ready to apply to the Fellowship in 2024—especially when it knew that the claims by Members A and B faced pending mootness problems—cannot save its case from being mooted.

2.     Neither does DNH's conclusory request for nominal damages of one dollar avoid the mootness conclusion.  *See* JA31.  Where a plaintiff, like DNH, "alleged no injury in fact to themselves," and failed to establish "the elements of associational standing," they cannot "keep their now-moot claims alive by their prayer for nominal damages."  *Clementine Co.* v. *Adams*, Civ. No. 21-7779, 2022 WL 4096162, at *3 (S.D.N.Y. Sept. 7, 2022); *cf. Uzuegbunam* v. *Preczewski*, 141 S. Ct. 792, 797, 802 (2021) (request for nominal damages can keep an otherwise moot case alive only where plaintiff "establishes the other elements of standing," including that it suffered an injury in fact).

## C. Member C's Declaration Cannot Save the Case from Mootness.

Because DNH did not include sufficient factual allegations in the Complaint, DNH belatedly seeks to supplement the record with Member C's declaration on appeal.  *See* Dkt. No. 38.  But, as Pfizer has explained, absent "extraordinary circumstances" warranting introduction of new evidence, it is impermissible to supplement the record at this juncture.  *Weinstein* v. *City of New York*, 622 F. App'x. 45, 46 (2d Cir. 2015); *see* Dkt. No. 50 at 4-7.  Just as the *Fox* court declined to accept supplemental affidavits on appeal by plaintiffs who were "on notice that the justiciability of the case was at issue," 42 F.3d at 143, DNH's attempt to do so here should be rejected.  *See FW/PBS*, 493 U.S. at 235 (refusing to consider affidavits seeking to establish standing because it "is not in the record of the proceedings below"); *Summers*, 555 U.S. at 500

46

(refusing to consider late-filed affidavits). As the Seventh Circuit reasoned in *Prairie River Networks*, if DNH "could have filed similar supplemental declarations (or even made similar allegations in the complaint) at the pleading stage, then it should have done so." 2 F.4th at 1012.

Nor can DNH legitimately characterize the fact that Members A and B are now college seniors as a new post-appeal factual development. Dkt. No. 53 at 5, 9. The fact of DNH's own preliminary injunction motion filed in September 2022 undermines this contention. It was evident to DNH, at the outset of this case that, as time passed, and because of the manner in which DNH strategically brought it—the case would become moot.

*Parents Involved in Community Schools* v. *Seattle School District No. 1*, which contains no reasoning explaining why the Court found it appropriate to accept an affidavit on appeal, does not support DNH's argument. 551 U.S. 701, 718-19 (2007). In *Parents Involved*, all that was necessary to establish that the organization continued to have members with standing was for the group to establish that it has members with "children in the district's elementary, middle, and high schools." *Id.* at 718.[9] But here, this Court will need to

---

[9] And in *Parents Involved*, it was in the interest of judicial economy to accept a late-stage declaration at the Supreme Court. In the district court, the case had been litigated all the way to summary judgment, an appeal had been resolved and then vacated by the court of appeals, and a question had been certified to the state Supreme Court before eventual resolution first by the panel and then en banc at the court of appeals on this issue. Remanding the

assess the substance of the affidavit in the first instance to determine whether Member C is "able and ready" to apply for the Fellowship—an undertaking outside the traditional role of an appellate court. And this case is different from *Abigail Alliance for Better Access to Developmental Drugs* v. *Eschenbach*, 469 F.3d 129 (D.C. Cir. 2006), where the organizational plaintiff (who had already otherwise alleged injury in its own capacity), pursuant to an express statutory authorization in 28 U.S.C. § 1653, filed an unopposed motion to amend the complaint (and supporting declaration exhibits) on appeal after the *death* of the original member with standing. *Id.* at 132-33, 136.

DNH argues in its reply in support of its motion to supplement the record that its case should be permitted to defy mootness so long as DNH can identify "*any* member with a live claim." Dkt. No. 53 at 3. But in so arguing, DNH relies on cases where claims brought by individual plaintiffs that are otherwise moot remain viable because they sued in a representative capacity as the leader of a student organization. However, here, neither Member A nor B brought claims on behalf of "similarly situated" individuals. Indeed, in *Fox*, the Court distinguished two of DNH's cited cases—*Brandon* v. *Bd. of Educ. of Guilderland Cent. Sch. Dist.*, 635 F.2d 971, 973 n.1 (2d Cir. 1980) and

---

case back to the district court was not feasible given that Supreme Court briefing was already underway (which could have given rise to its own appeal at the court of appeals). Those practical concerns do not exist here, where the district court dismissed the case on a preliminary injunction motion without prejudice.

*Trachtman* v. *Anker*, 563 F.2d 512, 514 n.1 (2d Cir. 1977)—on this basis. *Fox*, 42 F.3d at 142. That DNH sued on behalf of Members A and B has no bearing on this analysis; the relevant question is whether either Member A or B sued on behalf of others who have a continuing stake in the litigation. They did not.

The other cases DNH relies on are similarly inapposite. In *Brody ex rel. Sugzdinis* v. *Spang*, 957 F.2d 1108 (3d Cir. 1992), the parties *agreed* that relevant facts had been omitted from the record below and *stipulated* to the supplemental submissions on appeal. *Id.* at 1114 n.4. DNH's remaining cases bear no relationship to this appeal, or are simply not supportive. *See Milwaukee Police Ass'n*, 708 F.3d 921, 930, 933 (7th Cir. 2013) (case dismissed as moot where there existed no member with standing); *Toth on behalf of T.T.* v. *City of N.Y. Dep't of Education*, 720 F. App'x. 48, 50-51 (key conditional fact previously found to be speculative materialized); *Kessler* v. *Grand Cent. Dist. Mgmt. Ass'n, Inc.*, 158 F.3d 92, 99 (2d Cir. 1998) (supplemental briefing on mootness requested where contract had expired); *Cedar Coal Co.* v. *United Mine Workers of Am.*, 560 F.2d 1153, 1166 (4th Cir. 1977) (defendants' "pattern and practice" of striking to avoid arbitration which implicated the "capable of repetition yet evading review" exception to mootness); *Hecox* v. *Little*, Civ. Nos. 20-35813, 20-35815, 2023 WL 1097255, at *2 n.1 (9th Cir. Jan. 30, 2023) (individual plaintiff's case would have remained live regardless of facts in a supplemental declaration).

49

In any event, although it is not this Court's "job as an appellate court to examine new evidentiary materials and find issues of fact," *Jones* v. *Sullivan*, 949 F.2d 57, 61 (2d Cir. 1991), if this Court were to consider Member C's declaration, it would find that it shares the same deficiencies as the declarations of Members A and B: it is anonymous; and does not include sufficient facts that demonstrate Member C is "able and ready" to apply, such as  relevant educational or experiential background, interest or commitment to pursue a required graduate degree, or exceptional leadership potential. *See supra* pp. 18-34.

## III. DO NO HARM LACKS STATUTORY STANDING TO BRING ITS FEDERAL CLAIMS

DNH spends much of its brief arguing that the district court improperly dismissed its federal claims for lack of statutory standing. *See* Br. 17-26, 42-47.  In focusing on that argument so intently, DNH ignores that the district court dismissed the case "without prejudice for lack of subject-matter jurisdiction." JA134.  The district court's factual findings in support of that conclusion were clearly supported, and its legal conclusion correct, for the reasons stated above, *see supra* pp. 17-40.  Because DNH lacks Article III standing to bring this suit, this Court need not reach the issue of statutory standing. *See Whitaker* v. *Dep't of Commerce*, 970 F.3d 200, 210 (2d Cir. 2020) (declining to consider statutory standing where court lacked subject matter jurisdiction).

It is nevertheless clear as a matter of well-settled law, however, that the district court correctly reasoned that DNH lacked statutory standing to bring its federal claims. Because this Court can affirm on any basis found in the record, *NXIVM Corp.* v. *Ross Inst.*, 364 F.3d 471, 476 (2d Cir. 2004), this Court can alternatively affirm dismissal for lack of statutory standing.

### A. The District Court Correctly Held That Do No Harm Lacks Statutory Standing To Bring a Claim Under 42 U.S.C. § 1981.

In this Circuit, there is no associational standing to bring Section 1981 claims as a matter of law. *See Warth* v. *Seldin*, 495 F.2d 1187, 1189, 1194 (2d Cir. 1974); *see also* JA115-118. In *Aguayo* v. *Richardson*, this Court held that organizations could not bring § 1983 claims based on associational standing. 473 F.2d 1090, 1099 (2d Cir. 1973). A year later, this Court applied *Aguayo* in *Warth* to conclude that an association lacked standing to bring Section 1981, 1982, and 1983 claims on behalf of its members. *Warth*, 495 F.2d at 1189, 1194. This Court has repeatedly reaffirmed the *Aguayo* rule, including as recently as 2019. *See N.Y. State Citizens' Coalition for Children* v. *Poole*, 922 F.3d 69, 74 (2d Cir. 2019) (reaffirming a "string of opinions" applying the *Aguayo* rule). And it is well-established that this Court is "bound by the decisions of prior panels until such time as they are overruled either by an en banc panel . . . or

by the Supreme Court." *United States* v. *Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004).[10]

DNH ties itself into knots to avoid this Circuit's settled law. It argues that this Court's precedent bars associational standing only for Section 1983 claims and that this Court should not "extend" *Aguayo* to Section 1981 claims. Br. 43-45. But this ignores the holding in *Warth*, which has been the law in this Circuit for almost 50 years. In that case, an organization attempted to bring Sections 1981, 1982, and 1983 claims on behalf of its members. 495 F.2d at 1189, 1194. The organization was found to lack statutory standing to bring *any* of these claims because associational standing was not available under the *Aguayo* rule. *Id.* at 1194. If DNH was correct that this precedent applied only to Section 1983 claims, the *Warth* court would have dismissed just the Section 1983 claims for lack of standing, and would have allowed the Section 1981 and 1982 claims to proceed. That is not what happened—*all* claims were dismissed on the ground that an organization cannot bring these types of claims on behalf of its members. *Id.* at 1189.

---

[10] DNH's suggestion that this Court has previously felt "bound" by this line of reasoning despite a "raft of Supreme Court precedent" to the contrary is highly misleading. Br. 42-43. This Court merely acknowledged *the plaintiff's* argument that the Supreme Court has rejected the *Aguayo* rule and noted that it remains "bound by the implicit determination of prior panels that the rule survives." *Nnebe* v. *Daus*, 644 F.3d 147, 156 n.5 (2d Cir. 2011).

Further, there is no principled basis to prohibit associational standing for Section 1983 claims, but not Section 1981 claims. This Court has repeatedly recognized that organizations do "not have standing to assert the rights of [their] members" under Section 1983 because the rights secured are "personal to those purportedly injured." *See, e.g.*, *Nnebe*, 644 F.3d at 156. The same reasoning holds for Section 1981. The Supreme Court has recognized that Section 1981 claims are similarly personal in nature; individuals purportedly injured under Section 1981 "will be the best proponents of their own rights," and "if and when the holders of those rights do not wish to assert them, third parties are not normally entitled to step into their shoes." *Domino's Pizza, Inc.* v. *McDonald*, 546 U.S. 470, 479 (2006). Members A and B are perfectly capable of vindicating their own Section 1981 rights; they are not permitted to use DNH as an intermediary for doing so under this Circuit's settled precedent.

Given this fatal flaw, the district court's dismissal of DNH's Section 1981 claim was appropriate. *See Rojas* v. *Cigna Health & Life Ins. Co.*, 793 F.3d 253 (2d Cir. 2015) (affirming dismissal of case after preliminary injunction motion for lack of statutory standing); *Munaf* v. *Geren*, 553 U.S. 674, 691 (2008) (noting that in adjudicating a preliminary injunction motion, it "has long been the rule" that a claim "may be dismissed and litigation terminated" if "there is any insuperable objection, in point of jurisdiction or merits[.]").

Finally, even if DNH is correct (which it is not) that the motion to dismiss standard should apply here, it would make no difference. The district court never strayed outside the four corners of the Complaint to make this determination. Whether an association can bring Section 1981 claims is a pure question of law that has already been squarely decided by this Court.

### B. Do No Harm Lacks Statutory Standing To Bring a Claim Under Title VI or the ACA.

The district court correctly determined that DNH is incapable of bringing a claim under Title VI or Section 1557 of the ACA because Pfizer is not subject to either statute. JA118-132. Pfizer is beyond the reach of both Title VI or Section 1557 because (1) it is not a healthcare provider, (2) does not receive federal assistance as a whole, and (3) does not receive federal funds aimed primarily at providing employment. JA119.

1.      An entity is subject to the anti-discrimination provisions of Title VI or Section 1557 when it is "principally engaged" in providing healthcare. 42 U.S.C. § 2000d-4a(3)(A)(ii) (Title VI); 45 C.F.R. § 92.3(b) (implementing Section 1557). The term "principally engaged" means "the primary activities of a business," excluding any "incidental activities." *Doe* v. *Salvation Army in the U.S.*, 685 F.3d 564, 571 & n.10 (6th Cir. 2012) (citing Black's Law Dictionary (9th ed. 2009)); *see also Collins* v. *Giving Back Fund*, Civ. No. 18-8812, 2019 WL 3564578, at *10 (S.D.N.Y. Aug. 6, 2019).

54

The plain language of Title VI and Section 1557, related federal regulations, and dictionaries all clearly and consistently define a healthcare provider as an individual or entity that renders medical treatment. *See* 42 U.S.C. § 18122(2)(B); JA124-126 (citing various regulations and dictionary definitions of "health care provider"). Accordingly, courts that have considered this question have held that to be a healthcare provider, an entity must "offer some form of treatment or direct assistance to individuals." *Drachman* v. *Bos. Sci. Corp.*, 258 F. Supp. 3d 207, 212, 212 n.7 (D. Mass. 2017) ("a global Fortune 500 medical device company" is not a "health care provider"); *Bernier* v. *Trump*, 242 F. Supp. 3d 31, 44 (D.D.C. 2017) (biopharmaceutical company is not a "health program or activity"). Because Pfizer is a pharmaceutical company, and does not provide medical treatment, it is not a healthcare provider. *See* JA9 ¶¶ 12, 18.

The district court's reasoning was based on "the plain text of Title VI and Section 1557, federal regulations, [and] dictionary definitions." JA126. Indeed, the district court made clear that it did not rely on materials outside the pleadings, noting that DNH's "threadbare and conclusory allegation" that Pfizer was principally engaged in healthcare "will not support a preliminary injunction," only superlatively noting that was even more true in light of Pfizer's proffered rebuttal. JA126 n.10. The district court also pointed to DNH's failure to cite any case finding that a pharmaceutical company like

Pfizer is a healthcare provider for purposes of these statutes—a failure that has not been remedied on appeal. JA126-127. Indeed, DNH's Complaint lacks any allegation that Pfizer is a healthcare provider. *See, e.g.,* JA9-10 ¶¶ 12, 18 (Pfizer "develops and manufactures" medicines and other therapeutics). DNH's threadbare and conclusory allegation that Pfizer's "principal focus is healthcare" is no help—it does not even satisfy Rule 12(b)(6)'s specificity and plausibility requirement. JA10 ¶ 19; *see Freeman* v. *Kirisits*, 818 F. App'x 34, 39 (2d Cir. 2020) (bare assertions unsupported by any specific facts are insufficient under the 12(b)(6) standard); *Iqbal*, 556 U.S. at 678 ("mere conclusory statements" are "not entitled to the assumption of truth").

2. In the alternative, an entity may be subject to Title VI where it receives federal financial assistance "as a whole." 42 U.S.C. § 2000d-4a(3)(A)(i). The phrase "as a whole" means that federal assistance is extended to the organization "as general assistance," and "not for some specific purpose." *Collins*, 2019 WL 3564578, at *11 (citing S. Rep. No. 100-64, at 17 (1987)); *Boswell* v. *Skywest Airlines, Inc.*, 217 F. Supp. 2d 1212, 1216 (D. Utah 2002), *aff'd*, 361 F.3d 1263 (10th Cir. 2004). While DNH offers a conclusory allegation that Pfizer receives federal financial assistance "as a whole," JA18 ¶ 89, DNH failed to allege that Pfizer's participation in certain public-private partnerships or provision of federally reimbursable products and medicines

constitute funding "as a whole." In fact, DNH alleges the opposite in its Complaint—it points to two specific federal programs in which Pfizer participates, making clear any financial assistance received by Pfizer is program-specific and not "as a whole." JA10 ¶¶ 22-23; *see Collins*, 2019 WL 3564578 at *11-12 (receipt of federal grant money was not "as a whole" because it was awarded in relation to a specific project); *Boswell*, 217 F. Supp. 2d at 1217 (similar). And DNH's barebones claim that Medicare and Medicaid reimbursements are received by Pfizer "as a whole" is insufficient without more detail—Medicare and Medicaid reimbursements are specific, not general. *See Bhanusali* v. *Orange Reg'l Med. Ctr.,* Civ. No. 10-6694, 2012 WL 13059694, at *7 (S.D.N.Y. Jan. 20, 2012) (it is "common sense" that Medicare/Medicaid reimbursements are specifically intended to "provide facilities for the provision of medical care," and to provide "medical care for qualifying patients"). Here too, the district court underscored that it did not rely on materials outside the pleadings, noting Pfizer's declaration regarding receipt of federal funds generally was "unnecessary in light of Plaintiff's pleading deficiencies." JA131.

3.    A third way an entity can be subject to Title VI or Section 1557 in an employment discrimination case is for the employer to be a recipient of federal funds "aimed primarily at providing employment." 42 U.S.C. § 2000d-3. *See Ass'n Against Discrimination in Emp., Inc.* v. *City of Bridgeport*, 647 F.2d 256, 276 (2d Cir. 1981) (finding that this requirement applies to private

57

rights of actions); *Weinreb* v. *Xerox Bus. Servs., LLC Health & Welfare Plan*, 323 F. Supp. 3d 501, 520 (S.D.N.Y. 2018) (Section 1557 effectively incorporates the standard under its incorporated statutes). DNH never even alleges that Pfizer receives funds targeted at providing employment, and the district court correctly reasoned that DNH's "generalized allegations of federal financial assistance are insufficient to plead that the federal funds are primarily aimed at providing employment." JA123; *see also Bloomberg* v. *N.Y.C. Dep't of Educ.*, 410 F. Supp. 3d 608, 626 (S.D.N.Y. 2019); *Kelly* v. *Rice*, 375 F. Supp. 2d 203, 208-09 (S.D.N.Y. 2005).

4. In its opening brief on appeal, DNH devotes inordinate attention to the district court's analyses of the Title VI and Section 1557 claims despite the fact that its dismissal ultimately hinged on the conclusion that the court lacked subject matter jurisdiction. *See* JA134 (dismissing without prejudice). Once the district court concluded it lacked constitutional standing, it did not need to reach statutory standing under either Title VI or Section 1557. *See* JA 115. However, when it did, it explained that DNH in any event failed to allege facts sufficient to satisfy the elements of these statutes "in light of [its] pleading deficiencies." JA131; *see* JA119-130.

And while DNH argues in its brief that the district court somehow failed to apply the pleading standard here, it bears repeating the evidence confirm-

ing that neither Title VI nor Section 1557 applies to Pfizer was before the district court precisely because of DNH's choice to request a preliminary injunction. Accordingly, while the district court explicitly disclaimed reliance on Pfizer's submissions here, it was entitled to do so given the procedural posture.

Finally, as DNH's Title VI and Section 1557 claims fail as a matter of law and pleading, the district court's dismissal was appropriate. *See Munaf*, 553 U.S. at 691 (on a preliminary injunction motion, "any insuperable objection, in point of jurisdiction or merits" warrants dismissal); *see also supra* p. 53.

## IV. THE DISTRICT COURT PROPERLY DECLINED TO EXERCISE SUPPLEMENTAL JURISDICTION OVER DNH'S STATE-LAW CLAIMS

It is black-letter law that where a plaintiff lacks standing to bring federal claims, a court cannot retain jurisdiction over the state-law claims. *See Cangemi* v. *United States*, 13 F.4th 115, 134 (2d Cir. 2021). "This is because, under the supplemental jurisdiction statute, a district court cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction." *Id.*; *see also Cave*, 514 F.3d at 250 (where district court lacks subject matter jurisdiction over federal claims, "it would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims"). Accordingly, the district court correctly declined to decline to exercise jurisdiction over DNH's related state-law claims.

Separately, for the same reason that DNH lacks statutory standing to bring its Section 1981 claim, it lacks standing to bring claims under the New York State and City Human Rights Laws because those claims create only personal rights. *Cf. Goldman* v. *MCL Cos. of Chi., Inc.*, 131 F. Supp. 2d 425, 427 (S.D.N.Y. 2000) (recognizing that anti-discrimination statutes "create personal rights"). That is an independent basis for the district court rightly declining to exercise supplemental jurisdiction over DNH's state-law claims.

## CONCLUSION

The judgment of the district court should be affirmed.

Respectfully submitted,

/s/ Jeannie S. Rhee

LORETTA E. LYNCH
LIZA M. VELAZQUEZ
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
*1285 Avenue of the Americas*
*New York, NY 10019*

APRIL 14, 2023

JEANNIE S. RHEE
MARTHA L. GOODMAN
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
*2001 K Street, N.W.*
*Washington, DC 20006*
*(202) 223-7466*
*jrhee@paulweiss.com*

61

## CERTIFICATE OF COMPLIANCE
## WITH TYPEFACE AND WORD-COUNT LIMITATIONS

I, Jeannie Rhee, counsel for Pfizer Inc., certify, pursuant to Federal Rule of Appellate Procedure 32(g)(1) and Local Rule 32.1(a)(4), that the fore-going Brief of Appellee Pfizer Inc. is proportionately spaced, has a typeface of 14 points or more, and contains 13,448 words.

/s/ Jeannie S. Rhee
JEANNIE S. RHEE

APRIL 14, 2023

## CERTIFICATE OF SERVICE

I, Jeannie Rhee, counsel for Pfizer Inc., certify that, on April 14, 2023, a copy of the attached Brief of Appellee Pfizer Inc. was filed with the Clerk and served on all parties through the Court's electronic filing system. I further certify that all parties required to be served have been served.

/s/ Jeannie S. Rhee
JEANNIE S. RHEE