# 23-15

## United States Court of Appeals for the Second Circuit

Do No Harm,

*Plaintiff-Appellant*,

v.

Pfizer Inc.,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Southern District of New York, No. 1:22-cv-7908

———————————————

## REPLY BRIEF OF PLAINTIFF-APPELLANT DO NO HARM

———————————————

Thomas R. McCarthy
Cameron T. Norris
Frank H. Chang
C'Zar Bernstein
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Ste. 700
Arlington, VA 22201
(703) 243-9423
tom@consovoymccarthy.com
cam@consovoymccarthy.com
frank@consovoymccarthy.com
czar@consovoymccarthy.com

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

Table of Authorities.................................................................................ii

Introduction & Summary of Argument.................................................1

Argument...................................................................................................2

    I.    This appeal is not moot (and if it were, the district court's opinion should be vacated, not affirmed)..................................2

    II.   Do No Harm has standing to bring its §1981 claim..........................9

        A.    Constitutional standing..............................................9

        B.    Statutory standing......................................................19

    III.   Do No Harm's claims under Title VI and the ACA should not have been dismissed sua sponte. ..................................22

    IV.   Do No Harm's state and local claims should be reinstated..........................25

Conclusion ...............................................................................................26

Certificate of Compliance .....................................................................27

Certificate of Service..............................................................................27

# TABLE OF AUTHORITIES

**Cases**

*Advocates for Highway & Auto Safety v. FMCSA,*
  41 F.4th 586 (D.C. Cir. 2022) ........................................................................13

*Aguayo v. Richardson,*
  473 F.2d 1090 (2d Cir. 1973) .........................................................................20

*Allen v. Graham,*
  2021 WL 2223772 (M.D.N.C. June 2) ............................................................21

*Am. Legion v. Am. Humanist Ass'n,*
  139 S.Ct. 2067 (2019) .....................................................................................21

*Arcia v. Fla. Sec'y of State,*
  772 F.3d 1335 (11th Cir. 2014) ........................................................................7

*Associated Gen. Contractors of Conn., Inc. v. New Haven,*
  41 F.3d 62 (2d Cir. 1994) .................................................................................8

*B.R. v. F.C.S.B.,*
  17 F.4th 485 (4th Cir. 2021) ..........................................................................15

*Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz,*
  290 F.3d 476 (2d Cir. 2002) ........................................................................6, 7

*Bennett v. Spear,*
  520 U.S. 154 (1997) ..........................................................................................9

*Bragger v. Trinity Cap. Enter. Corp.,*
  30 F.3d 14 (2d Cir. 1994) .................................................................................8

*Brown v. Ent. Merchants Ass'n,*
  564 U.S. 786 (2011) ........................................................................................21

*Cacchillo v. Insmed, Inc.,*
  638 F.3d 401 (2d Cir. 2011) .....................................................................11, 14

*Callum v. CVS Health Corp.,*
  137 F. Supp. 3d 817 (D.S.C. 2015) ................................................................24

*Carney v. Adams,*
  141 S.Ct. 493 (2020) .......................................................................................18

*Carter v. HealthPort Techs.,*
  822 F.3d 47 (2d Cir. 2016) .............................................................................11

*Cave v. E. Meadow Union Free Sch. Dist.*,
514 F.3d 240 (2d Cir. 2008) ........................................................................ 11

*Chi. United Indus., Ltd. v. Chicago*,
445 F.3d 940 (7th Cir. 2006) ......................................................................... 6

*Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*,
364 F. Supp. 3d 253 (S.D.N.Y. 2019) ........................................................ 21

*Cline v. Sunoco Partners Mktg. & Terminals L.P.*,
2021 WL 5858399 (10th Cir. Nov. 1) .......................................................... 2

*Coll. Standard Mag. v. Student Ass'n of SUNY-Albany*,
610 F.3d 33 (2d Cir. 2010) ........................................................................... 8

*Connecticut v. Am. Elec. Power Co.*,
582 F.3d 309 (2d Cir. 2009) (en banc),
*aff'd in relevant part by equally divided Court*, 564 U.S. 410 (2011) .................. 13

*Crawford v. Uber Techs.*,
2021 WL 3810259 (N.D. Cal. Aug. 26) ...................................................... 18

*Cruz v. FXDirectDealer, LLC*,
720 F.3d 115 (2d Cir. 2013) ....................................................................... 25

*Cummings v. Premier Rehab Keller, PLLC*,
142 S.Ct. 1562 (2022) ................................................................................ 24

*D'Addario v. D'Addario*,
901 F.3d 80 (2d. Cir. 2018) ........................................................................ 22

*Doe One v. CVS Pharmacy, Inc.*,
2022 WL 3139516 (N.D. Cal. Aug. 5) ........................................................ 24

*Domino's Pizza v. McDonald*,
546 U.S. 470 (2006) ................................................................................... 20

*DOT v. Paralyzed Veterans of Am.*,
477 U.S. 597 (1986) ................................................................................... 24

*Fair Hous. in Huntington Comm. Inc. v. Huntington*,
316 F.3d 357 (2d Cir. 2003) ................................................................. 11, 21

*Fed. Defs. of N.Y., Inc. v. BOP*,
954 F.3d 118 (2d Cir. 2020) ......................................................................... 3

*Fla. Paraplegic Ass'n v. Martinez*,
734 F. Supp. 997 (S.D. Fla. 1990) ............................................................... 7

*FLFMC v. Wham-O, Inc.,*
444 F. App'x 447 (Fed. Cir. 2011) ................................................................ 8

*Food & Water Watch, Inc. v. Vilsack,*
808 F.3d 905 (D.C. Cir. 2015) ............................................................... 9, 10

*Freeplay Music, Inc. v. Verance Corp.,*
80 F. App'x 137 (2d Cir. 2003) .................................................................. 23

*Gellman v. Maryland,*
538 F.2d 603 (4th Cir. 1976) ..................................................................... 23

*Gibson v. ABC,*
892 F.2d 1128 (2d Cir. 1989) ...................................................................... 5

*Glen Cove Mun. Civ. Serv. Comm'n v. Glen Cove NAACP,*
34 A.D.2d 956 (N.Y. App. Div. 1970) ........................................................ 25

*Heckler v. Mathews,*
465 U.S. 728, 740 (1984) ............................................................................. 5

*Herzog & Straus v. GRT Corp.,*
553 F.2d 789 (2d Cir. 1977) ........................................................... 22, 23, 24

*H-FERA v. Griffin,*
958 F.2d 24 (2d Cir. 1992) .................................................................. 10, 23

*Holt Civic Club v. Tuscaloosa,*
439 U.S. 60 (1978) ....................................................................................... 5

*Humane Soc'y v. USDA,*
2021 WL 1593243 (C.D. Cal. Mar. 26) ...................................................... 14

*In re Detroit,*
841 F.3d 684 (6th Cir. 2016) ....................................................................... 6

*Innovative Health Sys. v. White Plains,*
117 F.3d 37 (2d Cir. 1997) ........................................................................ 21

*Jett v. Dallas Indep. Sch. Dist.,*
491 U.S. 701 (1989) ................................................................................... 19

*Johnson v. Napa Valley Wine Train, Inc.,*
2016 WL 493229 (N.D. Cal. Feb. 9) .......................................................... 24

*Johnson v. Railway Express Agency, Inc.,*
421 U.S. 454 (1975) ................................................................................... 20

*Knox v. SEIU,*
567 U.S. 298 (2012) ..................................................................................... 4

iv

*Larsen v. U.S. Navy*,
486 F. Supp. 2d 11 (D.D.C. 2007) ...............................................................18

*Loeffler v. Staten Island Univ. Hosp.*,
582 F.3d 268 (2d Cir. 2009) .........................................................................25

*Lugo v. Keane*,
15 F.3d 29 (2d Cir. 1994) .............................................................................22

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) ......................................................................................11

*Marszalek v. Kelly*,
2021 WL 2350913 (N.D. Ill. June 9) ..................................................... 15, 16

*Mast, Foos & Co. v. Stover Mfg. Co.*,
177 U.S. 485 (1900) ......................................................................................23

*McCloud v. McClinton Energy Grp.*,
2015 WL 737024 (W.D. Tex. Feb. 20) ..........................................................15

*McGehee v. Neb. Dep't of Corr. Servs.*,
2019 WL 1227928 (D. Neb. Mar. 15) ...........................................................15

*Mhany Mgmt., Inc. v. Nassau*,
819 F.3d 581 (2d Cir. 2016) ........................................................................3, 4

*Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of Milwaukee*,
708 F.3d 921 (7th Cir. 2013) ..........................................................................3

*MOAC Mall Holdings LLC v. Transform Holdco*,
143 S.Ct. 927 (2023) .......................................................................................5

*Munaf v. Geren*,
553 U.S. 674 (2008) ......................................................................................23

*N.Y.S. Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*,
798 F.3d 125 (2d Cir. 2015) .........................................................................21

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. Jacksonville*,
508 U.S. 656 (1993) ........................................................................................7

*New Hope Fam. Servs. v. Poole*,
966 F.3d 145 (2d Cir. 2020) .................................................................. 14, 19

*NOW v. N.Y. Div. of Hum. Rts.*,
358 N.E.2d 867 (N.Y. 1974) .........................................................................25

*Or. Advoc. Ctr. v. Mink*,
322 F.3d 1101 (9th Cir. 2003) ........................................................................6

*Penguin Books USA Inc. v. Walsh*,
    929 F.2d 69 (2d Cir. 1991) ........................................................................8

*Pope v. Albany*,
    687 F.3d 565 (2d Cir. 2012) ....................................................................5

*Prairie Rivers Network v. Dynegy Midwest Generation*,
    2 F.4th 1002 (7th Cir. 2021) ....................................................................3

*Price v. Charlotte*,
    93 F.3d 1241 (4th Cir. 1996).....................................................................7

*Publicola v. Lomenzo*,
    54 F.4th 108 (2d Cir. 2022).....................................................................16

*Pugh v. Goord*,
    345 F.3d 121 (2d Cir. 2003) .............................................................23, 24

*Reid v. Hurwitz*,
    920 F.3d 828 (D.C. Cir. 2019) ................................................................3

*Rezaq v. Nalley*,
    677 F.3d 1001 (10th Cir. 2012) ..............................................................5

*Rio Grande Silvery Minnow v. Bureau of Reclamation*,
    601 F.3d 1096 (10th Cir. 2010) ..............................................................8

*Roberts v. Bassett*,
    2022 WL 16936210 (2d Cir. Nov. 15).................................................10

*Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of Watervliet*,
    260 F.3d 114 (2d Cir. 2001) ................................................................8, 9

*S.C. State Conf. of NAACP v. Alexander*,
    2022 WL 453533 (D.S.C. Feb. 14)......................................................15

*Sheldon v. Moredall Realty Corp.*,
    95 F.2d 48 (2d Cir. 1938) ......................................................................23

*Sinclair v. Soniform, Inc.*,
    935 F.2d 599 (3d Cir. 1991) ..................................................................25

*Snider v. Melindez*,
    199 F.3d 108 (2d Cir. 1999) ....................................................................8

*Sony Corp. v. Elm State Elecs., Inc.*,
    800 F.2d 317 (2d Cir. 1986) ....................................................................4

*Sosna v. Iowa*,
    419 U.S. 393 (1975)................................................................................6

*Speech First, Inc. v. Cartwright*,
  32 F.4th 1110 (11th Cir. 2022) ........................................................16

*Speech First, Inc. v. Fenves*,
  979 F.3d 319 (5th Cir. 2020) .................................................... 12, 18

*Speech First, Inc. v. Khator*,
  603 F. Supp. 3d 480 (S.D. Tex. 2022) ...........................................16

*Speech First, Inc. v. Sands*,
  2021 WL 4315459 (W.D. Va. Sept. 22) ..........................................16

*Speech First, Inc. v. Shrum*,
  2023 WL 2905577 (W.D. Okla. Apr. 10),
  *appeal pending*, No. 23-6054 (10th Cir.) ........................................12

*Springer v. IRS*,
  1997 WL 732526 (E.D. Cal. Sept. 12) ............................................15

*Square D Co. v. Niagara Frontier Tariff Bureau*,
  760 F.2d 1347 (2d Cir. 1985) .........................................................24

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ............................................................................7

*Students for Fair Admissions, Inc. v. UNC*,
  142 S.Ct. 896 (2022) ......................................................................21

*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ........................................................................14

*Swanson Grp. Mfg. LLC v. Jewell*,
  195 F. Supp. 3d 66 (D.D.C. 2016) .................................................10

*Thomas More L. Ctr. v. Obama*,
  651 F.3d 529 (6th Cir. 2011) ............................................................4

*United Food & Com. Workers v. Brown Grp.*,
  517 U.S. 544 (1996) ........................................................................20

*United States ex rel. Hanks v. United States*,
  961 F.3d 131 (2d Cir. 2020) ...........................................................11

*United States v. Esformes*,
  60 F.4th 621 (11th Cir. 2023) .........................................................25

*United States v. Munsingwear, Inc.*,
  340 U.S. 36 (1950) ............................................................................8

*Univ. of Tex. v. Camenisch*,
    451 U.S. 390 (1981) ................................................................................. 10, 12, 19

*Universal Life Church Monastery Storehouse v. Nabors*,
    35 F.4th 1021 (6th Cir. 2022) ................................................................................. 2

*Uzuegbunam v. Preczewski*,
    141 S.Ct. 792 (2021) ................................................................................. 7

*Van Wie v. Pataki*,
    267 F.3d 109 (2d Cir. 2001) ................................................................................. 7

*Warth v. Seldin*,
    422 U.S. 490 (1975) ................................................................................. 20

*Waskul v. Washtenaw Cnty. Cmty. Mental Health*,
    900 F.3d 250 (6th Cir. 2018) ................................................................................. 10

*Whitaker v. Peet's Coffee*,
    2022 WL 1189888 (N.D. Cal. Apr. 21) ................................................................................. 17

*Yelapi v. DeSantis*,
    487 F. Supp. 3d 1278 (N.D. Fla. 2020) ................................................................................. 10

## Other Authorities

Fed. R. Civ. P. 54(c) ................................................................................. 5

## INTRODUCTION & SUMMARY OF ARGUMENT

It bears repeating: Pfizer is rejecting certain students because of their race. Pfizer admits that its Breakthrough Fellowship excludes whites and Asians. That discrimination is not remotely legal under federal law, most notably §1981. So Pfizer discriminated against whites and Asians in 2021 and 2022. Pfizer will discriminate against them again in 2023. And Pfizer plans to keep discriminating in 2024 and 2025. Though Pfizer tried to sanitize its website after Do No Harm appealed, Pfizer never mentions those changes, attaches any significance to them, or claims that the fellowship is now race neutral. DNH-Br.14.

Because Pfizer wants to keep its fellowship but can't defend its legality, Pfizer asks this Court to make it unchallengeable. Per Pfizer: Associations cannot challenge this racial exclusion because something in §1981 bars associational standing. Students won't challenge it because they can't band together through associations, or because any association would have to immediately disclose their identities to the world, including the people at Pfizer who choose the fellows. And if some student is bold enough to sue on her own, then she has just a few months to get relief—or else her case becomes irreparably moot.

None of that is right. And none of it justifies the district court's sua sponte dismissal. Pfizer's only defense of that fundamental error—that Do No Harm essentially asked for it by moving for a preliminary injunction—has been rejected many times. This Court should not "summarily affirm." Pfizer-Br.1. It should vacate and reverse.

# ARGUMENT

Defending a dismissal it never asked for, Pfizer now says this appeal is moot and that the district court rightly dismissed the §1981 claim. It also defends the no-notice dismissal, and it raises alternative reasons why the district court should have declined supplemental jurisdiction. These new arguments cannot salvage the sua sponte dismissal.

## I. This appeal is not moot (and if it were, the district court's opinion should be vacated, not affirmed).

Pfizer says this appeal became moot in March 2023, when Pfizer stopped accepting applications for the 2023 class. And it says this intervening mootness is a reason to "affirm." Pfizer-Br.2, 41-50. Though this argument appears *second* in Pfizer's brief, it goes to "'appellate jurisdiction'" and thus "'is antecedent to all other questions,'" including Do No Harm's "standing" below. *Cline v. Sunoco Partners Mktg. & Terminals L.P.*, 2021 WL 5858399, at *2 (10th Cir. Nov. 1).

Pfizer is mistaken. Do No Harm has a live challenge to the 2024 class. Same for 2023. And even if this appeal were moot, this Court would vacate, not affirm.

**1.** The end of the 2023 cycle could not moot this case because Do No Harm has another member for 2024. *See* Member C Decl. (CA2 Doc. 38-2). An association's claim is not moot, even "after" the claims of its original members expire, if it has "some other" member with a live claim. *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1037 (6th Cir. 2022). Pfizer's cases do not reject that rule; they apply it. *E.g.*, *Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of Milwaukee*, 708 F.3d 921, 930 (7th

2

Cir. 2013) (case moot only after association couldn't identify "any other members" with live claims). And the opposite rule was rejected in *Parents Involved*, where the Supreme Court let an association keep litigating with new members after its original members aged out. Mot.-Supp.-Reply 6-8 (CA2 Doc. 53).

Pfizer wants this Court to *pretend* that the case is moot by denying Do No Harm's motion to supplement. That argument was nonsensical the first time Pfizer made it, as Do No Harm explains in its motion papers. But the argument has gotten worse.

For one, Pfizer now identifies the supposed case-mooting event: its closure of the application window in March 2023. Pfizer-Br.42. Yet Pfizer closed (and opened) that window months *after* Do No Harm noticed its appeal. So this case is unlike *Fox*, where this Court denied supplementation because mootness had been "'at issue'" in the district court. Pfizer-Br.46. Pfizer has no case suggesting that litigants must submit evidence *in the district court* about a mootness issue that arose *only on appeal*. And, of course, Do No Harm would have identified Member C below, but the district court unpredictably dismissed the whole case.[1]

---

[1] Pfizer's other arguments confuse mootness with standing. Pfizer-Br.44-47. Plaintiffs usually can't supplement the record on standing because they have the burden to plead and prove standing in the district court. *Prairie Rivers Network v. Dynegy Midwest Generation*, 2 F.4th 1002, 1012 (7th Cir. 2021). But unlike standing, mootness needn't be addressed in the complaint. *Reid v. Hurwitz*, 920 F.3d 828, 833 (D.C. Cir. 2019). The *defendant* has the burden of proving it. *Mhany Mgmt., Inc. v. Nassau*, 819 F.3d 581, 603 (2d Cir. 2016). And it's determined at the time of the case-mooting event, not at the time of filing. *Fed. Defs. of N.Y., Inc. v. BOP*, 954 F.3d 118, 126 (2d Cir. 2020). So when an alleged case-mooting event occurs on appeal, appellate courts often consider supplemental evidence to make sure they have jurisdiction. Mot.Supp.Reply 2, 5-7, 10.

For another thing, Pfizer now admits that appellate courts *should* accept declarations like Member C's when it serves "the interest of judicial economy." Pfizer-Br.47 & n.9. Exactly right: Denying supplementation here would violate that interest by forcing Do No Harm to file a new lawsuit on behalf of Member C, get dismissed again, and come back to this Court on the same evidence. While Pfizer defends that rigmarole because the district court could review the declaration first, Pfizer admits that benefit is negligible. As it notes, Member C is "[m]uch like" Members A and B, and Pfizer's challenges to him are "the same" as its challenges to them. Pfizer-Br.11, 14, 50. Because their standing is a question of law that this Court would resolve de novo anyway, refusing to consider Member C's declaration would serve no purpose. *Thomas More L. Ctr. v. Obama*, 651 F.3d 529, 536 (6th Cir. 2011). And it would defy this Court's "strong preference for resolution of disputes on their merits." *Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320 (2d Cir. 1986).[2]

**2.** Even if Do No Harm were limited to Members A and B, this case wouldn't be moot. A case is not moot unless "it is impossible for a court to grant any effectual relief whatever." *Knox v. SEIU*, 567 U.S. 298, 307-08 (2012) (cleaned up). Any theoretical relief that could provide even partial redress keeps the case alive, even if the plaintiff

---

[2] Notably, Pfizer does not argue that the criteria for the 2024 fellowship have changed. Pfizer does not deny that those criteria exclude whites and Asians. Pfizer had applied them twice before this lawsuit, and Pfizer still defends their legality. *See* DNH-Br.14-15. Pfizer thus could not carry its heavy burden of proving mootness through voluntary cessation, especially because it never tried. *Mhany*, 819 F.3d at 604.

didn't request it or is highly unlikely to get it. *Rezaq v. Nalley*, 677 F.3d 1001, 1010 (10th Cir. 2012); *MOAC Mall Holdings LLC v. Transform Holdco*, 143 S.Ct. 927, 935 & n.4 (2023). Here, effective injunctions are available. If not, this case would satisfy the capable-of-repetition exception. And in all events, Do No Harm's request for nominal damages is live.

**a.** Do No Harm could still get an injunction that helps Members A and B. Pfizer seems to assume the requirements *it* created for the fellowship—the application deadline, age requirement, number of spots, etc.—are set in stone. Yet courts have "broad discretion, in the exercise of their equitable powers, to fashion the most complete relief possible for victims of discrimination." *Gibson v. ABC*, 892 F.2d 1128, 1133 (2d Cir. 1989). A court could order Pfizer to redo the application process for 2023. *See Pope v. Albany*, 687 F.3d 565, 569-70 (2d Cir. 2012). A court could order that relief even after the fellowship starts this summer, or something narrower like making Pfizer let college seniors apply for the 2024 class or making Pfizer create a new spot for the 2023 class (that individuals who were juniors in 2023 can apply for). And a court could always "level down" by enjoining the fellowship altogether. *See Heckler v. Mathews*, 465 U.S. 728, 740 (1984).

Do No Harm can seek these and other remedies on remand. Plaintiffs are not limited to the remedies in their complaint. *Holt Civic Club v. Tuscaloosa*, 439 U.S. 60, 65 (1978); *see* Fed. R. Civ. P. 54(c). Even if they were, Do No Harm's complaint seeks many kinds of injunctive relief, including a catchall for "[a]ll other relief," JA31; and its

complaint could have been amended to ask for more if the district court hadn't sua sponte dismissed. While Do No Harm said it needed a preliminary injunction to prevent "irreparable injuries," D.Ct. Doc. 5-8 at 27-28, it never suggested the denial of that motion would *moot* the case. Neither did Pfizer. It insisted that the denial would *not* cause irreparable harm, D.Ct. Doc. 30 at 33-34, and the district court agreed to deny Do No Harm's motion. Nothing bars Do No Harm from responding to these developments by identifying other kinds of relief that would let the case proceed. *Chi. United Indus., Ltd. v. Chicago*, 445 F.3d 940, 948 (7th Cir. 2006).

**b.** If Pfizer were right that students' claims become moot once it closes the application window, then this case would be "capable of repetition yet evading review." *Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 479 n.1 (2d Cir. 2002). That exception applies when "'the named plaintiff can make a reasonable showing'" that the controversy will arise again, and the challenged action is "too short to be fully litigated." *Id.* (cleaned up). The named plaintiff here is Do No Harm. For it, "this controversy is not just '*capable* of repetition'"; it "*is* repeating" with other members. *In re Detroit*, 841 F.3d 684, 691 (6th Cir. 2016); *e.g.*, *Sosna v. Iowa*, 419 U.S. 393, 400-01 (1975); *Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1117-18 (9th Cir. 2003). And according to Pfizer, the window of review is less than six months: from the time someone finishes their sophomore year in May until Pfizer closes the application window in August/September. Pfizer-Br.42; JA47-48. This case evades review because even a full school year isn't enough time "'for a district court, circuit court of appeals, and Supreme Court to adjudicate.'"

6

*Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1343 (11th Cir. 2014); *accord Schutz*, 290 F.3d at 479 n.1.

**c.** At a minimum, this case isn't moot because a court could award nominal damages. Do No Harm asked for that relief. JA31. Associations can seek it because, unlike compensatory damages, nominals don't require individual members' participation. *Fla. Paraplegic Ass'n v. Martinez*, 734 F. Supp. 997, 1001 (S.D. Fla. 1990). And if Pfizer is right that Members A and B have forever lost their chance to apply, then they've suffered a "past, completed injury" that nominals can redress. *Uzuegbunam v. Preczewski*, 141 S.Ct. 792, 802 n.* (2021). Their "denial of equal treatment" from being unable to apply or compete for Pfizer's fellowship would be complete. *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656, 666 (1993); *e.g.*, *Price v. Charlotte*, 93 F.3d 1241, 1248, 1256 (4th Cir. 1996).

Pfizer doesn't dispute any of these principles. It merely repeats its two challenges to Do No Harm's standing—that Members A and B are anonymous and not able and ready. Pfizer-Br.46. But those arguments are still wrong. DNH-Br.26-42; *infra* II.A-B. Do No Harm's "mer[e] reques[t]" for nominal damages thus independently defeats mootness. *Van Wie v. Pataki*, 267 F.3d 109, 115 n.4 (2d Cir. 2001).

**3.** Finally, even if this case were moot, the Court would not "affirm." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). It is "'well established'" that, when a case becomes moot on appeal, this Court will dismiss the appeal and "generally vacate the lower court's judgment." *Coll. Standard Mag. v. Student Ass'n of SUNY-Albany*, 610

7

F.3d 33, 35-36 (2d Cir. 2010). Though vacatur depends on the equities, that relief is appropriate in the "ordinary run of cases." *Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of Watervliet*, 260 F.3d 114, 121 (2d Cir. 2001); *accord Penguin Books USA Inc. v. Walsh*, 929 F.2d 69, 74 (2d Cir. 1991) ("'standard"). Vacatur is fair because a decision that the losing party had no chance to appeal should not "spaw[n] any legal consequences." *United States v. Munsingwear, Inc.*, 340 U.S. 36, 41 (1950). Even if this Court "agrees with the reasoning of the district court," it cannot "escape its duty to vacate." *Bragger v. Trinity Cap. Enter. Corp.*, 30 F.3d 14, 17 (2d Cir. 1994).

The equities heavily favor vacatur here. Do No Harm never "intended to moot the case"; it "vigorously pursued" it and still "argue[s] against its mootness." *Russman*, 260 F.3d at 123. Any mootness was caused either by the appellee (Pfizer closing the application window) or by happenstance (Members A and B aging out). Either way, vacatur is required. *Associated Gen. Contractors of Conn., Inc. v. New Haven*, 41 F.3d 62, 67 (2d Cir. 1994). Further, the public has little interest in preserving the district court's opinion, given the unreliability of sua sponte dismissals. *Snider v. Melindez*, 199 F.3d 108, 113 (2d Cir. 1999). And Do No Harm has a substantial interest in not having that opinion used against it. *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1133 (10th Cir. 2010); *e.g.*, *FLFMC v. Wham-O, Inc.*, 444 F. App'x 447, 448 (Fed. Cir. 2011) (vacating a dismissal for lack of Article III standing that became moot on appeal). Only "[b]y eliminating the judgment that has become moot" could this Court ensure "the rights of all the parties are preserved." *Bragger*, 30 F.3d at 17. Pfizer doesn't argue

otherwise, even though its key cases about appellate mootness all ordered vacatur. *E.g.*, *Russman*, 260 F.3d at 121 (noting this Court "usually" vacates when an appeal becomes moot due to a student's graduation).

But this appeal is not moot. So this Court should proceed to consider standing.

## II.   Do No Harm has standing to bring its §1981 claim.

### A.   Constitutional standing

Though the district court dismissed, Pfizer resists the motion-to-dismiss standard. (No wonder, since its argument that the complaint fails that standard spans a lone paragraph and footnote. Pfizer-Br.24, 31 n.6.) Pfizer doesn't think it matters that, in this appeal, Do No Harm is challenging only the dismissal of its complaint. Because Do No Harm sought a preliminary injunction, Pfizer thinks this Court should review the district court's *dismissal* under the preliminary-injunction standard, which Pfizer equates to summary judgment.

Pfizer couldn't be more wrong. While a court must dismiss once it "determines" that the plaintiff lacks standing, Fed. R. Civ. P. 12(h)(3), that determination "'must be'" made on "'the manner and degree of evidence required at the successive stages of the litigation,'" *Bennett v. Spear*, 520 U.S. 154, 167-68 (1997). Because Pfizer has "not yet filed an answer" and "no discovery ha[s] occurred," this case is still at "the pleadings stage," even though Do No Harm "contemporaneously" sought a "preliminary injunction." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015). That motion did not fast-forward this case to another stage because preliminary injunctions

are fast, informal, and temporary. *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *H-FERA v. Griffin*, 958 F.2d 24, 26 (2d Cir. 1992). True, Do No Harm shouldn't have gotten a preliminary injunction if it could not meet the preliminary-injunction standard, including by showing it likely has standing. *Food & Water Watch*, 808 F.3d at 913. But an inability to show likely standing "requires denial of the motion for preliminary injunction, not dismissal of the case." *Id.* Total dismissal was erroneous because Do No Harm successfully alleged standing "under the motion-to-dismiss standard." *Id.*

Pfizer suggests that Do No Harm lacks "a single case" supporting this rule, Pfizer-Br.38, but that charge applies only to Pfizer. Though the D.C. Circuit ultimately affirmed in *Food & Water Watch*, it held that the district court *erred* by dismissing the case based on the plaintiff's failure to meet the preliminary-injunction standard. *See* 808 F.3d at 913 (district court was "incorrect" and "should have" applied the motion-to-dismiss standard); *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 900 F.3d 250, 255 n.3 (6th Cir. 2018) ("caution[ing]" district courts not to make this same mistake). And courts routinely appreciate the differences between the two standards. *E.g.*, *Swanson Grp. Mfg. LLC v. Jewell*, 195 F. Supp. 3d 66, 79 (D.D.C. 2016); *Yelapi v. DeSantis*, 487 F. Supp. 3d 1278, 1286 n.8 (N.D. Fla. 2020). Indeed, Pfizer can't find a single case where a court dismissed at the pleading stage because the plaintiff lacked standing *under the preliminary-injunction standard*. In the cases Pfizer cites, the courts dismissed because the plaintiff lacked standing *under the motion-to-dismiss standard*. Pfizer-Br.36-38; *e.g.*, *Roberts v. Bassett*, 2022 WL 16936210, at *1 (2d Cir. Nov. 15) (applying the motion-to-dismiss standard);

*Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 244-46 (2d Cir. 2008) (defendants moved to dismiss, and plaintiffs "d[id] not contest" their failure to exhaust).[3]

Pfizer's insistence on the preliminary-injunction standard ultimately doesn't matter, though, because Do No Harm easily satisfied that standard too. This Court, quoting Justice Blackmun's dissent in *Lujan*, compares that burden to the burden of showing standing at "'summary judgment.'" *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 907 n.8 (1990) (Blackmun, J., dissenting)). Justice Blackmun meant the burden of *production* that a plaintiff has when "'*resisting* a summary judgment motion.'" *Lujan*, 497 U.S. at 907 n.8 (dissent) (emphasis added). Preliminary injunctions are like summary judgment in that way because, at both stages, the plaintiff cannot "rest on … mere allegations" but must present "specific facts" via "affidavit or other evidence." *Cacchillo*, 638 F.3d at 404. But preliminary injunctions are still preliminary; the plaintiff doesn't need to *prove* anything or win a final

_____

[3] By motion-to-dismiss standard, Do No Harm means the standard that governs "facial" challenges to Article III standing. Facial challenges test whether the plaintiff plausibly alleged standing in the complaint, while "factual" challenges test whether the plaintiff presented evidence *proving* standing by a preponderance. *United States ex rel. Hanks v. United States*, 961 F.3d 131, 136-37 (2d Cir. 2020). Pfizer didn't raise a factual challenge: It didn't submit any evidence on Article III standing, or even file a motion to dismiss. *Carter v. HealthPort Techs.*, 822 F.3d 47, 58 (2d Cir. 2016). And though Do No Harm sought a preliminary injunction, a "factual" challenge would have been "premature" before the parties "had an opportunity either to fully develop or fully contest" the evidence through discovery and an evidentiary hearing. *Fair Hous. in Huntington Comm. Inc. v. Huntington*, 316 F.3d 357, 361-62 (2d Cir. 2003). Accordingly, this Court must "assume the truth of the facts alleged" and "construe" everything in Do No Harm's favor. *Id.*

judgment. *Camenisch*, 451 U.S. at 394-95. Because a preliminary injunction requires only likely success, the plaintiff must "show only that each element of standing is likely to obtain." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020). Do No Harm made that showing under §1981. So, under any standard, the district court's rulings on anonymity and readiness/ability should be reversed.

### i. Anonymity

Until the district court did it below, no court had ever dismissed a complaint because an association that identified specific members with standing used pseudonyms. (The district court's decision has since inspired another. *Speech First, Inc. v. Shrum*, 2023 WL 2905577 (W.D. Okla. Apr. 10), *appeal pending*, No. 23-6054 (10th Cir.).) Though Pfizer defends this aggressive reading of *Summers*, this Court cannot accept it at the pleading stage and should not accept it at any stage.

**1.** *Summers* doesn't apply at the pleading stage. As Pfizer admits, this Court's decision in *Building & Construction* holds that associations need not "name names" to defeat a "motion to dismiss." Pfizer-Br.22-23. Pfizer doesn't claim that *Summers* overruled *Building & Construction*. Nor could it. *Summers* was not a motion-to-dismiss case. And as Pfizer recognizes, *Building & Construction* anticipated *Summers* and explained why a naming requirement at later stages would not contradict its holding. Pfizer-Br.23. *Summers* itself created no new law but rested on cases that predate *Building & Construction*. Pfizer-Br.18-19.

12

Pfizer cannot seriously argue that *Building & Construction* was overruled by *Twombly* and *Iqbal*. *Cf.* Pfizer-Br.22-23. Every principle that *Building & Construction* invoked has been reaffirmed since. Four months after *Iqbal*, the en banc Court again rejected any "heightened pleading standards to allege standing." *Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 333 (2d Cir. 2009) (en banc), *aff'd in relevant part by equally divided Court*, 564 U.S. 410 (2011). And it reaffirmed the "lowered bar for standing at the pleading stage," including the rule that "'general factual allegations'" suffice because they're presumed to "'embrace those specific facts that are necessary.'" *Id.*

This Court thus remains "'bound'" by its prior precedent in *Building & Construction*. Pfizer-Br.51. Departing from it would also split with many other courts that don't apply *Summers* at the motion-to-dismiss stage, as Pfizer acknowledges. Pfizer-Br.23-25. And for what purpose? "'Naming … members adds no essential information bearing on … standing.'" *Advocates for Highway & Auto Safety v. FMCSA*, 41 F.4th 586, 594 & n.2 (D.C. Cir. 2022). Pfizer still doesn't give a *single reason* why it needs to unmask Members A and B to respond to the complaint. Pfizer identifies no argument it could have made, but didn't, if it had their real names. Pfizer couldn't even use their names to verify their identities, since it doesn't know them and has no records about them. The only question relevant to standing—the members' ability and readiness to apply—has nothing to do with what the complaint calls them. The district court could assess standing without their real names, just as courts assessed standing without the real names of the

law schools in *FAIR*, the immigrants in *Census Case*, and the DACA recipients in *NAACP*. DNH-Br.31-32.

**2.** Even if *Summers* applied, Do No Harm complied with it. Pfizer recites many cases that apply *Summers*'s "naming requirement," but Pfizer spends no time explaining what the naming requirement *is*. "[I]n *Summers*, the plaintiffs lacked standing because their alleged harm was not tied to any specific person." *Humane Soc'y v. USDA*, 2021 WL 1593243, at *5 (C.D. Cal. Mar. 26); *see Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (requiring "specific allegations"). Associations thus can violate *Summers* when base their standing on their membership generally, instead of specifying a member. Do No Harm didn't make that error. Pfizer doesn't argue that it did. And all of Pfizer's appellate cases follow that fact pattern; *none* involved an association that identified and named a specific member but used a pseudonym. Pfizer-Br.19-21. Several courts have explained why *Summers* does not somehow ban this common practice. DNH-Br.30-32.

Do No Harm thus established standing even under the preliminary-injunction standard. It set forth specific facts in three exhibits, four declarations, and a verified complaint (which counts as evidence, *New Hope Fam. Servs. v. Poole*, 966 F.3d 145, 181 (2d Cir. 2020)). As Pfizer's main case explains, this evidence must "'be taken to be true.'" *Cacchillo*, 638 F.3d at 404. Pfizer's only pushback is its assertion, in a footnote, that the members' anonymous declarations aren't allowed under 28 U.S.C. §1746. Pfizer-Br.26 n.5. Even if Pfizer were right, Do No Harm made the same allegations in

14

its verified complaint and declarations from its executive director—both sworn, neither anonymous. JA8-9 ¶¶49-70; JA34-35; JA90. Those declarations are based on her personal knowledge and sufficient on their own. *Marszalek v. Kelly*, 2021 WL 2350913, at *4 (N.D. Ill. June 9); *McCloud v. McClinton Energy Grp.*, 2015 WL 737024, at *4 n.5 (W.D. Tex. Feb. 20). Regardless, Pfizer is not right: "28 U.S.C. §1746 … does not prohibit the use of … pseudonyms" if "the actual person can be identified." *Springer v. IRS*, 1997 WL 732526, at *5 (E.D. Cal. Sept. 12). Members A and B can be identified—and thus held accountable—by Do No Harm's director and from the declarations' identifying details. *McGehee v. Neb. Dep't of Corr. Servs.*, 2019 WL 1227928, at *2 (D. Neb. Mar. 15), *vacated for subsequent mootness*, 987 F.3d 785 (8th Cir. 2021).

While there are limits on anonymity, those limits don't come from Article III. *See B.R. v. F.C.S.B.*, 17 F.4th 485, 493-94 (4th Cir. 2021) (pseudonyms "in no way detrac[t]" from "what constitutes an Article III case or controversy"). Once discovery begins, Pfizer might try to get the identities of Members A and B. If Pfizer is entitled to that information, then Do No Harm will provide it then—subject to "safeguards" that protect its members from further disclosure to the public or the decisionmakers at Pfizer. *S.C. State Conf. of NAACP v. Alexander*, 2022 WL 453533, at *3 (D.S.C. Feb. 14). But that debate is "a discovery dispute" that "can and should be handled using the ordinary mechanisms for resolving such disputes," not a reason to deny standing now. *Id.* Further, the Federal Rules generally require parties to use their real names unless the court gives them permission to use pseudonyms. *Publicola v. Lomenzo*, 54 F.4th 108, 112-13

15

(2d Cir. 2022). But the fact that courts can "allow litigants to proceed anonymously," Pfizer-Br.25, proves that anonymity is *not* a question of Article III standing. And Pfizer is right that, here, the anonymity rules are a "red herring." Pfizer-Br.25. It concedes that Members A and B are not parties, and it never disputes that they have a First Amendment right to be anonymous. DNH-Br.32-33.

The district court's application of *Summers* to pseudonyms was unprecedented. Though Pfizer notes that it's since been followed in another case "where the plaintiff is represented by the same counsel," Pfizer-Br.9, Pfizer omits that several courts have *granted preliminary injunctions* to that same plaintiff based on anonymous members and declarations. *E.g.*, *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1129 (11th Cir. 2022); *Speech First, Inc. v. Khator*, 603 F. Supp. 3d 480, 482 (S.D. Tex. 2022); *Speech First, Inc. v. Sands*, 2021 WL 4315459, at *24 (W.D. Va. Sept. 22). The evidence was sufficient here too, under any standard. Indeed, "it is not clear how a more specific identification could be accomplished at [the preliminary-injunction] stage without explicitly naming the affected member, a step that associational standing does not require." *Marszalek*, 2021 WL 2350913, at *4.

### ii.   Able and ready

Members A and B are also able and ready to apply. Not a high bar to begin with, Do No Harm easily cleared it at the pleading stage. Though Pfizer continues to insist on the preliminary-injunction standard, it's still wrong and Do No Harm cleared that bar too.

**1.** Pfizer fails to dispute that the complaint sufficiently alleges ability/readiness, dedicating only a footnote to the motion-to-dismiss standard without addressing any of Do No Harm's arguments or authorities. Pfizer-Br.31 n.6. Understandably. At the pleading stage, this Court must accept Do No Harm's factual allegations, including its allegations about Member A and B's intent and qualifications. Everything must be construed, and all reasonable inferences drawn, in its favor. And general allegations must be read to contain all necessary specifics. *Whitaker v. Peet's Coffee*, 2022 WL 1189888, at *4 (N.D. Cal. Apr. 21). Do No Harm cited many cases that refused to dismiss complaints alleging far less, DNH-Br.37-38, 40-41; and Pfizer cites none, let alone a case dismissing a complaint this thorough. And, of course, Do No Harm could have amended to add more had the district court not sua sponte dismissed. Because the pleading standard governs and Do No Harm easily satisfies it, this Court should reverse.

**2.** Though the motion-to-dismiss standard controls, Do No Harm also satisfied the preliminary-injunction standard. On "ability" to apply, Pfizer regurgitates the district court's assertion that Members A and B didn't say enough about their interest in a master's or their leadership potential. But they did. Both members want an MBA. JA37 ¶8; JA15 ¶66. Both are well positioned by getting into Ivy League schools, earning great grades, and ascending to leadership positions. JA36 ¶¶3-6; JA39 ¶¶3-6. And these same qualities certainly give them exceptional leadership *potential*. JA36 ¶2; JA39 ¶2. Pfizer doesn't dispute that, because the injury is an inability to compete, what matters is that Members A and B would have a shot to explain in their application why they meet these

17

criteria—not whether Pfizer would agree. DNH-Br.38; *see Larsen v. U.S. Navy*, 486 F. Supp. 2d 11, 22 (D.D.C. 2007) (requiring only "a 'realistic possibility' of competing"). Because these criteria are so fuzzy and subjective, that showing isn't hard. Especially since, at the preliminary-injunction stage, courts are simply predicting whether Do No Harm will "likely" have standing. *Fenves*, 979 F.3d at 330.

As for "readiness" to apply, Pfizer's newfound emphasis on *Carney* is unpersuasive. Unlike the district court, Pfizer denies that the members' interest in the fellowship is insincere. Pfizer-Br.34. While that concession is well taken, it fatally undermines Pfizer's reliance on *Carney*—a decision that turned on "the disingenuous nature" of the plaintiff's asserted intent. *Crawford v. Uber Techs.*, 2021 WL 3810259, at *3 (N.D. Cal. Aug. 26). Also unlike *Carney*, Members A and B did not "fai[l] to apply previously when [they were] eligible," and they specified the exact "timeframe" when they would apply. 141 S.Ct. 493, 501 (2020). Nor is it strange that college students, especially high achievers like Members A and B, would be interested in a "fiercely competitive" program that provides a "pa[id] for" master's and a "Manager-level position" at a "global" company. Pfizer-Br.4-5. Pfizer's speculations cannot defeat their declarations' clear and direct statements of intent, JA36 ¶2, ¶7; JA38 ¶2, ¶7—"'direct testimonial evidence'" that would even "suffic[e] in defeating summary judgment." *Larsen*, 486 F. Supp. 2d at 21.

Perhaps the biggest difference between this case and *Carney* is the evidence. *Carney* posited that a "statement of intent alone" might suffice to show standing, but not there given the "contrary evidence" that surfaced in discovery. 141 S.Ct. at 501-02.

18

There is no contrary evidence here. Pfizer could have submitted evidence—like its criteria for evaluating a "committed interest" in an MBA or "leadership potential"—but didn't. The district court did not make "factual findings" that Members A and B *lack* these criteria. Pfizer-Br.29. It said that their declarations weren't specific enough. Even if that were a factual finding, it would be clear error because the missing facts are not dispositive. DNH-Br.36-42. It would be procedural error because courts cannot make case-dispositive findings at the preliminary-injunction stage. *Camenisch*, 451 U.S. at 395. And it would be legal error because the district court should have credited Do No Harm's unrebutted evidence. *New Hope*, 966 F.3d at 181.

## B.     Statutory standing

Despite never citing it below, Pfizer now says this Court's decision in *Warth* is a "clear" and "well-settled" rejection of associational standing under §1981. Pfizer-Br.53-54. Pfizer accuses Do No Harm of "t[ying] itself into knots," Pfizer-Br.52, but Do No Harm made three simple points: *Warth* involved §1983; §1983 is not §1981; and this Court shouldn't extend wrong precedents to new statutes. Instead of trying to "untie" these knots, Pfizer simply ignores them.

**1.** As Do No Harm argued and Pfizer doesn't deny, this Court has never decided whether associational standing is barred in a case involving a private defendant. The defendant in *Warth* was a state actor. When plaintiffs sue state actors for violations of §1981, their sole cause of action is §1983. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989). So when *Warth* said those associations lacked standing under *Aguayo*, it did not

19

dismiss a standalone §1981 claim. *Contra* Pfizer-Br.52. It dismissed another §1983 claim (specifically, a §1983 claim asserting violations of §1981). That's what *Warth* said it was doing, and that's the only way this Court has ever read *Warth*. DNH-Br.45. This Court has never addressed whether associational standing is available when plaintiffs sue under §1981 itself, as they do when they sue private defendants under the implied right of action. DNH-Br.44.

**2.** Pfizer never explains why, as a matter of first impression, this Court *should* hold that §1981 bars associational standing. Pfizer ignores the fact that, in *Aguayo* itself, this Court *approved* associational standing "under the general federal question statute, 28 U.S.C. §1331." 473 F.2d 1090, 1099 (2d Cir. 1973). Do No Harm's implied right of action against private defendants arises under that statute. DNH-Br.43. That right of action, moreover, was created by the Supreme Court in *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975). It is inconceivable that the Court snuck in a silent ban on associational standing, just one month before it declared the *validity* of associational standing under various civil-rights statutes in *Warth v. Seldin*, 422 U.S. 490, 511 (1975).

That §1981 creates "'personal'" rights is not a sufficient reason to bar associational standing. Pfizer-Br.53. *All* rights are personal in the sense that "third parties are not normally entitled to" assert them. *Domino's Pizza v. McDonald*, 546 U.S. 470, 479 (2006). But associational standing is a "strand" of "representational standing"—an *exception* to the "presumption … that litigants may not assert the rights of absent third parties." *United Food & Com. Workers v. Brown Grp.*, 517 U.S. 544, 557 (1996) (cleaned

20

up). If it weren't, then associational standing wouldn't exist under *any* statute—which appears to be Pfizer's view, since it asks this Court to extend *Aguayo* to all "anti-discrimination statutes," even state and local laws. Pfizer-Br.60. Yet outside of §1983, this Court generally allows associations to vindicate others' personal rights. *E.g.*, *Fair Hous.*, 316 F.3d at 363-64 (FHA); *N.Y.S. Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 131 (2d Cir. 2015) (ERISA); *Innovative Health Sys. v. White Plains*, 117 F.3d 37, 46-47 (2d Cir. 1997) (ADA).

**3.** Finally, Pfizer doesn't deny that *Aguayo* is wrong. Though Pfizer quibbles with one citation, it never denies that *Aguayo* does, in fact, contradict "'a raft of Supreme Court precedent.'" Pfizer-Br.52 n.10. The Court lets associations sue on behalf of their members under §1983 almost every term. *E.g.*, DNH-Br.46 (collecting cases); *Students for Fair Admissions, Inc. v. UNC*, 142 S.Ct. 896 (2022); *Am. Legion v. Am. Humanist Ass'n*, 139 S.Ct. 2067 (2019); *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786 (2011). So do the "other circuits." *Allen v. Graham*, 2021 WL 2223772, at *5 (M.D.N.C. June 2); *Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 272 n.17 (S.D.N.Y. 2019). *Aguayo* predates the creation of associational standing and guessed wrong about how it would work. Nothing requires this Court to extend that wrong statutory precedent to new statutes. DNH-Br.45-47. Pfizer never disputes that approach to precedent, and that approach gives this Court one more reason to reverse the district court's reading of §1981.

### III. Do No Harm's claims under Title VI and the ACA should not have been dismissed sua sponte.

"No principle is more fundamental to our system of judicial administration than that a person is entitled to notice before adverse judicial action is taken against him." *Lugo v. Keane*, 15 F.3d 29, 30 (2d Cir. 1994). The district court's sua sponte dismissal violated that principle and prejudiced Do No Harm with respect to Title VI and the ACA. Though Pfizer urges this Court to "alternatively affirm" the dismissal of those claims "for lack of statutory standing," Pfizer-Br.51, vacatur is required.

**1.** Pfizer does not deny that these claims couldn't be dismissed sua sponte. Though it defends sua sponte dismissals for lack of jurisdiction, it admits that sua sponte dismissals under "[Rule] 12(b)(6)" are "improper." Pfizer-Br.40. Statutory standing implicates the latter. *D'Addario v. D'Addario*, 901 F.3d 80, 96 n.8 (2d. Cir. 2018). Nor can courts venture beyond the complaint under Rule 12(b)(6), like they sometimes can when assessing jurisdiction. *Id.* at 86 n.1.

The district court's dismissal was sua sponte. *Cf.* Pfizer-Br.58-59. According to Pfizer, Do No Harm cannot complain because it "deliberately chose to bring a preliminary injunction motion." Pfizer-Br.2. Though Pfizer repeats that refrain a lot, it misses the many cases that have rejected it. This Court has long "rejected the proposition" that "one who seeks a preliminary injunction" must come "fully armed" for final judgment. *Herzog & Straus v. GRT Corp.*, 553 F.2d 789, 792 (2d Cir. 1977). Litigants who seek a preliminary injunction can assume that "'[l]oss of [the] motion … means only temporary lethality'" and that "'[f]inal judgment is not then a possibility.'" *H-FERA*, 958 F.2d

at 26; *accord Freeplay Music, Inc. v. Verance Corp.*, 80 F. App'x 137, 139 (2d Cir. 2003). Pfizer likes to equate preliminary injunctions with summary judgment, but "'preliminary injunction motion papers should not be treated as if they were a response to a motion for summary judgment.'" *Pugh v. Goord*, 345 F.3d 121, 125 (2d Cir. 2003). Preliminary-injunction proceedings are, by definition, preliminary.

**2.** The principle from *Munaf v. Geren*—that a court can dismiss the case at the preliminary-injunction stage based on an "'insuperable'" defect—does not help Pfizer. 553 U.S. 674, 691 (2008). Courts are not supposed to invoke this power without first giving the plaintiff notice and an opportunity to respond on the propriety of dismissal. *Gellman v. Maryland*, 538 F.2d 603, 605 (4th Cir. 1976). And the standard is high. The defect should be both "'insuperable'" and "'clea[r].'" *Munaf*, 553 U.S. at 691; *accord Sheldon v. Moredall Realty Corp.*, 95 F.2d 48, 49-50 (2d Cir. 1938) ("wholly lacking"; "entirely destitute"); *Mast, Foos & Co. v. Stover Mfg. Co.*, 177 U.S. 485, 495 (1900) ("obviously" invalid; "incapable of remedy by amendment"). That standard is not met for Title VI or the ACA.

Though Do No Harm stands by its complaint, any defect with its allegations would not be insuperable. As Do No Harm argued and Pfizer never disputes, the district court's no-notice dismissal prejudiced Do No Harm on these claims. DNH-Br.22-26. It denied Do No Harm the right to respond to a motion to dismiss by "amend[ing] its pleadings." *Herzog*, 553 F.2d at 792; *Pugh*, 345 F.3d at 125-26. It raised merits defenses that Pfizer didn't—defenses that were otherwise forfeited and that the parties didn't

"develop" below (or here, given space constraints). *Herzog*, 553 F.2d at 792; *Pugh*, 345 F.3d at 125. And to the extent it relied on evidence outside the complaint, it applied the wrong standard, gave no notice of the stakes, and prevented Do No Harm from "develop[ing] the facts" through discovery. *Herzog*, 553 F.2d at 792.

Nor are these issues clear. Pfizer says it's not "principally engaged" in healthcare because it does not treat patients, but the same is true of pharmacies and yet they're covered, *see, e.g.*, *Doe One v. CVS Pharmacy, Inc.*, 2022 WL 3139516, at *3, *9 (N.D. Cal. Aug. 5); *Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 852 (D.S.C. 2015). Pfizer says it doesn't receive federal funding "as a whole," yet Pfizer receives both monetary and nonmonetary assistance that lacks a "'narrow purpose,'" *Johnson v. Napa Valley Wine Train, Inc.*, 2016 WL 493229, at *7 (N.D. Cal. Feb. 9); *see Cummings v. Premier Rehab Keller, PLLC*, 142 S.Ct. 1562, 1569 (2022) (Medicare and Medicaid); *DOT v. Paralyzed Veterans of Am.*, 477 U.S. 597, 607 n.11 (1986) (nonmonetary). And Pfizer simply ignores Do No Harm's arguments for why its federal funds needn't be aimed at "employment." DNH-Br.21-22. It also seems to concede, contra the district court, that this showing isn't necessary under either statute. Pfizer-Br.57.

The district court's sua sponte dismissal short-circuited these debates and prejudiced Do No Harm. Because that error "is, by itself, grounds for reversal," this Court should vacate regarding Title VI and the ACA. *Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 760 F.2d 1347, 1365 (2d Cir. 1985).

## IV.   Do No Harm's state and local claims should be reinstated.

With a single sentence and an irrelevant citation, Pfizer argues that Do No Harm lacks statutory standing to bring its state and local claims "for the same reason" it lacks statutory standing under §1981. Pfizer-Br.60. Pfizer says this lack of statutory standing is an alternative ground to affirm the district court's decision to "declin[e] … supplemental jurisdiction." Pfizer-Br.60. Apart from this point, though, Pfizer doesn't otherwise dispute that this Court should reinstate the state and local claims if it revives one or more federal claims. DNH-Br.48.

Pfizer's alternative argument fails four times over. It's not a reason to affirm because the district court didn't exercise its discretion on that ground. *Sinclair v. Soniform, Inc.*, 935 F.2d 599, 604 (3d Cir. 1991). Pfizer also forfeited the argument below by raising it only in a conclusory footnote. D.Ct. Doc. 30 at 21 n.6. And it forfeited the argument here by not developing it. *United States v. Esformes*, 60 F.4th 621, 640 (11th Cir. 2023). Whether associations have statutory standing under state and local law is a question of state and local law, not federal law. *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 123 (2d Cir. 2013). Yet Pfizer cites no case even hinting that New York bars associational standing under these statutes. It doesn't. *NOW v. N.Y. Div. of Hum. Rts.*, 358 N.E.2d 867, 868-69 (N.Y. 1974); *Glen Cove Mun. Civ. Serv. Comm'n v. Glen Cove NAACP*, 34 A.D.2d 956, 957 (N.Y. App. Div. 1970); *see also Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009).

# CONCLUSION

This Court should grant Do No Harm's motion to supplement and then reverse

in part, vacate in part, and remand.

Dated: April 28, 2023

Respectfully Submitted,

*/s/ Cameron T. Norris*
Thomas R. McCarthy
Cameron T. Norris
Frank H. Chang
C'Zar Bernstein
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
cam@consovoymccarthy.com
frank@consovoymccarthy.com
czar@consovoymccarthy.com

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with Local Rule 32.1(a)(4)(B) because it contains 6,987 words, excluding the parts that can be excluded. This brief also complies with Rule 32(a)(5)-(6) because it has been prepared in a proportionally spaced face using Microsoft Word 2016 in 14-point Garamond font (with headings in 16-point Helvetica Neue).

Dated: April 28, 2023                                    */s/ Cameron T. Norris*


## CERTIFICATE OF SERVICE

I e-filed this brief with the Court, which will email everyone requiring notice.

Dated: April 28, 2023                                    */s/ Cameron T. Norris*