# 23-15

## United States Court of Appeals for the Second Circuit

Do No Harm,

*Plaintiff-Appellant*,

v.

Pfizer Inc.,

*Defendant-Appellee.*

On Appeal from the United States District Court for the
Southern District of New York, No. 1:22-cv-7908 (Rochon, J.)

—————————————

**PLAINTIFF-APPELLANT DO NO HARM'S PETITION
FOR PANEL REHEARING AND REHEARING EN BANC**

—————————————

Thomas R. McCarthy
Cameron T. Norris
Frank H. Chang
C'Zar Bernstein
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Ste. 700
Arlington, VA 22201
(703) 243-9423
cam@consovoymccarthy.com

*Counsel for Do No Harm*

# TABLE OF CONTENTS

Table of Authorities ...................................................................................................ii

Rule 35 Statement .......................................................................................................1

Background ...................................................................................................................2

Reasons for Granting the Petition ..............................................................................5

    I.     The panel majority is wrong: An association does not lose standing whenever it refers to its members with pseudonyms. ........................................5

    II.    The panel's opinion splits with at least two circuits and creates an irreconcilable line of intracircuit precedent. .................................................. 12

    III.   The panel's opinion will deter associations from representing vulnerable members in court. ......................................................................................... 14

Conclusion ................................................................................................................. 15

Certificate of Compliance ........................................................................................ 17

Certificate of Service ................................................................................................ 17

# TABLE OF AUTHORITIES

**Cases**

*Advocs. for Highway & Auto Safety v. FMCSA,*
    41 F.4th 586 (D.C. Cir. 2022) .................................................. 1, 5, 7, 12, 13

*B.R. v. F.C.S.B.,*
    17 F.4th 485 (4th Cir. 2021) .......................................................... 6, 10, 11

*Bldg. & Constr. Trades Council v. Downtown Dev.,*
    448 F.3d 138 (2d Cir. 2006) ............................................................ 1, 13, 14

*Brown v. Davenport,*
    596 U.S. 118 (2022) ............................................................................... 9

*Carney v. Adams,*
    592 U.S. 53 (2020) ................................................................................. 9

*Chamber of Com. v. CFPB,*
    2023 WL 5835951 (E.D. Tex.) ............................................................ 6

*Dep't of Com. v. New York,*
    139 S.Ct. 2551 (2019) ........................................................................... 7

*DHS v. Regents,*
    140 S.Ct. 1891 (2020) ........................................................................... 5

*Draper v. Healy,*
    827 F.3d 1 (1st Cir. 2016) .................................................................. 12

*EW v. N.Y. Blood Ctr.,*
    213 F.R.D. 108 (E.D.N.Y. 2003) ....................................................... 11

*Fair Hous. in Huntington Comm. v. Town of Huntington,*
    316 F.3d 357 (2d Cir. 2003) ............................................................ 1, 14

*Food & Water Watch v. Vilsack,*
    808 F.3d 905 (D.C. Cir. 2015) ......................................................... 13

*FW/PBS, Inc. v. Dallas,*
    493 U.S. 215 (1990) .......................................................................... 4, 8

*Make the Rd. N.Y. v. McAleenan,*
    405 F. Supp. 3d 1 (D.D.C. 2019) ....................................................... 6

*NAACP v. Ala. ex rel. Patterson,*
    357 U.S. 449 (1958) ............................................................................. 7

*NAACP v. Trump,*
    298 F. Supp. 3d 209 (D.D.C.) .......................................................... 5, 9

*Nat'l Council of La Raza v. Cegavske*,
   800 F.3d 1032 (9th Cir. 2015) ........................................................7

*New York v. Dep't of Com.*,
   351 F. Supp. 3d 502 (S.D.N.Y.) ....................................................7

*PDE v. Olentangy*,
   2023 WL 4848509 (S.D. Ohio) ................................................. 6, 11

*S.C. Conf. of NAACP v. Alexander*,
   2022 WL 453533 (D.S.C.) ....................................................... 7, 10

*Sealed Plaintiff v. Sealed Defendant*,
   537 F.3d 185 (2d Cir. 2008) ....................................................... 11

*SFFA v. Harvard*,
   2023 WL 3126414 (D. Mass.) .................................................... 11

*SFFA v. Harvard*,
   600 U.S. 181 (2023) ................................................................. 1, 9

*SFFA v. West Point*,
   2024 WL 36026 (S.D.N.Y.) ........................................................6

*Speech First v. Cartwright*,
   32 F.4th 1110 (11th Cir. 2022) ................................................... 14

*Speech First v. Fenves*,
   979 F.3d 319 (5th Cir. 2020) ..................................................... 14

*Speech First v. Shrum*,
   92 F.4th 947 (10th Cir. 2024) ............................................. 1, 7, 12

*Speech First v. Shrum*,
   2023 WL 2905577 (W.D. Okla.) ................................................ 13

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ............................................................ 4, 8, 12

*UAW v. Brock*,
   477 U.S. 274 (1986) ....................................................................5

*UFCW v. Brown Grp.*,
   517 U.S. 544 (1996) ....................................................................7

*Waskul v. Washtenaw Cnty. Cmty. Mental Health*,
   900 F.3d 250 (6th Cir. 2018) ..................................................... 14

**Rules**

Fed. R. App. P. 35 ...................................................................................5

Fed. R. Civ. P. 5.2 ...................................................................................6

Fed. R. Civ. P. 10 .............................................................................10, 11

## RULE 35 STATEMENT

A divided panel just decimated a procedural protection used by the NAACP, the ACLU, Students for Fair Admissions, and associations of all stripes. By a 2-1 vote, the panel held that an association can lose Article III standing if it refers to its members with pseudonyms. That holding splits, at least, with the Tenth and D.C. Circuits. *Speech First v. Shrum*, 92 F.4th 947, 949 (10th Cir. 2024); *Advocs. for Highway & Auto Safety v. FMCSA*, 41 F.4th 586, 592-94 (D.C. Cir. 2022). It leaves this Court's precedent an impenetrable mess. *Bldg. & Constr. Trades Council v. Downtown Dev.*, 448 F.3d 138, 144-45 (2d Cir. 2006); *Fair Hous. in Huntington Comm. v. Town of Huntington*, 316 F.3d 357, 361-62 (2d Cir. 2003). It misreads Supreme Court cases that didn't involve pseudonyms and contradicts high-profile cases that allowed anonymity. *E.g.*, *SFFA v. Harvard*, 600 U.S. 181 (2023). And, as Judge Wesley explained, it "will constrict access to the courts." Concur.11. "Regardless of what organizations one joins or what causes one believes in, that is a troubling result." Concur.12.

Unless the panel undoes this troubling decision, the full Court should grant rehearing on the following question:

> Did Do No Harm, a membership association seeking a preliminary injunction against Pfizer's allegedly race-based fellowship, lose associational standing because it referred to its members with pseudonyms?

# BACKGROUND

This case started as a challenge to a fellowship that discriminates against whites and Asians. It ended as a broadside against all associations who represent vulnerable or unpopular members.

Pfizer runs a prestigious program called the Breakthrough Fellowship. College juniors can apply. JA11. If accepted, they intern at Pfizer the summer before their senior year, temporarily work at Pfizer after graduation, get a master's degree on Pfizer's dime, intern for Pfizer during graduate school, and then work at Pfizer long-term. JA12.

But the fellowship is not equally open to all races. To be eligible, applicants must "[m]eet the program's goals of increasing the pipeline for Black/African American, Latino/Hispanic, and Native Americans." JA13. Per the district court, Pfizer never explained how those goals could be met by "candidates who are not" one of those three races. JA111. On an FAQs page, Pfizer acknowledged that people who are "not from a minority group identified for the Breakthrough Fellowship" are "not eligible." JA51.[1]

Do No Harm sued Pfizer for racial discrimination in 2022. JA2. DNH is a membership association that opposes divisive ideologies in medicine, including racial preferences. JA34. It sued Pfizer on behalf of two members who were ready and able to

---

[1] At oral argument, Pfizer claimed that it had changed the fellowship's website after DNH noticed its appeal, and that those changes mooted the case. But Pfizer never made that argument in its brief and introduced no evidence that the fellowship is now race neutral. The panel did not credit this belated mootness argument or these supposed changes.

apply to the fellowship in 2023, but who were white and Asian. JA9. Because these students feared retaliation for their participation in this case, DNH referred to them with the pseudonyms "Member A" and "Member B." JA37, 40.

Through a verified complaint, declaration from its director, and anonymous declarations from the members, DNH explained why Pfizer's race-based fellowship harmed these two members. Members A-B satisfied all the fellowship's nonracial requirements and would complete all necessary steps. JA34-41. They wanted to apply because the fellowship is prestigious, involves a well-known company in an attractive city, provides great mentorship, and pays for graduate school. JA36; JA39. Members A-B were "able and ready" to apply for the fellowship's 2023 class, once a court ordered Pfizer to stop discriminating. JA37; JA40.

Because the fellowship's application deadline was about to close, DNH immediately moved for a preliminary injunction. JA2. Pfizer opposed but never moved to dismiss the complaint. Its obligation to respond to the complaint was stayed until after all preliminary-injunction proceedings ended. D.Ct.Doc.27.

Yet the district court not only denied the preliminary injunction, but also dismissed the whole case. JA132-33. It ruled that DNH lacked Article III standing because it referred to Members A-B with pseudonyms, JA109; that DNH failed to prove Members A-B were ready and able to apply, JA113-15; and that DNH lacked "claim-specific standing" for various reasons, JA115-32. DNH appealed, challenging only the sua sponte dismissal of its complaint. CA2.Doc.40 at 13.

A panel of this Court affirmed. By a 2-1 vote, the panel agreed with the district court on pseudonymity, including its power to dismiss the whole case instead of simply denying a preliminary injunction. Op.4. The panel faulted DNH for not volunteering the real names of Members A-B "to the court, even *in camera*." Op.8 n.3. That deprived DNH of standing because, although no precedent "squarely address[es]" the issue, the Supreme Court stressed the importance of "naming" members in *Summers v. Earth Island Institute*, 555 U.S. 488 (2009). Op.19-21. A naming requirement also "makes sense" because it proves the members' "sincerity"—that they are "genuinely ready and able to apply, and are not merely enabling the organization to lodge a hypothetical legal challenge." Op.21. The panel also deemed it "incongruous" to let an association's members use pseudonyms when individual plaintiffs usually can't. Op.23.

Judge Wesley concurred, "part[ing] ways" with the majority's "unfounded 'real name' test for associational standing." Concur.1-2. That ruling overreads *Summers* and "its predecessor, *FW/PBS, Inc. v. Dallas*, 493 U.S. 215 (1990)." Concur.4-5. It is inconsistent with the "practice" of "regularly allow[ing] organizations to sue on behalf of unnamed members." Concur.5-6. It splits with "other" circuits. Concur.5-6. And it lacks internal logic. Concur.7-11. This new rule, Judge Wesley lamented, is "unfortunate … for organizations everywhere." Concur.2.[2]

---

[2] Judge Wesley would have held that DNH lacked standing for another reason: that it hadn't shown Members A-B were "ready" to apply to Pfizer's fellowship. Concur.12-18. The other two panel members did not agree. Op.27 & n.8.

**REASONS FOR GRANTING THE PETITION**

Rehearing is needed when a panel opinion threatens the "uniformity of the court's decisions" or raises a "question of exceptional importance." Fed. R. App. P. 35(a). The opinion here does both. It reads Article III to ban associations from referring to members with pseudonyms, misreading "decision[s] of the Supreme Court" that don't involve pseudonyms and dismissing ones that do. Fed. R. App. P. 35(b)(1)(A). This new ban on anonymity directly "conflicts with the authoritative decisions of other" circuits, and the panel's attempts to explain otherwise create still more intercircuit and intracircuit conflicts. Fed. R. App. P. 35(b)(1)(A)-(B). This rule will have devastating consequences for associations, whose litigation is "advantageous both to the individuals represented and to the judicial system as a whole"—especially in cases where quick relief is needed to protect unpopular or vulnerable members. *UAW v. Brock*, 477 U.S. 274, 289 (1986).

### I. The panel majority is wrong: An association does not lose standing whenever it refers to its members with pseudonyms.

Associational standing requires identifying a member who would have standing on her own, but associations often satisfy this requirement without divulging that member's real name. The NAACP kept its members—undocumented immigrants—"anonymous" when it challenged the repeal of DACA. *NAACP v. Trump*, 298 F. Supp. 3d 209, 225 & n.10 (D.D.C.), *aff'd*, 140 S.Ct. 1891 (2020). Both labor unions and the Chamber of Commerce keep their members anonymous when they sue federal regulators on behalf of regulated entities. *Highway Advocs.*, 41 F.4th at 592-94; *Chamber of Com. v. CFPB*,

2023 WL 5835951, at *6 (E.D. Tex.). Associations who represent the parents of minors—whose identities *must* be anonymized under the Federal Rules—also protect their members' identities. *E.g.*, *PDE v. Olentangy*, 2023 WL 4848509, at *6 n.2 (S.D. Ohio); *see* Fed. R. Civ. P. 5.2(a)(3). As do associations who represent students, like Students for Fair Admissions. *E.g.*, *SFFA v. West Point*, 2024 WL 36026, at *8 (S.D.N.Y.). The ACLU, too, invokes associational standing "without identifying members by name." ACLU-Amicus-Br.1, No. 23-6054 (10th Cir. May 30, 2023) (citing, among other examples, *Make the Rd. N.Y. v. McAleenan*, 405 F. Supp. 3d 1, 32-33 & n.17 (D.D.C. 2019)).

These associations didn't all lack standing. In each case, objections to the members' anonymity were raised but overruled. Each court found standing, even though the members' identities had not been disclosed (even to the court). The panel mostly ignored these cases. Of the few it discussed, it dismissed them because the defendant stopped pressing the argument or the court didn't explicitly address it. Op.25-26. But the fact that courts, litigants, and lawyers didn't press a supposed jurisdictional defect—in some of the most high-profile cases in recent times—should not have been reassuring. It should have been a warning sign that the panel was careening toward error.

Pseudonymity, as the Fourth Circuit has explained, has "nothing to do with the district court's jurisdiction." *B.R. v. F.C.S.B.*, 17 F.4th 485, 496 (4th Cir. 2021). The omission of someone's real name "in no way detracts" from "the components of what constitutes an Article III case or controversy." *Id.* at 494. Whether that person's standing allegations are true or false turns on their truth or falsity—not on her first and last

name. *Id.* at 493-95. "[A]nonymity is no barrier to standing" in the typical case because "naming members adds no essential information." *Highway Advocs.*, 41 F.4th at 594 (cleaned up); *accord Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015). Per a three-judge district court (two of whom are now circuit judges), an association's "refus[al] to disclose the names of individual members" is "not evidence that the [association] *lacks* the alleged members—[it] merely suggest[s] the [association] has reservations about revealing those member names." *S.C. Conf. of NAACP v. Alexander*, 2022 WL 453533, at *3 (D.S.C.).

"Indeed, there is longstanding Supreme Court authority supporting standing for organizations whose injured members are not named." *Shrum*, 92 F.4th at 950. The doctrine of associational standing has its "roots" in *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958), which held that members of associations have a constitutional right to privacy. *UFCW v. Brown Grp.*, 517 U.S. 544, 551 (1996). "[T]o hold that Article III requires an organization to name … its members" thus "would be in tension with one of the fundamental purposes of the organizational standing doctrine—namely, protecting individuals who might prefer to remain anonymous." *New York v. Dep't of Com.*, 351 F. Supp. 3d 502, 606 n.48 (S.D.N.Y.), *aff'd on standing*, 139 S.Ct. 2551 (2019).

Yet the panel disagreed. It announced a "naming requirement" as an "element of associational standing" for three main reasons. Op.21. None holds up.

**1.** The panel's ban on pseudonyms is not rooted in "Supreme Court precedent." Op.21. The panel cited *FW/PBS* and *Summers*. Neither case involved an association that used pseudonyms. *FW/PBS* didn't even involve an association.

The plaintiffs in *FW/PBS* lacked standing not because they were anonymous (they weren't), but because they failed to prove that any plaintiff was covered by the law. Those businesses and individuals challenged a law that denied licenses to recent convicts. The only evidence they were covered was an affidavit saying the law had been used to revoke two licenses, but that affidavit "fail[ed] to identify" those licensees. 493 U.S. at 235. So the Court couldn't determine whether those revocations involved "any [plaintiff] before this Court." *Id.* The Court was discussing whether any party was injured, not whether an injured party used the right name. *See* Concur.5.

*Summers* is similar. The associations there lacked standing not because they referred to members with pseudonyms (they didn't), but because they couldn't identify a member who had standing. Those associations asserted that, because they had so many members, there was a "statistical probability" at least one had standing. 555 U.S. at 497. The Court rejected this theory of "probabilistic standing," explaining that associations must "identify" or "name" a specific member with standing. *Id.* at 498-99. The panel here acknowledged that *Summers* addressed whether associations must identify a "specific" member, not whether associations who identify a specific member must also give his real name. Op.19. But *Summers* uses the words "naming" and "name," the panel reasoned, and "we assume the Supreme Court said what it meant and meant what it

said." Op.21. The Court, however, has repeatedly warned courts *not* to read its opinions that way. An opinion is not "'a statute'"; courts should not latch onto "stray comments and stretch them beyond their context" to resolve points the decision "had no reason to pass on." *Brown v. Davenport*, 596 U.S. 118, 141 (2022).

**2.** The panel's ban on pseudonyms does not "mak[e] sense" either. Op.21. The panel asserted that, unless a member is willing to use his real name, his standing allegations are not "genuin[e]" or "sincer[e]." Op.21-22 (citing *Carney v. Adams*, 592 U.S. 53, 64 (2020)). Remarkably, the panel thinks every member who withholds his true name is *lying*. The panel had no power to decide, as a matter of law, the credibility or intentions of every pseudonymous member of every association. *Cf. Carney*, 592 U.S. at 63 (standing is "highly fact-specific"). Surely the panel doesn't think the anonymous DACA recipients were lying when they said they were injured by DACA's repeal, *cf. Trump*, 298 F. Supp. 3d at 225, or that the anonymous Asians who applied to Harvard were lying when they said they would apply again, *cf. Harvard*, 600 U.S. at 201. Yet its reasoning "sweep[s]" that "broadly." Concur.9.

The panel's attempt to infer insincerity from anonymity doesn't work. The opposite inference could be drawn just as easily. A pseudonymous member is *more* sincere, since she is uninterested in the notoriety she would get from revealing her participation to supporters. (The insincere plaintiff in *Carney*, after all, used his real name.) Here especially, *only* a pseudonymous member could be sincere about wanting to apply to Pfizer's fellowship: Someone who's truly interested wouldn't want Pfizer to know who

she was, since she wants to apply to the fellowship after winning the lawsuit and wouldn't want Pfizer to use her participation against her.[3]

In truth, the only inference that can be drawn from pseudonymity is that the association "has reservations about revealing" members' real names. *S.C. NAACP*, 2022 WL 453533, at *3. Withholding their names does not disprove standing any more than revealing their names proves it. If the court knew that Member A's name was "Jane Smith," for example, that fact would tell it absolutely nothing about her standing. The truth of her allegations would remain a question for "discovery"—"one that can and should be handled using the ordinary mechanisms for resolving such disputes," not by crude proxies dressed up as Article III standing. *Id.*

**3.** Nor is it "incongruous" to let associations refer to members with pseudonyms, even if those members would have to use their real names in individual litigation. Op.23. Whether individual plaintiffs can use pseudonyms is governed by Rule 10(a), which requires complaints to "name all the parties." This Rule promotes the "'presumption of openness in judicial proceedings,'" *B.R.*, 17 F.4th at 496, so courts applying it use a "balancing test" that asks whether "the plaintiff's interest in anonymity" outweighs "the public interest in disclosure and any prejudice to the defendant," *Sealed Plaintiff v. Sealed*

---

[3] That applicants must "disclose their *name*" to Pfizer when they apply, Op.22, is irrelevant. Members A-B obviously would put their names on their applications. JA14-15. Disclosing their names *in this litigation* is different: It would tell Pfizer, their colleges, and the world that they joined Do No Harm, oppose racial preferences, and helped sue Pfizer. JA37, 40.

*Defendant*, 537 F.3d 185, 189 (2d Cir. 2008). But when an association sues on behalf of pseudonymous members, Rule 10(a) is satisfied. Standing members are not parties. *PDE*, 2023 WL 4848509, at *6 n.2. The association is, but its name appears in the complaint, *id.*, and it's the one "whose name would be on a judgment," Op.24 n.6.

Even if applying Rule 10(a) by its terms were incongruous, the panel's solution does not make things congruous. Individual plaintiffs who fail Rule 10(a)'s balancing test do not *lack standing*; they violate Rule 10(a). *See* Concur.11 n.2; *B.R.*, 17 F.4th at 496; *EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 109 (E.D.N.Y. 2003). If the panel wanted to treat individual plaintiffs and standing members alike, it wouldn't pretend that pseudonyms deprive an association of Article III standing; it would make associations satisfy that same balancing test, proving their members' privacy interests outweigh the countervailing interests in disclosure.

The law *already* imposes this congruity. Here, for example, DNH would likely produce its members' names in discovery, under a protective order that limited disclosure to Pfizer's attorneys. If those names later needed to go in a court filing, the parties would move to file them under seal. In deciding a motion to un/seal the names, the district court would apply a balancing test that considers the same factors as Rule 10(a). *E.g.*, *SFFA v. Harvard*, 2023 WL 3126414, at *6 n.4 (D. Mass.). But the court would be weighing the members' interest in privacy over the public's interest in disclosure, not conducting a standardless screen for Article III standing.

**II.    The panel's opinion splits with at least two circuits and creates an irreconcilable line of intracircuit precedent.**

Until now, no circuit had held that an association lacks standing simply because it referred to its members with pseudonyms. The panel said it was following the First Circuit's decision in *Draper v. Healy*, the "only sister circuit to squarely address the question." Op.24. Far from "squarely" addressing it, *Draper* didn't even involve an association that referred to its members with pseudonyms. That association failed to "identify *any* member" who was harmed, submitting only an affidavit that broadly said "many of its members" had asked it to sue. 827 F.3d 1, 3 (1st Cir. 2016) (emphasis added). As the Tenth Circuit put it, *Draper* is "easily distinguishable" from cases, like this one, where the association identifies a specific member with standing but uses a pseudonym. *Shrum*, 92 F.4th at 951.

At least two circuits have rejected the panel's rule—meaning this Court now sits alone at the bottom of a circuit split. The D.C. Circuit allowed an association to prove standing with a survey that quoted specific members but did not reveal their names (even to the court). *Highway Advocs.*, 41 F.4th at 594. Distinguishing *Summers*, the court held that "anonymity is no barrier to standing" when associations identify specific members and explain why they're harmed. *Id.* The Tenth Circuit, just one month before the panel's opinion, likewise held that "organizational standing is proper even when the qualifying member … is anonymous." *Shrum*, 92 F.4th at 951. In direct contradiction to the panel, the Tenth Circuit held that *Summers* "clearly" does not require "legal names."

*Id.* at 949. *Summers* requires specificity, but "[t]hat need can be satisfied by identifying the injured member as 'Member 1' just as well as by the name 'Samuel Clemens.'" *Id.* at 952.

These cases cannot be distinguished away based on their procedural posture. *Highway Advocates* was decided under the "summary judgment" standard, 41 F.4th at 592—the same standard the panel applied here, Op10. And *Shrum* followed the exact same procedural sequence as this case: The association filed a complaint and simultaneously moved for a preliminary injunction, and the district court dismissed the complaint. *See* 2023 WL 2905577, at *1 (W.D. Okla.). Under the panel's logic, the association in *Shrum* "subjected itself to [a] heightened burden of demonstrating standing" "[w]hen [it] moved for a preliminary injunction." Op.32. If *Shrum* is a case about "the pleading stage," Op.25 n.7, then so is this case.

The panel's attempt to distinguish cases decided at the pleading stage creates more conflicts. The panel acknowledged this Court's precedent in *Building & Construction*, which holds that an association need not "'name names'" in its complaint. 448 F.3d at 145. But the burden of proving standing is higher when an association moves for a preliminary injunction, the panel reasoned, and an association's failure to satisfy that higher burden requires not only denying the preliminary injunction, but also dismissing the case. Op.27-33. That latter holding, the panel acknowledged, splits with the D.C. Circuit's decision in *Food & Water Watch v. Vilsack*, 808 F.3d 905 (D.C. Cir. 2015). It also splits with the Fifth and Sixth Circuits. *See Waskul v. Washtenaw Cnty. Cmty. Mental*

*Health*, 900 F.3d 250, 256 & n.4 (6th Cir. 2018); *Speech First v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020).

And it's now unclear what the law is in *this* circuit. Associations need not disclose their members' real names at the pleading stage under *Building & Construction*, but they now must disclose them when they move for a preliminary injunction. But circuit precedent also holds that, when a plaintiff moves for a preliminary injunction before discovery is complete, the case effectively *is* at the pleading stage. *Huntington*, 316 F.3d at 361-62. Under *Huntington*, "[t]he appropriate standard" to assess standing in this posture "is more analogous to that applied to a motion to dismiss." *Id.* at 362; *accord Speech First v. Cartwright*, 32 F.4th 1110, 1119 (11th Cir. 2022). That principle matches *Building & Construction*, which suggested that associations might need to name names "at the summary judgment stage" because "[d]iscovery … would … be substantially complete." 448 F.3d at 145. The panel never discusses *Huntington* or tries to reconcile these divergent cases. Absent rehearing, district courts won't know what rule to follow, and associations seeking preliminary injunctions risk a procedural misstep that could get their whole case dismissed.

## III.    The panel's opinion will deter associations from representing vulnerable members in court.

The panel's ban on pseudonyms is "troubling." Concur.12. Because standing is jurisdictional, an association can *never* withhold its members' identities, no matter how strong their claim to anonymity. Not immigrants here illegally. Not gay soldiers during

Don't Ask Don't Tell. Not black NAACP members in the Jim Crow South. No one. That rule will devastate a cross-ideological array of associations. As the ACLU put it in *Shrum*, that rule risks "significant practical effects," foreclosing "many" lawsuits that "challeng[e] government action" or that protect "individuals who hold unpopular views or associations" or "who must allege that they intend to violate an unjust law in order to challenge it." ACLU-Amicus-Br.13.

That members' names might be disclosed only to the district court "*in camera*" is not reassuring. Op.8 n.3. Courts might refuse, or they might use that procedure but later decide the names should be released. Defendants can also object to *in camera* review. If names are "relevant to standing," Op.21, defendants will say they need them. (And if disclosure tests "sincerity," Op.22, a member's willingness to give his name to one judge in complete secrecy doesn't prove much.) The public can move to unseal the names. Especially in fast-moving cases, where protective orders are hastily drafted (or not yet in place) and objections must be resolved rapidly, vulnerable members will decide the risk of leaks, mistakes, and other disclosures is too high. The resulting chilling effect will "constrict access to the courts." Concur.11.

## CONCLUSION

The panel's opinion should be withdrawn, or this appeal should be reheard en banc.

Dated: March 20, 2024

Respectfully submitted,

*/s/ Cameron T. Norris*
Thomas R. McCarthy
Cameron T. Norris
Frank H. Chang
C'Zar Bernstein
Consovoy McCarthy PLLC
1600 Wilson Boulevard, Ste. 700
Arlington, VA 22201
(703) 243-9423
cam@consovoymccarthy.com

*Counsel for Do No Harm*

## CERTIFICATE OF COMPLIANCE

This petition complies with Rule 35(b)(2)(A) because it contains 3,867 words, excluding the parts that can be excluded. This petition also complies with Rule 32(a)(5)-(6) because it is prepared in a proportionally spaced face using Microsoft Word 2016 in 14-point Garamond font.

Dated: March 20, 2024 */s/ Cameron T. Norris*

## CERTIFICATE OF SERVICE

I filed this petition on the Court's electronic filing system, which will email everyone requiring notice.

Dated: March 20, 2024 */s/ Cameron T. Norris*