# 23-15

## In the United States Court of Appeals for the Second Circuit

DO NO HARM,
PLAINTIFF-APPELLANT,

*v.*

PFIZER, INC.,
DEFENDANT-APPELLEE

*ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK (CIV. NO. 22-7908)
(THE HONORABLE JENNIFER L. ROCHON, J.)*

### OPPOSITION OF APPELLEE TO
### PETITION FOR PANEL REHEARING AND REHEARING EN BANC

SAMANTHA L. CHAIFETZ
DLA PIPER LLC
*500 Eighth Street, N.W.
Washington, DC 20004*

JEANNIE S. RHEE
MARTHA L. GOODMAN
MATTEO GODI
PAUL, WEISS, RIFKIND,
    WHARTON & GARRISON LLP
*2001 K Street, N.W.
Washington, DC 20006
(202) 223-7300
jrhee@paulweiss.com*

LORETTA E. LYNCH
LIZA M. VELAZQUEZ
PAUL, WEISS, RIFKIND,
    WHARTON & GARRISON LLP
*1285 Avenue of the Americas
New York, NY 10019*

**CORPORATE DISCLOSURE STATEMENT**

Appellee Pfizer, Inc., is a publicly held company; it has no parent corporation, and no publicly held company owns 10% or more of its stock.

**TABLE OF CONTENTS**

Page

Introduction ........................................................................................................1

Statement of the case ........................................................................................2

Argument ............................................................................................................5

A.    The panel's decision does not warrant further review...........................5

B.    The panel's decision is correct ................................................................13

Conclusion........................................................................................................17

**TABLE OF AUTHORITIES**

**CASES**

*Advocates for Highway & Auto Safety* v. *F.M.C.S.A.*,
    41 F.4th 586 (D.C. Cir. 2022) ................................................................9

*American Alliance for Equal Rights* v.
    *Fearless Fund Management, LLC*,
    103 F.4th 765 (11th Cir. 2024) ......................................................11, 12

*Building & Construction Trades Council of Buffalo, New York
    & Vicinity* v. *Downtown Development, Inc.*,
    448 F.3d 138 (2d Cir. 2006) ................................................................12

*Cacchillo* v. *Insmed, Inc.*, 638 F.3d 401 (2d Cir. 2011)..................................9, 11

*Carney* v. *Adams*, 592 U.S. 53 (2020) ..............................................................16

*American Alliance for Equal Rights* v. *Fearless Fund
    Management, LLC*, Civ. No. 1:23-3424,
    2023 WL 6295121 (N.D. Ga. Sept. 27, 2023) ....................................11

*Clapper* v. *Amnesty International USA*, 568 U.S. 398 (2013) ........................14

*New York* v. *D.H.S.*, 969 F.3d 42 (2d Cir. 2020) ............................................11

Cases—continued:

*Draper* v. *Healey*, 827 F.3d 1 (1st Cir. 2016) ........................................9

*Fair Housing in Huntington Committee* v. *Town of Huntington,*
    316 F.3d 357 (2d. Cir. 2003) ...........................................8

*FW/PBS, Inc.* v. *Dallas*, 493 U.S. 215 (1990)............................6, 15

*Lewis* v. *Casey*, 518 U.S. 343 (1996)......................................14

*Lujan* v. *Defenders of Wildlife*, 504 U.S. 555 (1992)......................8

*Murthy* v. *Missouri*, No. 23-411 (June 26, 2024) .........................7, 11

*Speech First* v. *Cartwright*, 32 F.4th 1110 (11th Cir. 2022) ...............12

*Speech First* v. *Shrum*, 92 F.4th 947 (10th Cir. 2024) .................10, 13

*Summers* v. *Earth Island Institute*, 555 U.S. 488 (2009) ..............6, 15

## RULES

Fed. R. App. P.  28(j) ........................................................7

Fed. R. App. P. 35(b)(1)......................................................1

Fed. R. App. P. 35(b)(1)(A) ..................................................6

Fed. R. App. P. 35(b)(1)(B) ..................................................6

Fed. R. Civ. P. 10(a)........................................................15

## INTRODUCTION

In 2022, Do No Harm (DNH) chose to demonstrate standing to obtain a preliminary injunction against Pfizer's Breakthrough Fellowship through sparse declarations of two unnamed members who claimed to be "ready and able" to apply in 2023, but "categorically excluded" from doing so because of their race. After Pfizer made expressly clear that no one was categorically excluded based on race, DNH filed supplemental declarations—not to demonstrate that its members applied in 2023 or took any concrete preparatory step to do so, but to allege that a third unnamed member was "ready and able" to apply in 2024. The same repeated for the 2025 cycle, the Fellowship's last. Besides those nearly identical declarations, DNH even declined to reveal the name of any member to the court. Because, under longstanding precedent, DNH failed to demonstrate that any of its members are genuinely ready and able to apply, and thus entitled to preliminary injunctive relief, the district court did not err in dismissing without prejudice. The panel correctly affirmed.

That narrow ruling meets none of the Court's requirements for en banc review. *See* Fed. R. App. P. 35(b)(1). Dismissal without prejudice—the result under both the majority's and the concurrence's grounds for affirmance—is the correct result, and a reflection of the manner in which DNH chose to litigate its case. The rehearing petition should be denied.

## STATEMENT OF THE CASE

1.    In response to documented challenges in recruiting and retaining diverse talent, J.A. 78-81, Pfizer developed a program known as the Breakthrough Fellowship, J.A. 82-83. The program selects approximately 20 participants annually over a five-year period, with the final selection occurring in 2025. J.A. 82. Applicants must, among other things, be enrolled in a full-time undergraduate program and graduating the following year; have a GPA of 3.0 or higher; intend to pursue certain graduate degrees; and demonstrate exceptional leadership skills and a commitment to further Pfizer's pipeline for Black/African American, Latino/Hispanic, and Native American personnel. *See* Dkt. 114 at 1-2 & n.1.

2.    Do No Harm (DNH), a newly formed association of "physicians, healthcare professionals, medical students, patients, and policymakers," filed this lawsuit in September 2022, alleging that the Fellowship was "racially exclusionary." J.A. 8-9. DNH also moved for a preliminary injunction, requesting a decision before the 2023 application cycle. J.A. 2.

Despite precedent requiring plaintiffs seeking a preliminary injunction to identify evidence demonstrating standing, DNH supported its request with anonymous, unsworn declarations from "Member A" and "Member B," who claimed they "would like to apply" in 2023. J.A. 2. Their declarations were nearly identical, advancing high-level, generalized statements that—but for

their race—each could "meet all the [Fellowship's] eligibility requirements." J.A. 36-41; *see* J.A. 113-114 (highlighting dearth of information in the "perfunctory two-page" declarations); Concur. 1-2, 18.

The district court requested that DNH identify Members A and B by name or otherwise address that issue in briefing the preliminary injunction motion. J.A. 97. DNH refused to assuage the court's concerns, declining to disclose "the names . . . to the court, even *in camera*." Op. 8 & n.3.

In December 2022, the district court denied DNH's motion for lack of standing, dismissing the case without prejudice. J.A. 134. The court recognized that, because DNH sought a preliminary injunction, it was required to demonstrate standing with evidence "no less than that required on a motion for summary judgment." J.A. 100 (quoting *Cacchillo* v. *Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011)). The court found that DNH lacked standing for multiple independent reasons, including DNH's failure to identify by name any member with standing. J.A.109. The court further explained that, "[e]ven if [DNH] had identified Members A and B by name, the pleadings and evidence provided by [DNH] do not establish its members have suffered injury in fact," including because the "sparse declarations" failed to establish any "committed interest" and "concrete intent to apply." J.A. 109-115.

3.      DNH appealed.  Soon after, Pfizer welcomed applications for 2023 and made expressly clear that individuals "are eligible to apply . . . regardless of whether [they] are of Black/African American, Latino/Hispanic, or Native American descent."  Dkt. 114 at 1-2 & n.1.  Neither Member A nor Member B claimed to have applied.  Instead, following the close of the 2023 application period, DNH requested leave to supplement the record with a declaration from "Member C," who claimed to be "able and ready to apply to the 2024 class" but did "not trust" Pfizer's statements that eligibility is not race-dependent.  Dkt. 38-2, ¶¶ 11, 13.

In March 2024, this Court affirmed the dismissal without prejudice.  The panel unanimously agreed that, under this Court's longstanding precedent, once DNH moved for a preliminary injunction, it could not rest on its pleadings but was required to identify evidence of standing no less than that required at summary judgment.  Op. 17-18; Concur. 1, 3.  The panel also unanimously agreed that, because DNH failed to meet that burden, the district court properly denied the request for extraordinary relief and dismissed the case for lack of jurisdiction.  Op. 33; Concur. 1-2.  Because Member C's declaration exhibited the same shortcomings as prior declarations, DNH's request to supplement was denied.  Op. 33 n.10.

The panel majority concluded that, to obtain a preliminary injunction, DNH needed to "name at least one injured member" to the court.  Op. 26.  The

majority found this approach "best aligns" with Supreme Court precedent and "makes sense," because it demonstrates that "identified members are genuinely ready and able to apply, and are not merely enabling the organization to lodge a hypothetical legal challenge." *Id.* at 19, 21. As the majority concluded, there are procedures for parties to shield names from the public, but—as would be required of individuals suing on their own behalf—associations must disclose names of specific injured members *to the court*. Op. 22-23.

Judge Wesley concurred. He reasoned that DNH failed to establish standing because the affidavits lacked "sufficient evidence to show they were 'ready' to apply to the Fellowship," and that alone "suffices to end this case." Concur. 1-2.

4. DNH petitioned for panel rehearing or rehearing en banc. By then, the 2024 application period had ended. Dkt. 118 at 1-2 & n.1. DNH did not assert that Member C had applied, but instead requested leave to file declarations by Members D and E, asserting readiness and ability to apply for the 2025 Fellowship. Dkt. 132-1. On April 9, this Court denied the motion. Dkt. 186. The Court ordered a response to the petition. Dkt. 189.

## ARGUMENT

### A.    The Panel's Decision Does Not Warrant Further Review

DNH asks the Court to take the extraordinary step of rehearing this case en banc. But this is not a case in which the panel's ruling conflicts with a

decision of the Supreme Court or this Court. Fed. R. App. P. 35(b)(1)(A). Nor does the petition present "a question of exceptional importance." Fed. R. App. P. 35(b)(1)(B). Rather, the panel's ruling is consistent with circuit precedent and reflects DNH's decision to request preliminary injunctive relief without naming to the court any member with standing. The concern shared by the district court and all three members of the panel—that DNH failed to demonstrate the requisite "sincerity of the members' interest in applying for the fellowship," Op. 21-22—was borne out by the fact that DNH has never claimed that any member applied to the Fellowship (or undertook any "preparatory steps, big or small, to signal a concrete readiness to apply"), not even after Pfizer made expressly clear that no one was categorically excluded based on race. *See* Concur. 18; J.A. 110. The petition for rehearing should be denied.

1. As to the first basis for en banc review, the panel decision does not conflict with Supreme Court authority. The petition cites *Summers* v. *Earth Island Institute*, 555 U.S. 488 (2009), and *FW/PBS, Inc.* v. *Dallas*, 493 U.S. 215 (1990), which "do[] not squarely address the specific issue" of whether, under the summary judgment standard, members of an association "must be identified *by name*," Op. 19, but recognize "the necessity of identifying members" with some "specificity," Op. 21. The majority correctly held that, here, "disclosure *to the court* of harmed members' real names is relevant to standing

because it shows that identified members are genuinely ready and able to apply." *Id.* (emphasis added).  The concurrence reasoned that no "member provided sufficient evidence to show they were 'ready' to apply."  Concur. 1-2.  Both conclusions are consistent with Supreme Court precedent; both are correct; and each is sufficient, by itself, to demonstrate that DNH lacks associational standing.

The recent decision in *Murthy* v. *Missouri*, No. 23-411 (June 26, 2024), confirms that precedent.  The Court carefully examined an extensive factual record to determine whether the plaintiffs "demonstrate[d] a substantial risk that, in the near future, they will suffer an injury that is traceable to a  .  .  . defendant and redressable by the [preliminary] injunction they seek."  Slip Op. 1 (Dkt. 205-2).  The Court asked whether plaintiffs "demonstrated" traceability, and faulted them for "fail[ing] to demonstrate likely future injury."  *Id.* at 11, 23.  As at summary judgment, plaintiffs could not carry their burden without providing the requisite evidentiary support for standing.  *Id.* at 1, 10.[1]

There is also no conflict among this Court's decisions.  DNH argues this Court's precedent is "unclear" because "[a]ssociations need not disclose their

---

[1] DNH's Rule 28(j) letter claims that *Murthy* would have precluded dismissal here because, there, the Court reversed and remanded for "proceedings consistent with th[e] opinion."  Dkt. 205 (quoting Slip Op. 28-29).  That entirely commonplace decretal language in no way forecloses dismissal on remand.

members' real names at the pleading stage . . . , but they now must disclose them when they move for a preliminary injunction." Pet. 14. There is nothing "unclear" about the fact that standing must be supported "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 561 (1992). And the petition does not challenge this Court's precedent establishing that, upon seeking a preliminary injunction, DNH could not rest on its pleadings but needed to offer evidence as it would at summary judgment. *See* Concur. 1 (citing *Cacchillo*, 638 F.3d at 404); *see also* Op. 17. Indeed, *Murthy* confirmed as much.

DNH is not aided by its citation to *Fair Housing in Huntington Committee* v. *Town of Huntington*, 316 F.3d 357 (2d. Cir. 2003). There, the issue was whether both individual plaintiffs and an association had statutory standing "to assert an interest in living in an 'integrated community'" under the Fair Housing Act. *Id.* at 361. On a preliminary injunction motion, the district court assumed—"given the fact-specific inquiry involved"—that the Town of Huntington constituted a "community" under the Act and that the individual plaintiffs had statutory standing. *Id.* at 363. On appeal from denial of the injunction, this Court found "no error in the trial court's decision" given the fact-specific nature of defining the boundaries of a "community," and only for

that reason applied a "standard . . . more analogous to that applied to a motion to dismiss" when it "assume[d] the truth of the facts alleged in plaintiffs' complaint, as well as those supplemented in plaintiffs' affidavits." *Id.* at 362.

That holding has no bearing on DNH's case and does not conflict with the panel's decision. *First*, the panel did not reject those facts specifically proffered in the declarations, but rather affirmed the district court's conclusion that those facts were insufficient as a matter of law to establish standing under the summary judgment standard. *See Cacchillo*, 638 F.3d at 404 (taking "specific facts" proffered "to be true"). *Second*, DNH's standing does not depend on facts to be developed during the litigation: DNH always possessed that information (including names) necessary to demonstrate that its members are "ready and able" to apply, and it was DNH's choice not to disclose it to the court. Op. 8 & n.3; *cf. Draper* v. *Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (Souter, J.) (discovery not needed "to identify which of its own members may have been injured").

2.    As to the second basis for en banc review, there is no conflict between this Court's decision and decisions of other circuits warranting en banc review. DNH argues that "at least two circuits have rejected the panel's rule." Pet. 12. In a subsequent letter, DNH raised a third decision post-dating the panel's ruling. Dkt. 200. None of those decisions creates any conflict warranting further review.

*First*, DNH points to *Advocates for Highway & Auto Safety* v. *F.M.C.S.A.*, 41 F.4th 586 (D.C. Cir. 2022), where a union representing truck drivers sought direct review of a final agency rule affecting its members. *Id.* at 588. The administrative record included extensive evidence of injury to union members, including survey results that, though anonymized, featured "direct quotations" from individual members detailing ways in which they were injured "in their own right." *Id.* at 594. Applying the summary judgment standard to the extensive evidence in the administrative record before it, the D.C. Circuit rejected the argument that the union lacked standing because its members were not identified by name with an affidavit. The court reasoned that "the lack of an affidavit [was] not fatal . . . because a petitioner may also support standing with evidence in the administrative record," and "on this record" the "anonymity" of the survey of union members was "no barrier." *Id.* at 593-594. That analysis was specific to instances in which standing is "apparent from the administrative record." *Id.* at 594. Here, there was no factual record from which a court could evaluate Article III standing other than members' "sparse declarations." J.A. 114. The district court, the panel's majority, and the concurrence did not err in concluding that those declarations did not sufficiently identify a member who is genuinely ready and able to apply.

*Second*, as the panel majority explained, *see* Op. 24-25 n.7, the Tenth Circuit's decision in *Speech First* v. *Shrum*, 92 F.4th 947 (10th Cir. 2024), also

presents no conflict. There, an organization sought a preliminary injunction against a university after it implemented "policies that allegedly chilled protected speech." *Id.* at 948. After the district court denied the preliminary injunction and dismissed for lack of associational standing, the association appealed. Despite the plaintiff's preliminary injunction, the Tenth Circuit explained that the association's "burden in establishing standing [was] lightened considerably" because "the dismissal for lack of standing came at the pleading stage." *Id.* at 950 n.1. DNH argues this is also "a case about the pleading stage," Pet. 13, but that is contrary to this Court's longstanding precedent, under which a preliminary injunction motion is evaluated under no less than the summary judgment standard. *See, e.g.*, *Cacchillo*, 638 F.3d at 404; *New York* v. *D.H.S.*, 969 F.3d 42, 59 (2d Cir. 2020). The petition does not challenge that precedent. *Cf. Murthy* v. *Missouri*, No. 23-411 (June 26, 2024).

*Third*, the decision in *American Alliance for Equal Rights* v. *Fearless Fund Management, LLC*, 103 F.4th 765 (11th Cir. 2024), is not at odds with this Court's decisions. There, an association sought a preliminary injunction against a funding competition that was open only to businesses owned by Black women. *Id.* at 769. The district court held the association had standing because, under Eleventh Circuit precedent, "requiring specific names *at the motion to dismiss stage* is inappropriate." Civ. No. 1:23-3424, 2023 WL 6295121, at *2 (N.D. Ga. Sept. 27, 2023) (emphasis added) (quoting *American College of*

*Emergency Physicians* v. *Blue Cross & Blue Shield of Georgia*, 833 F. Appx. 235, 241 n.8 (11th Cir. 2020)). The Eleventh Circuit, whose precedent applies the pleading standard to standing on a preliminary injunction motion, *see Speech First* v. *Cartwright*, 32 F.4th 1110, 1119 (11th Cir. 2022), agreed with the district court's ruling, *see Fearless Fund*, 103 F.4th at 773. There is thus no conflict between the law of the Eleventh Circuit and this Court's precedent: both allow plaintiffs to proceed anonymously under the pleading standard. *See Building & Construction Trades Council of Buffalo, New York & Vicinity* v. *Downtown Development, Inc.*, 448 F.3d 138, 145 (2d Cir. 2006).

3. This case also does not present a question of exceptional importance for any other reason. DNH ignores the difference in evidentiary standards that courts of appeals apply to preliminary injunction motions. Those different approaches long predate the panel's decision here, and this Court's requirement that a plaintiff demonstrate standing to seek a preliminary injunction with evidence is consistent with Supreme Court precedent. Yet, despite seeking a preliminary injunction, DNH chose to disregard its evidentiary burden. Those miscalculated choices—all in service of a complaint dismissed without prejudice and a lawsuit that is likely moot given the passage of time and Pfizer's clear statement that its Fellowship is open to all applicants regardless of race—do not warrant this Court's continued attention.

DNH and its amici nevertheless insist the panel's decision will have "devastating consequences for associations," because "an association can never withhold its members' identities." Pet. 14 (citation omitted). Again, that overstates the decision because, as the cases on which DNH relies acknowledge, courts have the power to protect the privacy of litigants through *in camera* disclosure. *See, e.g.*, *Shrum*, 92 F.4th at 950 & n.1. Here, the majority simply held DNH could not establish standing for preliminary injunctive relief without, at a minimum, disclosing an injured member's name to the court. *See* Op. 26. That is hardly unprecedented or "devastating," particularly given that DNH agrees "it would likely produce its members' names in discovery." Pet. 11. It would be peculiar to "allow an association to rest its standing on anonymous member declarations when [the Court] would not allow those members, as individual parties, to proceed anonymously to the court in their own right." Op. 23. Notably, even the association in *Fearless Fund* (represented by DNH's counsel) did not oppose disclosing names *in camera*. *See* Reply Br. 6, 2024 WL 81432. Assuming that courts are incapable of protecting *in camera* information from disclosure is not a reason for further review.

## B.    The Panel's Decision Is Correct

DNH's desire to relitigate its case is not a basis for rehearing. Regardless, for all of the reasons articulated in the majority and concurring opinions,

DNH failed to demonstrate associational standing. DNH makes a series of scattershot attempts to undercut that conclusion. All fail.

*First*, DNH's invocation of out-of-circuit district court decisions where associations were permitted to litigate without divulging injured member's names, *see* Pet. 5-6, does not establish legal error. As the majority noted (Op. 25-26), some of those cases do not even involve any express holding as to associational standing. DNH urges that those decisions in which the parties and the courts did not press the anonymity issue should have raised the panel's concerns. Pet. 6. But "the existence of unaddressed jurisdictional defects has no precedential effect," *Lewis* v. *Casey*, 518 U.S. 343, 353 n.2 (1996), much less persuasive force.

*Second*, the petition contends "there is longstanding Supreme Court authority supporting standing for organizations whose injured members are not named." Pet. 7 (citation omitted). But DNH never explains how those decisions could be read to support the view that association members (more than any individual plaintiff) may require anonymity protection *from the court*. As the panel emphasized, disclosure of members' names to the court was the only issue here. *See* Op. 21-23. Nevertheless, DNH speculates that anonymity as to the district court is still required because a district court "might . . . later decide the names should be released." Pet. 15. It would be wrong to allow speculative mistrust of judges to expand judicial power beyond the boundaries

imposed by Article III, *see Clapper* v. *Amnesty International USA*, 568 U.S. 398, 408, (2013), especially in the face of DNH's concession that names would be disclosed in discovery.

*Third*, DNH attacks a strawman by mischaracterizing this ruling as a "ban on pseudonyms," and then arguing that ban does not "make sense" and is not supported by either *FW/PBS, Inc.* v. *Dallas*, 493 U.S. 215 (1990), or *Summers* v. *Earth Island Institute*, 555 U.S. 488 (2009). Pet. 8-9. But, as explained at pp. 6-7, *supra*, the majority's conclusion "best aligns" with those precedents; "disclosure *to the court* of harmed members' real names is relevant to standing because it shows that identified members are genuinely ready and able to apply." Op. 21-22 (citing *Carney* v. *Adams*, 592 U.S. 53, 64 (2020)). The panel's decision does not impose a "ban on pseudonyms."

*Fourth*, DNH argues that the "omission of someone's real name in no way detracts from the components of what constitutes an Article III case or controversy." Pet. 6; *see also* Pet. 10. But disclosure of the name of at least one identified member does go to Article III standing. *See* Op. 24 n.6. Without a name, DNH's declarations do not "identify" any specific member with standing in their own right who is "ready and able" to apply to the Fellowship. *See Summers*, 555 U.S. at 499. Even with a name, those affidavits lack the level of detail sufficient to establish that the hypothetical member is genuinely "ready and able" to apply. *See* Concur. 13-15, 18.

*Fifth*, DNH argues that the panel's concerns can be addressed by making "associations satisfy [the Rule 10(a)] balancing test, proving their members' privacy interests outweigh the countervailing interests in disclosure." Pet. 11. But that suggestion, not the majority's ruling, would render the Article III inquiry "standardless." *Id.* Whether DNH has sufficiently identified to the court at least one specific member who is genuinely "ready and able" to apply does not depend on that member's privacy interests. DNH's offer to "likely produce its members' names in discovery, under a protective order," Pet. 11, puts the cart before the horse and underscores DNH's erroneous approach. In seeking a preliminary injunction, DNH knew it was required to demonstrate standing. DNH failed to carry its burden, in relevant part because it insisted on withholding from the court information about its declarants. That litigation decision prevented DNH from reaching that future stage of the litigation when it (apparently) would be willing to share the information it withheld. Lacking any basis to maintain jurisdiction, the district court was compelled to dismiss without prejudice. *See* Op. 30-33; Concur. 1.

*    *    *    *    *

If this Court were to grant rehearing, it would need to consider in the first instance whether the affidavits submitted by Members C, D, and E defeat the mootness issues that have arisen during the pendency of this appeal. No court has suggested Article III is satisfied where declarants state that they do

"not trust" a clear statement that the race of an applicant does not determine eligibility. Dkt. 38-2, ¶ 11; Dkt. 132-3, ¶ 11; Dkt. 132-4, ¶ 11; *cf. Carney*, 592 U.S. at 60-65. Because the majority and concurring opinions provide independent reasons why DNH failed to identify any member who is genuinely "ready and able" to apply to the Fellowship, and because none of those reasons create a conflict with the precedents of the Supreme Court, this Court, or any other court of appeals, further review is unwarranted.

## CONCLUSION

The petition for panel rehearing and rehearing en banc should be denied.

Respectfully submitted,

/s/ Jeannie S. Rhee

SAMANTHA L. CHAIFETZ
DLA PIPER LLP
  *500 Eighth Street, N.W.*
  *Washington, DC 20004*

JEANNIE S. RHEE
MARTHA L. GOODMAN
MATTEO GODI
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *2001 K Street, N.W.*
  *Washington, DC 20006*
  *(202) 223-7300*
  *jrhee@paulweiss.com*

LORETTA E. LYNCH
LIZA M. VELAZQUEZ
PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
  *1285 Avenue of the Americas*
  *New York, NY 10019*

JULY 1, 2024

**CERTIFICATE OF COMPLIANCE**
**WITH TYPEFACE AND WORD-COUNT LIMITATIONS**

I, Jeannie S. Rhee, counsel for appellee and a member of the Bar of this Court, certify, pursuant to Federal Rules of Appellate Procedure 32(a)(5)-(6) and 35(b)(2), that the attached Opposition of Appellee to Petition for Panel Rehearing and Rehearing En Banc is proportionately spaced, has a typeface of 14 points or more, and contains 3,868 words.

/s/ Jeannie S. Rhee_____
JEANNIE S. RHEE

JULY 1, 2024

**CERTIFICATE OF SERVICE**

I, Jeannie S. Rhee, counsel for appellant and a member of the Bar of this Court, certify that, on July 1, a copy of the attached Opposition of Appellee to Petition for Panel Rehearing and Rehearing En Banc was filed with the Clerk through the Court's electronic filing system.  I further certify that all parties required to be served have been served.

/s/ Jeannie S. Rhee

JEANNIE S. RHEE
